IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM D. HOOKER, d/b/a<br>GEORGIA BOWHUNTERS SUPPLY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 03-1501C<br>(Judge Allegra) |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that this Court dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. In support of our motion, we rely upon plaintiff's complaint, the following brief and appendix.

**DEFENDANT'S BRIEF**

**STATEMENT OF THE ISSUES**

1. Whether this Court lacks jurisdiction to entertain Mr. Hooker's claims arising out of the hog contract because Mr. Hooker failed to properly submit these claims to the contracting officer.

2. Whether this Court lacks jurisdiction to award emotional damages to Mr. Hooker.

3. Whether Mr. Hooker has failed to state a claim for a breach of the beaver contract upon which relief can be granted.

## STATEMENT OF THE FACTS

On October 29, 1997, Mr. Hooker was awarded a contract (#53-4660-8-04) by the United States Department of Agriculture Forest Service to control the wild hog population on the Savannah River Site ("SRS") by trapping and use of trained dogs. Compl. ¶ 6; App. 1, 9. The contract was an indefinite quantity contract with a minimum quantity of 200 hogs and a maximum quantity of 800 hogs (later increased to 1,000). App. 7, 51, 93-94. Mr. Hooker was to be paid $55 for each hog trapped and properly delivered. App. 7, 25. The contract period was for one year with options to extend the contract for twelve month increments until a three-year maximum contract period had been reached. Compl. ¶ 5, App. 9. Modifications extended the contract period to October 31, 1999. App. 91-92.

On January 12, 1999, Mr. Hooker was also awarded a contract (#53-4660-9-06) to trap beaver and maintain culvert outlets and inlets in accordance with specifications. Compl. ¶ 23; App. 96, 102. The contract was a requirements contract for which work was to be performed on a task order basis. App. 132-33. Mr. Hooker was to be paid $45 per beaver trapped and $18 per hour for culvert work. Compl. ¶ 24, App. 102. Only one task order was issued (#43-4660-9-0108). App. 184-95. Quantities of services specified in the contract were estimates only and cannot constitute a basis for an equitable adjustment. App. 102, 132.

Beginning on October 1, 2000, Mr. Hooker submitted numerous requests for equitable adjustments ("REA"). Below is a chart of all REAs submitted. On July 29, 2002, the contracting officer issued a final decision denying all claims. App. 223-27.

| **Date** | **Contract** | **Amount** | **Basis** | **Appendix** |
|---|---|---|---|---|
| October 1, 2000 | Hog contract from 1998 (#53-4660-8-04) | $1 billion | Work out of scope, intimidation and discrimination, hazardous substances | 196-97 |
| October 1, 2000 | Beaver contract (53-4660-9-06) | $1 billion | Work out of scope, intimidation, discrimination, hazardous substances | 198-200 |
| October 23, 2000 | Beaver contract (RFQ 36-93-08) | $10 million | Work out of scope, hazardous substances | 201-02 |
| October 26, 2000 | Beaver contract (43-4660-9-0016) | $10 million | Work out of scope, hazardous substances | 203-04 |
| October 26, 2000 | Beaver contract (53-4660-4-14) | $10 million | Work out of scope, hazardous substances | 205-06 |
| October 26, 2000 | Beaver contract (43-4660-5-0209) | $10 million | Work out of scope, hazardous substances | 207-08 |
| October 27, 2000 | Hog contract from 1994 (53-4660-4-045 | $10 million | Work out of scope, hazardous substances | 209-10 |
| October 27, 2000 | Hog contract from 1997 (43-4660-8-0027) | $10 million | Work out of scope, hazardous substances | 211-12 |

| | | | | |
|---|---|---|---|---|
| April 1, 2002 | Hog contract (53-4660-8-04) | REA does not state an amount. | Fraud, false statements, defamation | 213 |
| April 1, 2002 | Beaver contract (53-4660-9-06) | $100 million | Fraud, false statements, Exposure to hazardous substances | 214-15 |
| April 8, 2002 | Beaver contract (53-4660-9-06) | $99,999.99 | Fraud, false statements, defamation | 216 |
| April 8, 2002 | Beaver contract (53-4660-9-06) | REA does not state an amount. | Fraud, false statement | 217 |
| April 8, 2002 | Beaver contract (53-4660-9-06) | $252,450 | Time spent researching for claim | 218 |
| April 8, 2002 | Beaver contract (53-4660-9-06) | $99,999.99 | False statement | 219 |
| April 8, 2002 | Beaver contract (53-4660-9-06) | $100 million | Fraud, false statements | 220-21 |
| April 8, 2002 | Hog contract | $99,999.99 | Radio | 222 |

On June 17, 2003, Mr. Hooker filed a complaint pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., for breach of the hog and beaver contracts. Mr. Hooker alleges that the Government breached the hog contract by barring two employees from working on the contract, Compl. ¶¶ 8-11, finding that some pigs were domestic for which Mr. Hooker was not entitled to be paid under the contract, Compl. ¶¶ 12-14, and barring him from effectively performing the contract as a result of the Government's delay in issuing the contraband pass, Compl. ¶¶ 15-18. Mr. Hooker seeks $20,000 as an equitable adjustment as a result of the breach of the contract and

the remaining $30,000 balance of the contract. Compl. ¶ 20.

Mr. Hooker also alleges that the Government breached the beaver contract by exposing him and his employees to toxic chemicals when the contract stated that there was no toxicological hazards to trapping beaver on the Savannah River Site. Compl. ¶¶ 25-28. Mr. Hooker also alleges that the Government failed to renew the contract as an option. Compl. ¶ 29. Mr. Hooker seeks damages of $60,700 as an equitable adjustment for the initial contract and another $60,700 as an equitable adjustment for the option year. Compl. ¶ 30. Mr. Hooker also seeks an unspecified amount for emotional damages caused by the breach of the beaver contract. Compl. ¶ 32.

## SUMMARY OF ARGUMENT

This Court should dismiss Mr. Hooker's complaint in the entirety. This Court lacks subject matter jurisdiction to review Mr. Hooker's claims arising out of the hog contract because they were never properly submitted to the contracting officer. This Court also lacks jurisdiction to award damages for Mr. Hooker's emotional distress. Furthermore, Mr. Hooker has failed to state a claim for breach of the beaver contract because the damages he alleged were not proximately caused by the alleged contamination. Finally, Mr. Hooker has failed to state a claim for damages for the option periods.

## ARGUMENT

### I. This Court Lacks Jurisdiction to Review Mr. Hooker's Claims

#### A. Standard of Review

When deciding a motion to dismiss based upon lack of subject matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all

reasonable inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989). If a defendant challenges jurisdiction, however, the plaintiff cannot merely rely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt, 298 U.S. at 189; see also Land v. Dollat, 330 U.S. 731, 735 (1947); Reynolds, 846 F.2d at 747; Catellus Development Corp. v. United States, 31 Fed. Cl. 399, 404-405 (1994). This Court may consider all relevant evidence in order to resolve any factual dispute regarding jurisdiction, including evidentiary matters outside the pleadings. Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985), cert. denied, 479 U.S. 820 (1986).

B. Mr. Hooker Failed to Submit Its Claims Related to the Hog Contract

The Contract Disputes Act ("CDA"), 41 U.S.C. § 601, et seq., applies to procurement contracts entered into by an executive agency, such as the contract at issue. 41 U.S.C. § 602(a). When the CDA applies to a contract, the contractor is required to submit in writing all claims relating to the contract to the contracting officer for a decision. 41 U.S.C. § 605(a). Once the contracting officer issues a decision on the claim, the contractor may appeal the decision to the appropriate board of contract appeals within 90 days of receipt of the decision. 41 U.S.C. § 606. Alternatively, the contractor may file an action with the United States Court of Federal Claims within 12 months from the receipt of the decision. 41 U.S.C. § 609(a)(1) & (3).

A written claim submitted to the contracting officer and a final decision by the contracting officer are jurisdictional prerequisites to this Court entertaining jurisdiction pursuant to the CDA. See James M. Ellett Construction Co., Inc. v. United States, 93 F.3d 1537, 1541-42

(Fed. Cir. 1996); Made in the USA v. United States, 51 Fed. Cl. 252, 254 (2001). It is well-established that a contractor may not raise any new claims not presented and certified to the contracting officer. See Sante Fe Engineers, Inc. v. United States, 818 F.2d 856, 858 (Fed. Cir. 1987) (finding that total disruption claim is a new claim and not the same claim as those presented in writing to contracting officer for delay arising from specific changes); Dodson Livestock Company v. United States, 42 Fed. Cl. 455, 462-63 (1998) (refusing to consider contractor's failure to disclose claim when contractor presented only a breach of warranty claim to the contracting officer); SMS Data Products Group, Inc. v. United States, 19 Cl. Ct. 612 (1990) (finding that claim for lost profits is not the same as a claim for compensatory damages that was presented to the contracting officer).

This Court does not possess jurisdiction to entertain Mr. Hooker's claims regarding the hog contract because he did not properly submit these claims to the contracting officer. The factual basis for Mr. Hooker's claim that the hog contract was breached is that the Government barred two employees from working on the contract, inappropriately found that some pigs were domestic, and delayed in issuing the contraband pass. Compl. ¶¶ 8-18. Mr. Hooker, however, did not submit any of these claims to the contracting officer. Although Mr. Hooker submitted five REAs related to the hog contract, none of these claims address the factual basis for Mr. Hooker's claims before this Court. See supra at 2-4. Instead, these claims address exposure to toxic hazardous substances and vague allegations of intimidation, discrimination and work performed out of scope of the contract. Id. As the claims before this Court were not specifically presented to the contracting officer, this Court does not possess jurisdiction to entertain Mr. Hooker's claims related to the hog contract.

C. This Court Lacks Jurisdiction To Award Damages For Emotional Distress

Mr. Hooker seeks damages for emotional distress arising from his fear of past exposure to toxic chemicals. Compl. ¶ 32. This Court has long held that it lacks jurisdiction to award damages for emotional distress and pain and suffering. Pratt v. United States, 50 Fed. Cl. 469, 482 (2001); see also Garner v. United States, 230 Ct. Cl. 941, 943 (1980) ("[R]elief for mental distress and psychological damage is found in tort, which is [] outside of the jurisdiction of this court."); Curry v. United States, 221 Ct. Cl. 741, 609, F.2d 980 (1971) ("here plaintiff's suit is not against individuals but against the United States, for alleged emotional distress, anguish, and humiliation. These are torts over which we absolutely have no jurisdiction, as made explicit in the Tucker Act."). This is true regardless of whether the emotional damages arose from a breach of contract. Pratt, 50 Fed. Cl. at 482. This Court, therefore, lacks jurisdiction to award Mr. Hooker emotional damages.

II. Mr. Hooker Has Failed To State A Claim For Breach Of Contract Upon Which Relief Can Be Granted

A. Standard of Review

In considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, this Court will grant dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957), quoted in B & F Trawlers, Inc. v. United States, 27 Fed. Cl. 299, 302 (1992); Kinne v. United States, 21 Cl. Ct. 104, 107 (1990). In making this decision, the Court will accept the factual allegations set forth in the complaint as true. E.g., Papasan v. Allain, 478 U.S. 265, 268 (1986); B & F Trawlers, 27 Fed. Cl. at 302; Marshall v.

United States, 21 Cl. Ct. 497, 499 (1990). The Court, however, should not place any weight upon any assertions in the complaint other than allegations of fact, since "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Rochman v. United States, 27 Fed. Cl. 162 (1992).

B. Mr. Hooker's Damages Were Not Caused By The Alleged Contamination

Mr. Hooker seeks to recover approximately $160,000 in damages for breach of the beaver contract. Compl. ¶ 31. Mr. Hooker contends that the Government breached the contract by misrepresenting that there were no toxicological hazards associated with trapping beavers at the Savannah River Site when he alleges that the site was in fact contaminated. Compl. ¶ 25. Mr. Hooker, however, has failed to state a claim for breach of the beaver contract upon which relief can be granted.

"To recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties; (2) an obligation or duty arising out of that contract; (3) a breach of that duty; and (4) damages caused by the breach." San Carlos Irrigation and Drainage District v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989). Mr. Hooker cannot establish that the damages alleged in his complaint were proximately caused by the breach. There is no allegation in the complaint that Mr. Hooker in fact suffered increased costs as a result of the alleged contamination.

Instead, Mr. Hooker alleges that if he had known that he and his employees would have been exposed to contaminated areas while performing the contract, he would have bid a higher price. Compl ¶ 27. Mr. Hooker then seeks to calculate damages from this alleged speculative price. "As a matter of law, unforeseeable consequential damages cannot be recovered in the

Court of Federal Claims." Pratt v. United States, 50 Fed. Cl. 469, 482 (2001) (citing Bohac v. Dep't of Agriculture, 239 F.3d 1334, 1339 (Fed. Cir. 2001).

An increase in the amount of the beaver contract does not flow directly and immediately from the alleged contamination, especially in this case where the beaver contract was a requirements contract. App. 132-33. Mr. Hooker was to be paid only for work for which task orders were placed. App. 103. The quantities of services listed in the schedule were estimates only and were not purchased by the Government. App. 102. In this case, only one task order was issued on January 29, 1999 in the amount of $51,300. As there is no nexus between the alleged contamination and the damages alleged, Mr. Hoover has failed to state a claim for breach of contract upon which relief can be granted.

Finally, Mr. Hooker attempts to recover damages for option periods for which the Government never exercised. Compl. ¶¶ 31. The beaver contract contained the contract clause, FAR § 217-9 "Option to Extend the Term of the Contract," which states that the "Government may extend the term of this contract by written notice to the Contractor within 60 days . . . " (emphasis added). Because the contract does not state that the Government is required to exercise the option periods, the Government did not breach the contract by not exercising the option periods. In order for plaintiffs to recover for a breach, defendant must have failed to do something which is required under the contract." Badgley v. United States, 31 Fed. Cl. 508, 512 (1994). Mr. Hooker, therefore, has failed to state a claim for damages for the option periods.

## CONCLUSION

For the foregoing reasons, we respectfully request that this Court grant this motion to dismiss plaintiff's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Todd M. Hughes

TODD M. HUGHES
Assistant Director

s/ Nancy M. Kim

NANCY M. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530
Tel:(202) 514-7300
Fax: (202) 307-0972

September 17, 2003

Attorneys for Defendant

# APPENDIX


| Document | Page |
| --- | --- |
| Hog Contract dated September 9, 1997 (#53-4660-8-04) | 1 |
| Beaver Contract dated November 24, 1998 (# 53-4660-9-06) | 96 |
| Purchase Order dated January 29, 1999 (#43-4660-9-0108) | 184 |
| Request for Equitable Adjustments | 196 |
| Contracting Officer's Final Decision | 223 |