signed by Mr. Bill Richardson on March 30,2000 and Donna Shalala on September 18, 2000 effective 2001. See receipt #18923.

Thank You,

William D. Hooker Sr.

William D. Hooker Sr.

~~26~~ 25 wdt
4-~~08~~-2002

Mr. Homer Gabard
Contracting Officer
USFS/SRI
P.O. Box 700
New Ellenton SC 29809

04-26-02P01:26 RCVD

Re: Claim for all contracts that I have held from 2-10-1992 through 12-31-1999 that I was issued government radio's. This claim is for charging government issued radio's at my person resident and rental fee for using my outlet.

I certify that the claim is made in made in good faith: that the supporting data are accurate and complete to the best of my knowledge and belief: that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable: and that I am duly authorized to certify on behalf of the contractor.

From 2-10-1999 issued 1st radio through 12-31-1999 turned in to USFS. 2920 days or 70,080 hours that a government radio was being charges at my personal resident with electric I paid for!

Please Note:

United States Forest Service would not even allow me to put 5 pounds of air in tire that was loaded with feral swine that came from hazardous waste sites at the USFS cooler that had been load with dead hogs prior to contract being ending in 1999 due to government needing to change the language in the contract. Others were present and these bidders followed me along with a USFS Inspector to see where the dead animals were dumped year 1999.

I have included a receipt ~~#18932~~ #18924 wdt for charging the USFS/SRI for at least one of the 5 radio's issued to me. Charge $1.00 day for charging the radio battery and also include a charge for using my outlet at my home to pug in the governments charger so it will charge the battery of $33.25 cents per day rental fee.

I demand payment of $99,999.99.

Thank You,

William D. Hooker Sr.
William Danny Hooker Sr.

CARPII O. EDENFIELD NOTARY PUBLIC RICHMOND COUNTY, GA EXP. Aug 16, 2002

Notary Public

United States Department of Agriculture | Forest Service | Savannah River | P.O. Box 700 New Ellenton, SC 29809

File Code: 6320
Route To:

Date: July 29, 2002

Subject: Requests for Equitable Adjustment for Wild Hog Control and Beaver Control Contracts

To: William D. Hooker
5330 Columbia Road
Grovetown, GA 30813

RECEIVED AUG 1 2002

CERTIFIED – RETURN RECEIPT REQUESTED

This letter is in response to eight Requests for Equitable Adjustment received from you that are dated between October 1, 2000, and October 27, 2000 and an additional seven dated between April 1 and April 15, 2002. A summary of the Requests for Equitable Adjustment is shown below:

| Contract or Solicitation No. | Description | Amount Requested |
|---|---|---|
| 36-93-08 | | |
| 43-4660-3-0134 | Beaver Control | $ 10,000,000.00 |
| 53-4660-4-14 | Wild Hog Control | $ 10,000,000.00 |
| 53-4660-4-0415(no such Contract No.) | | |
| *43-4660-4-0415 (correct number) | Wild Hog Control | $ 10,000,000.00 |
| *43-4660-5-0209 | Wild Hog Control | $ 10,000,000.00 |
| 53-4660-8-04 | Wild Hog Control | $1,000,000,000.00 |
| **43-4660-8-0027 | Wild Hog Control | $ 10,000,000.00 |
| 53-4660-9-06 | Beaver Control/ Culvert Maintenance | $1,000,000,000.00 |
| **43-4660-9-0016 | Wild Hog Control | $ 10,000,000.00 |
| All contracts 1992-1999 | Wild Hog/Beaver Control | $ 99,999.99 |
| 53-4660-9-06 | Beaver Control/ Culvert Maintenance | $ 100,000,000.00 |
| 53-4660-9-06 | Beaver Control/ Culvert Maintenance | $ 99,999.99 |
| 53-4660-9-06 | Beaver Control/ Culvert Maintenance | $ 252,450.00 |
| 53-4660-9-06 | Beaver Control/ Culvert Maintenance | $ 99,999.99 |
| 53-4660-9-06 | Beaver Control/ Culvert Maintenance | $ 100,000,000.00 |
| 53-4660-9-06 | Beaver Control/ Culvert Maintenance | $ 9,999.100.00 |

* These are Task Orders for Contract 53-4660-4-14.
** These are Task Orders for Contract 53-4660-8-04.





Printed on Recycled Paper

Z. Co Decision

Since four of your Requests for Equitable Adjustment are for task orders issued for contracts for which you have also submitted Requests for Equitable Adjustment, I will not consider those four Requests.

All of the remaining contracts were awarded to your company, GA Bowhunters Supply, as a result of competitive negotiation procedures with the exception of small purchase contract 43-4660-3-0134 which was awarded to your company as a result of small purchase competitive procedures.

Although it is not entirely clear as to the basis for your Requests for Equitable Adjustment, it appears that the Requests for Equitable Adjustment are submitted because you claim exposure to toxic chemicals while performing work on the four contracts. Your Request for Equitable Adjustment for Contract 53-4660-8-04 also alleges that you were required to work outside the scope of that contract although you do not give details of what work you performed on this contract that you consider to be outside the scope of the contract.

You state in your Requests for Equitable Adjustment that there was a provision in most if not all of these contracts that stated "Safety – No toxocological hazards are associated with trapping beavers at SRS; however, normal environmental and physical hazards, such as, snakes and uncertain footing do exist".

For the Requests for Equitable Adjustment submitted in October, 2000, it appears that you are alleging a Breach of Contract by the Government in that you believe that you were in fact exposed to toxocological chemicals during the performance of the contracts. However, in a report (copy enclosed) addressed to you dated December 27, 2000, from the National Institute for Occupational Safety and Health, NIOSH, it is stated that "based on the available environmental data and our medical findings, we conclude that beaver and pig trapping at SRS has not been associated with harmful exposure to radioactive or toxic environmental contaminants."

Both you and some of your former employees who worked on the contracts participated in the NIOSH investigation.

The findings of the NIOSH investigation substantiates the contract provision that "no toxicological hazards are associated with trapping beavers at SRS."

All areas that you were directed to enter through task orders issued for the above listed contracts were safe and SRS procedures for entry to the areas were followed. You voluntarily trapped beaver at four sites in Four Mile Branch with possible contaminents after being told by the COR and Inspector that you could refuse to trap those four sites. A work clearance permit was issued for these four sites and you and your personnel were monitored by Site Health Protection personnel before entering the sites each time and upon leaving the sites each time. In fact you were allowed to use snares at these four sites so you would not have had to enter the water at these four sites. To my knowledge Health Protection personnel never found any contamination of you, your employees, or any equipment or personal protective equipment when you were trapping these sites. You were never directed by the Contracting Officer, the COR, nor any of the Inspectors for the Beaver Control contracts to go to and trap in Steed Pond.

There was no breach of contract by the Government because as stated in the NIOSH report neither you nor your employees encountered harmful exposure to radioactive or toxic environmental contaminents while working on the beaver and hog control contracts.

Regarding your Request for Equitable Adjustment for electricity and rental of an electrical outlet at your residence to charge a Government furnished hand held radio, the radio and charger were provided to you by the Forest Service for your convenience. All of the contracts required you to have a means of communication with you at all times when you were working on the contracts at SRS. By providing the radio and charger the Forest Service made it possible for you to meet this contractual requirement at no charge to you. Also, by providing both the radio and the charger to you, you did not have to go to the Forest Service Dispatch office to obtain a hand held radio each day and to return the radio prior to leaving SRS each day that you worked on the contracts. The Government did not receive any benefit from allowing you to keep a hand held radio and charger while working on the contracts. In fact you were the only party who benefited from allowing you to keep a hand held radio and charger, therefore you would not be entitled to any compensation for keeping the radio charged.

Regarding your Request for Equitable Adjustment for fraud and false statements that you allege were made in DOE letter dated October 30, 2000, signed by Dianne Saylor, and a memorandum dated March 22, 2000, from Dianne Saylor reference the NIOSH Site Visit, fraud was not committed and false statements were not made in either document. Your Request for Equitable Adjustment discusses Bioassay information for you prior to 1995 not being discussed in the letter dated October 30, 2000. The letter makes no representation concerning Bioassay data for you prior to 1995 or after 2000. It is not clear what you consider to be fraudulent or false about the March 22, 2000, memorandum. This memorandum appears to summarize events during the NIOSH Site Visit, March 20-22, 2000. A Memorandum of Understanding (MOU) cannot limit an agency's requirements to conduct investigations, etc. under certain statutory guidelines. Both of these documents concern a complaint that you had filed through the DOE Employee Concern Program and would not be considered contractual matters because the Employee Concern complaint is outside the scope of your contracts with the Forest Service. Also, some of the Employee Concern issues involved your employment with Westinghouse Savannah River which is clearly outside the scope of your contracts with the Forest Service.

Regarding your Request for Equitable Adjustment for a false statement made at a presentation to NIOSH on March 20, there is not sufficient information provided by you to understand what statement(s) made during the presentation that you consider false.

Your Request for Equitable Adjustment for your time and Mr.Cromer's time and preparing the Requests for Equitable Adjustment is denied in its entirety because time spent preparing Requests for Equitable Adjustment is normally not compensable.

Concerning your Request for Equitable Adjustment for fraud and false statements because of the contract language that states "no toxicological hazards are associated with trapping beaver at SRS; however, normal environmental and physical hazards such as snakes and uncertain footing", as stated previously in this letter the NIOSH investigation substantiates this statement in the contract. Therefore, fraud was not committed by any Forest Service personnel and false statements were not made by any Forest Service personnel. Also, in the same Request for Equitable Adjustment you state that a false statement was made and fraud was committed during

the presentation to NIOSH on March 20, 2000, in that a bar graph showed that no beaver were trapped in November, 1999, and you have submitted a copy of an invoice for eleven beaver that you submitted to the Forest Service on/or about November 30, 1999. There was no intentional misrepresentation made with this bar graph, but a mistake was made either in the data provided for the bar graph or in the preparation of the bar graph. This mistake did not impact the NIOSH investigation in any way and the correct information is available in the contract file. Again, fraud was not committed by any Forest Service personnel and false statements were not made by any Forest Service personnel.

Your Request for Equitable Adjustment concerning toxocological hazards in Four-Mile Branch and alleged fraud and false statements in contract 53-4660-9-06 due to the statement in the contract concerning no toxocological hazards is not substantiated by the NIOSH investigation. Again the NIOSH investigation substantiates the contract statement concerning no toxocological hazards , so fraud was not committed by any Forest Service personnel and false statement(s) were not made by any Forest Service personnel.

Once again your allegations of fraud, false statements, and defamation of your company due to a June 30, 1999, letter signed by me and discussed in a meeting on June 30, 1999, when the letter was given to you are not substantiated by the facts stated in the letter nor by an investigation conducted by Wackenhut Services, Inc. The Wackenhut investigator cleared you of any involvement in the situations discussed in the letter and your contract 53-4660-8-04 for Wild Hog Control was not terminated. The letter was distributed to you, Wackenhut, Beth LeMaster, Frankie Brooks, and Bill Jarvis and was not released to the public or anyone other than those named. The letter does not contain any false statements and fraud was not committed by me with the issuance of the letter. Your company's reputation was not defamed in any way.

Therefore, it is the decision of the Contracting Officer that William D. Hooker has no valid claim against any of the four contracts. Mr. Hooker's Requests for Equitable Adjustment (claim) are denied in their entirety.

This is the final decision of the Contracting Officer. This decision may be appealed to the Board of Contract Appeals, Room 2912, South Building, U.S. Department of Agriculture, Washington, DC 20013. If you decide to make such an appeal you must mail or otherwise furnish written notice thereof to the Board of Contract Appeals within ninety (90) days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended should reference this decision and identify the contracts by number. In lieu of appealing to the Board of Contract Appeals, you may bring action directly in the U.S. Court of Claims within twelve (12) months of the date you receive this decision.

If you appeal to the Board of Contract Appeals, you may solely at your election proceed under the Board's small claims procedure for claims of $10,000 or less or its accelerated procedures for claims of $50,000 or less.

HOMER R. GABARD
Contracting Officer

Enclosure (1)

Cc: Mark Simpson, USDA, OGC
Mel Booker, R8,P&P
Dave Wilson, Forest Manager
Lucy Knowles, DOE
Tony Towns, DOE