IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM D. HOOKER, d/b/a<br>GEORGIA BOWHUNTERS SUPPLY,<br><br>Plaintiff<br><br>vs<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 03-1501C, 04-1126<br>Judge Allegra |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

Berta E. (Robbie) Nichols
206 Carolina Bldg., P. O. Box 7925
Hilton Head Isl., SC 29938
(843) 686-5884
Fax: (843) 842-3933

Attorney for Plaintiff

February 5, 2005

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . i

STATEMENT OF THE ISSUES. . . . . . . . . . 1-2

STATEMENT OF THE FACTS . . . . . . . . . . 2-3

PROCEDURAL HISTORY . . . . . . . . . . . 4

SUMMARY OF ARGUMENT. . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . 5

Standard of Review. . . . . . . . . . . . . 5-6

1. Hooker has not claimed that he is entitled to compensation for alleged exposure to contamination, or misrepresentation by the government which would sound in tort. Rather, Hooker argues that reformation of the contract is appropriate due to changed circumstances. . . . . . . . . . . 6-7

2. The Government in its Motion to Dismiss maintains there was no misrepresentation because Hooker failed to establish any factual evidence supporting his theory that the areas he was hunting without protection contained any such hazards. 8

3.. This Court lacks jurisdiction to entertain Mr. Hooker's claims for additional money under the Beaver Contract to hire RAD II trained workers because he failed to present this claim to the contracting officer. . . . . . . . . 9

4. In response to the Government's assertion that Hooker has failed to state a claim because the Government did not have a contractual duty to maintain its requirements or to exercise the option absent bad faith-Hooker has failed to establish that the Government acted in bad faith. . . . . . . . . 9-11

5. Did the Government breach the hog contract by withholding payments for nonconformance, barring Hooker's employees and losing his contraband pass? . . . . . . . . . . . 11-14

CONCLUSION . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

CASES

Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234 (Fed. Cir. 2002) 10,11

Bell & Howell Document Mgt. Prods. Co. v. Altek Sys., 132 F.3d 701
(Fed. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . 12

The Boeing Co. v. U.S. ( ) . . . . . . . . . . . . . . . 12

Coyle's Pest Control, Inc. v. Cuomo, 154 F.3d 1302 (Fed. Cir. 1998) . . 9

Davis V. Monroe County Bd. of Educ., 526 U.S. 629 (1999) . . . . . 6

Datalect v. U.S., 41 Ct. Cl. 720 (1997). . . . . . . . . . . . . . 7

Eastport SS. Corp. v. United States, 178 Ct. Cl. 599 (1967) . . . . . 5

Electro Medical Sys. S.A. v. Cooper Life Science, Inc. 34 F.3d 1048
(Fed. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . 12

Knotts v. United States, 128 Ct. Cl. 489 (1954) . . . . . . . . . . 10

Lewis-Nicholson, Inc. v. United States, 213 Ct. Cl. 192, 550 F.2d 26 (1977) 13

Medart, Inc. v. Austin, 967 F.2d 579 (Fed. Cir. 1992). . . . . . . . 9

NOW, Inc. v. Scheidler, 510 U.S. 249 (1994). . . . . . . . . 6

Precision Pine & Timber, Inc. v. United States, 50 Fed. Cl. 35 (2001). . . 13

Rumsfeld v. Applied Cos., Inc., 325 F.3d 1328 (Fed. Cir. 2003). . . . . 7,9,10

Scheuer v. Rhodes, 416 U.S. 232 (1974) . . . . . . . . . . . . 6

Sommers Oil Co. v. United States, 241 F.3d 1375 (Fed. Cir. 2001) . . . 6

Torncello v. United States, 231 Ct. Cl. 20, 681 F.2d 770 . . . . . . . 11

United States v. Connally, 716 F.2d 882 (Fed. Cir.1983)(en banc). . . . 5

United States v. Mitchell, 463 U.S. 206 (1983). . . . . . . . . . . 5

## FEDERAL STATUTES

28 U.S.C. §1491(a)(1).. . . . . . . . . . . . . . . . . . . . . 6

41 U.S.C. §601 et seq. . . . . . . . . . . . . . . . . . . . . . 4,9

## COURT RULES

12 (b)(1). . . . . . . . . . . . . . . . . . . . . . . . . 1,5

12 (b)(6) . . . . . . . . . . . . . . . . . . . . . . . . 1,5,6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM D. HOOKER, d/b/a<br>GEORGIA BOWHUNTERS SUPPLY,<br><br>Plaintiff<br><br>vs<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 03-1501C,04-1126<br>Judge Allegra |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), plaintiff, William D. Hooker, respectfully requests that the motion of defendant, The United States, to dismiss portions of plaintiff's first amended complaint, Case Number 03-1501 and plaintiff's original complaint, Case Number 04-1126, for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, be granted in part and denied in part, as supported by the following memorandum of law.

**STATEMENT OF THE ISSUES**

Defendant's partial motion to dismiss presents four issues for determination:

1. Whether this Court possesses jurisdiction to entertain Mr. Hooker's claims regarding alleged exposure to contamination, and if so, whether Mr. Hooker has stated a claim upon which relief can be granted.

2. Whether this Court has jurisdiction to entertain Mr. Hooker's claim that he incurred additional costs in hiring RAD II trained employees under the beaver contract, as he did not present this claim to the contracting officer prior to filing his complaint.
3. Whether Mr. Hooker has failed to state a claim for a breach of the beaver contract based upon the allegation that the Government reduced its requirements under the contract and did not exercise the option year.
4. Whether Mr. Hooker has failed to state a claim for a breach of the hog contract based upon the allegations that the Government wrongfully withheld payments for non-conformance of services, barred two of his employees, and "lost" his contraband pass.

## STATEMENT OF THE FACTS

Hooker entered into two contracts with the Department of Agriculture, USFS ; the hog contract (#53-4660-8-04) on October 29, 1997 and the beaver contract (#53-4660-9-06) on January 22, 1999.

The Hog Contract

The hog contract was for a period of one year with options to extend for twelve month increments until a three year maximum contract period had been reached. This contract was further modified on October 1, 1999. On June 30, 1999 the contracting officer, Homer Gabard, issued a letter withholding payments totaling $1,320.00 due to nonconformance to contract specifications and further refused to pay for hogs itemized in subsequent invoices. Also, on June 30, 1999 the contracting officer, Homer Gabard, barred two of Hooker's employees "forever" from the Savannah River Site.[1] Hooker was then unable to perform under the contract and had to purchase dogs and equipment as

1.One of these same employees who had been barred "for life" from the SRS, was subsequently awarded two hog contracts with the USFS by the contracting officer.

well as hire new employees. During this same period of time, The USFS "lost" Hooker's contraband pass, which he was required to have to carry a firearm on the property, thus preventing Hooker from performing under the contract. Hooker submitted a Request for Equitable Adjustment for the actions previously stated, this was denied in part by the new contracting officer, Margaret Yeaton, on June 10, 2004. Hooker's complaint was then filed with this Court.

The Beaver Contract

Contract #53-4660-9-06 was awarded to Hooker to trap beaver and maintain culverts on the SRS property. (First Amend. Compl.¶6). Hooker's claim under the beaver and culvert cleaning contract stems from his concerns regarding the possible contamination of ponds that he and his employees had trapped beaver in without protection. On February 22, 1999, Hooker was suddenly presented with a work clearance permit for trapping in a specific area he had trapped in for years. This permit required certain protections and required him to be RAD II qualified. The contract language in the beaver contract stated that no toxological hazards were connected with the beaver trapping. Hooker questioned what contaminants were in the ponds he had been trapping in and requested, albeit verbally, a renegotiation of the contract. This request was denied. Subsequent to Hooker's inquiries, the USFS effectively shut down his trapping sites, discontinued the culvert cleaning, breaching the contract and failing to renew the option year. Hooker submitted many Requests for Equitable Adjustments which were denied by the contracting officer, Homer Gabard on July 29, 2002.(Def. Motion to Dismiss, App.223-27).

**PROCEDURAL HISTORY**

On June 17, 2003, Hooker filed a complaint pursuant to the Contract Disputes Act, 41 U.S.C.§601 et seq., for breach of both the beaver and hog contracts. On September 17, 2003, the Government filed a motion to dismiss Hooker's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Oral argument was held on February 20, 2004, resulting in the Court granting in part and denying in part the Government's motion. The Court denied the Government's motion with respect to the beaver contract claims, instructing Hooker to file an amended complaint to clarify how alleged exposure to contaminants resulted in damages and to assert a claim for bad faith. Hooker filed an amended complaint on March 17, 2004. The Court dismissed without prejudice Hooker's claims under the hog contract because they were not raised before the contracting officer. The Court suggested that Hooker file a new claim with the contracting officer and then a new claim if the contracting officer denied the claim. Hooker filed a new Request for Equitable Adjustment on April 10, 2004 which was denied on June 10, 2004. Hooker then filed his new complaint on July 7, 2004. The two cases were consolidated by order of the Court on July 23, 2004. Defendant answered both Hooker's amended complaint and new complaint on September 7, 2004 . A status conference was held by conference call on December 21, 2004. At that time, the Government was instructed to file a motion to dismiss due by January 10, 2005. This response follows.

## SUMMARY OF ARGUMENT

Submitted for the court's consideration is Hooker's argument that dismissal of Hooker's claims for failure to state a claim for alleged exposure to contamination is inappropriate because defendant has misread the complaint to allege it. Defendant is correct that Hooker's claim for additional costs incurred in hiring RAD II trained employees was not submitted in writing to the contracting officer. Hooker made this request in a conversation with the contracting officer . Since there was no written request, Hooker abandons this claim. Hooker's claim that the government breached the beaver contract and failed to exercise the option year sounds in bad faith. Hooker has pled facts sufficient, if proven, to establish bad faith. With respect to the hog contract, the events surrounding the Government's withholding of payments, barring his employees for life, and then awarding one of these employees the same contract states a claim for bad faith and should not be dismissed for failure to state a claim.

## ARGUMENT

### Standard of Review:

This matter is now before the court on Defendant's motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction and pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. A claimant must "invoke substantive rights grounded expressly or by implication in a contract, an act of Congress, or a regulation of an executive department" *United States v. Connally*, 716 F.2d 882(Fed. Cir. 1983) (en banc) (citing *United States v. Mitchell,* 463 U.S. 206(1983); *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599 (1967)).

It is appropriate to grant a motion to dismiss under RCFC 12 (b)(6) when the facts asserted by the plaintiff do not entitle it to a remedy under the law. When a court reviews the sufficiency of the complaint, whether for failure to state a claim or for lack of subject matter jurisdiction, "its task is necessarily a limited one". *Scheuer v. Rhodes*, 416 U.S. 232 (1974). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Under RCFC 12(b)(6) the court must accept as true the facts alleged in the complaint, *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999) and must construe all reasonable inferences in favor of the non-movant. *Sommers Oil Co. v. United States*, 241 F.3d 1375(Fed. Cir. 2001). Therefore, the court must deny a motion under RCFC 12(b)(6) if relief can be granted "under any set of facts that could be proved consistent with the allegations." *NOW, Inc. v. Schceidler*, 510 U.S. 249(1994).

1. Hooker has not claimed that he is entitled to compensation for alleged exposure to contamination, or misrepresentation by the government which would sound in tort. Rather, Hooker argues that reformation of the contract is appropriate due to changed circumstances .

Contrary to the Government's assertion that Hooker is claiming damages for alleged exposure to contaminants during hog hunting or beaver trapping, which would sound in tort and prevent jurisdiction under the Tucker Act, 28 U.S.C. §1491(a)(1). Hooker instead is claiming that the Government should have renegotiated or reformed the beaver contract terms to reflect the additional training and equipment required once the possibility of contamination was discovered. First Amend. Comp.¶ 21. In Hooker's

multiple REA's submitted to the contracting officer, he pointed out that the contract language stated there were no toxological hazards associated with the beaver trapping; yet in issuing its work order of February, 1999 the Government required him to wear protective gear and be RAD II qualified. Hooker is not claiming that the Government intentionally misrepresented the state of affairs at the SRS site, but once the contamination was discovered, Hooker argues that the contract should have been reformed to account for the extra protections and training necessary because of possible exposure to toxological hazards on the site. *Rumsfeld v. Applied Cos., Inc.*.325 F. 3d 1328 ( Fed. Cir. 2003).(affirming a finding of liability for the Government's negligent estimates in the context of a requirements contract, and remanding for a determination of damages). In essence, the contract language stated no hazards; hazards were later discovered to have been ongoing, so if Hooker had seen the correct language and requirements in the proposal for bids, he would have increased his price per hour as well as price per beaver to account for the increased risk and the cost of protective clothing and extra training. This is essentially a claim that the Government was negligent in its estimates. Damages for negligent estimates do not sound in tort, but instead in contract, *Datalect Computer Services, Ltd. V. United States,* 41 Fed. Cl.720 (1997).

The Government's argument that Hooker cannot recover for bad faith breach of the beaver contract because he fails to state a claim for either contractual misrepresentation or failure to disclose superior knowledge misstates the issue. Hooker's claim for bad faith is not grounded in misrepresentation by the Forest Service, but rather the Forest Service's breach of the beaver contract after Hooker's inquiries about contamination. Hooker claims (Pl.Amend.Comp.¶14,15) that after July of 1999, the 53 sites that he had

been allowed to trap were reduced to 1 and the culvert cleaning was stopped . Hooker believes that this was in response to his concerns about contamination of the ponds. The Government argues that since there is no evidence that the ponds were contaminated , other than the sign on the ground, that there is "no harm, no foul". The Government also argues that NIOSH found no evidence of contamination. [2] However, the NIOSH investigation was not done contemporaneously with the breach of the contract, but almost a year later. (Def. Motion to Dismiss, App. 235, NIOSH report dated December 27, 2000) The fact that the contract language specified no toxological hazards but the Forest Service suddenly required Hooker to have protection to enter the ponds is the best evidence of the breach. The issue is not whether the ponds were actually contaminated (the NIOSH investigators could not enter the pond where the contamination was alleged because it had been filled with water by the time of the investigation), but rather, did the Forest Service decide that protection was required contrary to the contract language? (NIOSH report)

2. <u>The misrepresentation issue: The Government in its Motion to Dismiss maintains there was no misrepresentation as to the toxological hazards because Hooker failed to establish any factual evidence supporting his theory that the areas in which he was hunting unprotected contained any such hazards.</u>

The Government argues that the evidence of the discovery of the sign is not enough. The best evidence of misrepresentation is the contract itself, which stated no hazards existed- and the fact that the government later required protective gear in the sites previously trapped without protection.

[2] To the contrary, Page 5, ¶4 of the report states: "The WCP's were issued by Westinghouse staff without a full understanding that the work would involve disturbing contaminated soil during the placement of beaver traps.

3. This Court Lacks Jurisdiction to Enterain Mr. Hooker's Claims for Additional Money Under the Beaver Contract to hire RAD II Trained Workers because he failed to present this claim to the contracting officer.

Clearly, any request for adjustment must be made in writing and presented to the Contracting Officer. Hooker presented this request in a conversation with Homer Gabard, the Contracting Officer and Gabard declined to adjust the contract. (Comp. ¶21) Hooker did not put his request in writing as required under the Contract Disputes Act, 41 U.S.C. §601 et seq. Accordingly, Hooker withdraws this portion of his Complaint.

4. Did Hooker fail to state a claim because Government did not have a contractual duty to maintain its requirements or to exercise the option year absent bad faith ? Hooker has pled facts, that if proven, establish that the Government acted in bad faith.

The beaver contract is unarguably a requirements contract. A requirements contract "calls for the Government to fill all its actual requirements for specified supplies or services during the contract period by purchasing from the awardee, who agrees to provide them at the agreed price". *Medart, Inc. v. Austin*, 967 F.2d 579 (Fed. Cir. 1992). A requirements contract necessarily obligates the Government to purchase exclusively from a single source. *Coyle's Pest Control, Inc. v. Cuomo,* 154 F.3d 1302 (Fed. Cir. 1998). It is well accepted that the Government breaches a requirements contract when it has a requirement for contract items or services, but diverts business from the contractor and does not use the contractor to satisfy those requirements. *Rumsfeld v. Applied Cos.,Inc,* 325 F.3d 1339 (Fed. Cir. 2003). Hooker discovered that one of the ponds he had been trapping in for beaver was actually posted as contaminated, but the signage had not been maintained (Pl. Amend. Comp.¶ 12) This was in June of 1999. Hooker began

making inquiries of the USFS and SRS as to what type of contamination existed. Soon thereafter, the Government reduced the sites he was allowed to trap from 55 sites to 1; and stopped the culvert cleaning. (Pl. Amend. Comp.¶17) Later, Hooker was given work orders for four sites in Four Mile Branch containing possible contaminants and was monitored by Site Health Protection personnel, although he had previously trapped these areas without protection or work orders. It is beyond comprehension that the beaver living on the SRS property had suddenly all moved to four sites or stopped building dams that prevented water flow. It also stretches the imagination that the culverts suddenly stopped filling up with silt, thus obviating the need for clearing. Hooker to date has not been allowed to pursue discovery. Of particular interest in requests for discovery would be inquiries as to who was trapping the beaver, and who was cleaning the culverts? If the Government had requirements for trapping the beaver and cleaning the culverts and did not use Hooker to satisfy those requirements, it is in breach of the beaver contract. *Rumsfeld*, 325 F.3d at 1339. The bar graph entitled Beavers Trapped in 1999, prepared by the U.S. Department of Agriculture (Defs. Appendix at 228 Attachment #1) indicates a statistically significant drop in beavers trapped after June, 1999, which is the date Hooker first raised his contamination concerns.

Hooker should be allowed to pursue discovery to determine the above questions.

Has Hooker stated a claim for bad faith in the beaver contract? The court proceeds from a " strong presumption that government officials exercise their duties in good faith". *Am-Pro Protective Agency, Inc. v. United States,* 281 F.3d 1234 (Fed. Cir. 2002)(citing *Knotts v. United States,*128 Ct. Cl. 489 (1954)). In *Am-Pro Protective Agency, Inc. v. United States*, the Federal Circuit considered the extent of proof required to demonstrate

that the government acted in bad faith and modernized the language of the "well-nigh irrefragable proof" standard, consistent with its presumption that a "high burden must be carried to overcome the presumption of good faith. The court determined that the "clear and convincing" standard of proof "most appropriately describes the burden of proof applicable to the presumption of the government's good faith". *Id.* In *Am-Pro Protective Agency, Inc. v. United States,* the court said: "In the cases where the court has considered allegations of bad faith, the necessary "irrefragable proof" has been equated with evidence of some specific intent to injure the plaintiff." (quoting *Torncello v. United States*, 231 Ct. Cl. 20, 681 F.2d at 770). The Court in *Am-Pro*, *Id.* found no bad faith on the part of the government because Am-Pro had executed a prior release of claims, and presented only one uncorroborated affidavit six years after the fact to substantiate the claim. This case is distinguishable from Am-Pro. The Forest Service put forth no reason for drastically reducing the beaver trapping sites and discontinuing the culvert cleaning, thereby breaching the contract. If this was this done with a specific intent to injure Hooker economically or punish him for his questions and complaints about the possibility of contamination, then Hooker's allegations sound in bad faith. Hooker should be allowed to pursue discovery on this issue and the motion to dismiss this portion of the complaint should be denied.

5. Did the Government breach the hog contract by withholding payments for nonconformance, barring Hooker's employees and losing his contraband pass?

In the Motion to Dismiss, the Government argues that because the word "wild" is used five times in the contract specifications as opposed to the word "feral" used three times in the Schedule, that the definition of wild should control. When construing a claim, a court should look first to the intrinsic evidence; i.e. the claims themselves, the

written description portion of the specification, and the prosecution history. *Bell & Howell Document Mgt. Prods. Co. v. Altek Sys.*, 132 F.3d 701 (Fed. Cir. 1997). Generally, a claim is given its ordinary and customary meaning; that is, meaning the claims "“speak to those skilled in the art” *Electro Medical S7s. S.A. v. Cooper Life Science, Inc.*, 34 F.3d 1048 (Fed. Cir. 1994). Case law suggests that one which gives all the words in the claims their ordinary and accustomed meaning, is preferred. *The Boeing Co. v. U.S., ( _).* Here we have competing terms used in the contract and these terms have different definitions; from Hooker “feral” implies hogs that once were domestic but have become wild; and from the Government “wild” meaning historically running free. Once again, there is missing information that can only be gained in discovery; i.e.

> What is the policy of SRS toward hogs found on the property that are deemed to be domestic hogs? Are they left undisturbed? If so, why? What is the government’s purpose in controlling the wild hog population and does that apply to domestic hogs? And if the contracting officer tasked Wackenhut security to find out whether domestic hogs were being brought on to the property; how was this investigation conducted? Since the contractors were only allowed to enter through one gate, were the hogs brought in their trucks? Why weren’t they observed by Wackenhut? And why would a contractor, having procured a domestic hog, bring it onto SRS property, kill it and collect $55.00 when the contractor could sell it live on the market for many times the $55.00 payment for the carcass? These are questions that should rightfully be explored in discovery.

The contracting officer, Homer Gabard, barred two of Hooker’s employees for life. The contract language states that the <u>Contractor</u> shall be responsible for taking

disciplinary action with respect to his/her employees as may be necessary (H.6). The Contracting Officer failed to give Hooker this opportunity under the contract, but barred two of Hooker's employees forever. H.16 addresses the instances in which an individual will be denied future access to SRS. These include conviction for a felony, positive drug screen, possession or trafficking in drugs, theft of government property, etc. None of these instances applied to the investigation of domestic hogs.

In any contract, whether it be between individuals or between an individual and the Government, there is an implied duty not to hinder performance and to cooperate; that neither party to the contract will do anything to prevent performance by the other party or that will hinder or delay him in his performance. *Lewis-Nicholson, Inc. v. United States,* 213 Ct.Cl. 192, 550 F.2d 26 (1977). Not only must the government not breach this implied provision, it must do whatever is necessary to enable the contractor to perform. *Id.* In *Precision Pine & Timber, Inc. v. United States,* 50 Fed. Cl. 35(2001), the court elaborated on the implied duty not to prevent, hinder or delay performance in a government contract. The Government's delay in the issuance of the contraband pass prevented Hooker from performing under the hog contract for at least six weeks. (Pl. Comp.¶16,17) The Contracting Officer's denial states that "she cannot locate any records to substantiate any claims due to delays by the government- Consider the claim denied." The Government provides no reason for denying this claim other than failure to locate records; and it should survive a motion to dismiss.

In both the hog and beaver contracts, there are many ambiguities surrounding the actions of the contracting officer, and the denials of the Requests for Equitable Adjustment fail to justify the reasonableness of these actions. These ambiguities should

be resolved by allowing Hooker to conduct discovery on all of the issues surrounding the two contracts.

**CONCLUSION**

Plaintiff agrees that the partial motion to dismiss Hooker's complaint as to the issue that Hooker failed to present a written request for adjustment to the contracting officer for additional costs in hiring RAD II personnel under the beaver contract should be granted. For all other portions of the partial motion to dismiss, for the reasons stated, Hooker respectfully requests that this Court deny the motion to dismiss and allow Hooker to pursue discovery as to the issues in this case.

Respectfully submitted,

S/ Berta E. (Robbie) Nichols
206 Carolina Bldg., P. O. Box 7925
Hilton Head Isl., SC 29938

February 5, 2005

Attorney for Plaintiff