Nos. 03-1501, 04-1126
(Judge Allegra)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

WILLIAM D. HOOKER,
d/b/a GEORGIA BOWHUNTERS SUPPLY,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO COMPEL DISCOVERY AND FOR EXPEDITED CONSIDERATION OF THIS MOTION

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

TODD M. HUGHES
Assistant Director

LINDSAY E. WILLIAMS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW, 8th Floor
Washington, D.C. 20530
Telephone: (202)353-7995
Facsimile: (202)514-8624

January 20, 2006

Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

## COURT RULES

37(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM D. HOOKER, d/b/a<br>GEORGIA BOWHUNTERS SUPPLY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Nos. 03-1501C, 04-1126C<br>(Judge Allegra) |

**DEFENDANT'S MOTION TO COMPEL DISCOVERY**
**AND FOR EXPEDITED CONSIDERATION OF THIS MOTION**

Pursuant to Rule 37(a) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully requests that, as a result of plaintiff William D. Hooker's failure to properly respond to defendant's first set of interrogatories and requests for document production, the Court issue an order compelling Mr. Hooker's responses.[1] We have been unsuccessful in our attempts to resolve this matter in good faith with Mr. Hooker's counsel, pursuant to RCFC Appendix A, ¶ 10. In support of this motion, defendant relies upon Mr. Hooker's complaint, amended complaint, the following assertions and the attached exhibits.

STATEMENT OF FACTS

On June 17, 2003, Mr. Hooker filed a complaint pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq. ("CDA"), for breach of a contract to control the wild hog population on

[1] The discovery deadline in this case was set for January 16, 2006. Defendant filed a motion for a 60-day enlargment of time within which to complete discovery, making the new discovery deadline, if the Court grants the motion, March 17, 2005. Given this short time line, we ask that the Court give this motion expedited consideration and order Mr. Hooker to respond to the Government's interrogatories and request for document production by February 3, 2006.

the Savannah River Site[2] ("SRS") by trapping and use of trained dogs, and a second contract to trap beaver and maintain culvert outlets and inlets on the SRS. First Amend. Compl.[3] ¶ 6.

Mr. Hooker filed an amended complaint on March 17, 2004, related to the beaver contract claims. Mr. Hooker alleges that the Government "effectively terminated" his beaver contract because he asked questions about contamination on the SRS and filmed a sign upon the ground that allegedly indicated that there was contamination in an area where he trapped beaver. First Amend. Compl. ¶ 15. He also claims that USFS breached the contract by reducing the number of trapping sites from the original contract language and by prohibiting him from performing culvert cleaning. First Amend. Compl. ¶ 17. Additionally, Mr. Hooker alleges that USFS acted in bad faith, in failing to inform him of alleged contamination in the ponds in which USFS require him to work and by breaching his base and option contracts in retaliation for his concerns about the alleged contamination. First Amend. Compl. ¶¶ 21-26. Mr. Hooker requests $80,000 in damages to cover the remaining contract term and the loss of the option year, as well as an unspecified amount in consequential and punitive damages. First Amend. Compl. ¶¶ A-D.

On July 7, 2004, Mr. Hooker filed a new complaint, number 04-1126, related to the hog contract claims. In his new complaint regarding the hog contract Mr. Hooker appeals the June 10, 2004 contracting officer's final decision upon a claim that Mr. Hooker submitted on April 7, 2004. In this complaint, Mr. Hooker claims the Government breached the contract when it:

---

[2] The SRS is owned by the Department of Energy ("DOE") and managed by Westinghouse, who is the operating contractor. DOE has an inter-agency agreement with USFS to maintain the land.

[3] "First Amend. Compl." refers to plaintiff's first amended complaint in case number 03-1501.

1) withheld payments and refused to pay invoices for hogs deemed "domestic;" 2) barred Mr. Hooker's employees from the SRS; 3) lost Mr. Hooker's contraband pass for six weeks, preventing him from performing the work under the contract; and 4) failed to respond to Mr. Hooker's proposal subsequent to contract modification number 4, which allegedly extended the contract until a new contract was awarded.

On August 15, 2005, the parties filed a Joint Preliminary Status Report ("JPSR") pursuant to Appendix A of the RCFC. In the JPSR, the parties informed the Court of an agreed upon discovery plan whereby discovery would be completed by December 15, 2005.

On October 17, 2005, the Government received Mr. Hooker’s discovery requests. On October 31, 2005, Mr. Hooker received defendant’s requests.[4] The parties agreed to provide discovery responses no later than December 5, 2005, as the parties had scheduled depositions December 7 and 8, 2005.

On November 23, 2005, the parties submitted a joint motion for a 30-day enlargement of time within which to conduct discovery through and including January 16, 2006.

On December 5, 2005, the Government received Mr. Hooker’s discovery responses, yet the responses were insufficient.[5] Mr. Hooker had responded to only 11 of 30 interrogatories, with many of the responses stating that he was unable to respond to the interrogatory until after depositions had taken place. Additionally, he provided almost no documentation whatsoever in response to defendant’s requests for document production.

---

[4] A copy of Defendant's First Set of Interrogatories and Requests For Production of Documents ("defendant's interrogatories" or "interrogatories") is attached as Exhibit A.

[5] A copy of Mr. Hooker’s responses to Defendant’s First Set of Interrogatories and Requests For Production of Documents is attached as Exhibit B.

Government counsel contacted Mr. Hooker's counsel on December 5, 2005, by telephone to inform her that the discovery responses were insufficient and to inquire as to why the responses were incomplete. That same day, Government counsel sent a letter to Mr. Hooker's counsel in a good faith attempt to resolve the discovery dispute, requesting that Mr. Hookerprovide complete responses no later than December 9, 2005. Additionally, the defendant's counsel informed Mr. Hooker's counsel that while defendant would proceed to depose Mr. Hooker's witnesses on December 6 and 7, defendant would keep the depositions open to continue at a later date, once Mr. Hooker properly responded to defendant's discovery requests. Mr. Hooker agreed.

On December 12, 2005, Mr. Hooker provided supplemental responses to defendant's first set of interrogatories and requests for document production.[6] Defendant received them on December 22, 2005. Mr. Hooker's supplemental responses provided answers to 25 of the 30 interrogatories, yet once again, the responses were insufficient. Many of the responses simply stated that Mr. Hooker was unable to respond to the interrogatory without further information, yet he failed to identify the information to which it was referring. Other responses were vague or incomplete. Additionally, Mr. Hooker provided almost no documentation.

On January 3, 2006, defendant's counsel sent a second letter to Mr. Hooker's counsel in a good faith attempt to resolve this dispute, informing her that the responses were insufficient, identifying why they were insufficient, and requesting complete responses by January 13, 2006.

On January 13, 2006, Mr. Hooker's counsel responded to defendant's January 3, 2006

---

[6] A copy of Mr. Hooker's Supplemental Responses to Defendant's First Set of Interrogatories and Requests For Production of Documents is attached as Exhibit C.

letter via email, stating: "Referencing your letter of January 3 regarding our discovery responses, obviously there are questions I cannot respond to until we receive the government's responses." To date, defendant has produced all information requested by plaintiff in his first set of interrogatories and requests for document production. Additionally, defendant has made available three of its witnesses for depositions, taken Mr. Hooker on a three hour tour of the SRS, and hired a photographer to take photographs of the SRS for Mr. Hooker's use.

The responses to which Mr. Hooker's counsel refers in her January 13, 2006 email, are defendant's responses to "Plaintiff's Supplemental Request For Production Of Documents And Entry Upon Land For Inspection" and "Plaintiff's Supplemental Interrogatories To Defendant," which were served upon defendant on December 12, 2005. (Emphasis added). Currently, defendant is gathering the information requested by plaintiff – some of it is quite extensive – and will produce that information within the next 14 days.

## ARGUMENT

Mr. Hooker's original and supplemental responses to defendant's interrogatories and requests for document production are incomplete, vague and confusing. As evidenced below, Mr. Hooker has refused to provide even the most basic information supporting the allegations contained in his complaint and amended complaint.[7]

Defendant's Interrogatory Number 7 requested that Mr. Hooker provide the factual and legal basis for the allegation, contained in his complaint, that hogs were dispatched while on the SRS property, were running wild, and were within the definition of wild or feral hogs under the

---

[7] All references below to plaintiff's responses are to plaintiff's supplemental responses, attached as Exhibit C.

contract. Mr. Hooker responded that he was "unable to respond to this interrogatory without further information from the defendant which has been requested." Additionally, he stated that he "will supplement this response as more information becomes available." His response is confusing, as defendant does not know to what information he is referring. Mr. Hooker did not request any information related to this interrogatory in "Plaintiff's Supplemental Request For Production Of Documents And Entry Upon Land For Inspection," and he does not identify what information it is that he needs in order to respond to this interrogatory. It is especially confounding considering that defendant has already provided Mr. Hooker with responses to his first set of interrogatories and requests for document production and he has deposed three Government witnesses. Thus, we are at a loss as to what information it is that Mr. Hooker has requested regarding this topic, or what information it is that he need before he can provide us with the factual and legal basis for an allegation included in the complaint. His response is insufficient considering that the Government simply requests that he provide us the factual and legal basis for an allegation he makes in his complaint.

Defendant's Interrogatory Number 8 requested that Mr. Hooker describe in detail the factual and legal basis for his contention, contained in paragraph 10 of his complaint, that the Government's withholding of $1,320.00 due to non-conformance to contract specifications and refusal to pay subsequent invoices constituted a breach of the terms of the Hog Contract. Mr. Hooker's response consists of the following statement: "[r]eference is made to current contract specifications which define the term 'wild hog.'" Mr. Hooker's vague statement does not in any way respond to the question posed in Interrogatory number 8. Once again, we simply request that he provide us with the basic legal and factual basis for an allegation contained in his

complaint. His vague response is insufficient.

Defendant's Interrogatory Number 9 requested, among other things, the legal and factual basis for Mr. Hooker's contention, contained in paragraph 12 of the complaint, that he was unable to perform the Hog Contract, had to purchase dogs and other equipment to complete the contract, and hire new employees. Additionally, Interrogatory Number 9 requested that he state specifically what tasks he was unable to perform and the dates and what rates he hired new employees. He provided no response to these portions of the interrogatory. Mr. Hooker made no mention of equipment that he was required to purchase. He failed to state what tasks he was unable to perform. He did not provide the dates or the rates at which he hired new employees. As these allegations directly support his claim for damages, we must have some proof of these alleged costs or damages he incurred.

Defendant's Interrogatory Numbers 12 and 13 requested information related to the allegations, contained in paragraphs 17 and 18 of the complaint, that the Government lost Mr. Hooker's contraband pass. Mr. Hooker responded by stating that "[t]here is conflicting information regarding this contention; plaintiff cannot respond to this interrogatory at present. Plaintiff will supplement this response as soon as further information becomes available." Once again, this is not a responsive answer. He expressly states that he is not responding to the interrogatory. He states there is conflicting information, but fails to identify the information or the conflict. He states that he will supplement his "response" as soon as further information becomes available, yet he does not identify what information it is that he needs in order to supplement his response.

Defendant's Interrogatory Number 14 requested that Mr. Hooker state specifically what

areas of the SRS property he hunted hogs and trapped beavers, and for each area identified, state what time frame he hunted hogs and trapped beavers in that area. He provided a vague and overbroad response by stating that he hunted hogs on the entire SRS site from 1992 to 1999, and that he trapped beaver during "approximately the same time period," at the 53 beaver trapping sites. This is not a sufficient response. As the complaint alleges that Mr. Hooker's contracts should have been reformed due to him possibly being exposed to contamination while hunting and trapping upon the SRS site, it is relevant and imperative that we know at which sites and areas, specifically, and at what times, specifically, he was hunting and trapping. We are aware that he was on the SRS site and we are aware where the 53 beaver trapping sites are located. This does not provide an answer as to which specific locations and at which specific times Mr. Hooker hunted and trapped and was allegedly exposed to contamination.

Defendant's Interrogatory Number 15 requested that Mr. Hooker provide the factual and legal basis for his contention, contained in paragraph 20 of the complaint, that he became aware that he had been working in contaminated areas and subsequently requested an adjustment in contract price. Mr. Hooker responded that he "became aware that he had been working in contaminated areas when presented with a Work Clearance Permit in February, 1999 and thereafter when soil contamination area signs were discovered at a trapping site as documented in the videotape taken June 1, 1999." Yet, his response does not identify which site was included in the video tape taken June 1, 1999. His response does not state whether he requested an adjustment in contract price, to whom he made the request, when he made the request, whether the request was made orally or in writing, how much was requested, or any other information related to this allegation.

Defendant’s Interrogatory Number 19 requested that Mr. Hooker describe in detail the factual and legal basis for the contention, contained in paragraph 32 of the complaint, that he believes the Government's actions were taken in bad faith and with specific intent to injure him economically and to punish him for his concerns about the negligence of the Government. Mr. Hooker’s response states, “Please see plaintiff’s complaint.” His reference to the complaint is an insufficient response. We are aware of the allegations made in his complaint. We are seeking what, if any, evidentiary support he relied upon in making those allegations. In addition to his reference to the complaint, his response mentions that the Government overpaid him for something, he does identify what, and then deducted the amount from future invoices. Also, he states that the Government reduced his beaver trapping sites to one, making it difficult for him to repay the overpaid amount. While his response is somewhat responsive to the interrogatory, it is still confusing, as it lacks detail, dates, and other specific information. We request that he identify specifically all Government actions that constituted bad faith and the Government negligence to which he refers, and why he believes the Government had a specific intent to injure him.

Defendant’s Interrogatory Number 20 requested that Mr. Hooker identify the sums referred to in paragraphs A, B, C, D, E and F of the complaint. He stated that one of the sums is "unpaid invoices in an amount to be determined." At this point in time, Mr. Hooker should be aware which invoices were allegedly not paid, he should be able to identify them, and he should have provided those invoices with his response to our interrogatories. Additionally, he stated that "[a] price adjustment per hog due to the contamination of the work environment is to be determined." Again, this is not responsive. Mr. Hooker should, at this juncture, be able to

identify what that price adjustment would be.

Defendant's Interrogatory Number 23 requested that Mr. Hooker identify the sites referred to in paragraph 14 of his complaint and state the dates upon which he hunted hog or trapped beaver at these sites. He responds that he is "unable to respond to this question until defendant provides a list of all contaminated sites on the SRS." This response is insufficient. Mr. Hooker alleges in his complaint that he was forced to hunt and trap in contaminated areas. There is a reason(s) Mr. Hooker believes he hunted and trapped in contaminated areas; we simply ask him to identify the reason(s). If it is that Mr. Hooker saw contamination signs at specific sites, we ask that he identify the signs, the sites/locations, and the approximate date that he saw the signs and hunted or trapped at that site/location.

Defendant's Interrogatory Number 24 requested that Mr. Hooker describe in detail the factual and legal basis for his contention, contained in paragraph 15 of his amended complaint, that he believed that the Government "became aware" of Mark Lubert video taping an allegedly contaminated site. Additionally, Interrogatory number 24 requests that Mr. Hooker identify who "became aware" of the videotaping, what "became aware" means, and the site that Mark Lubert videotaped. While Mr. Hooker responds that a Government employee, Frankie Brooks, accompanied him and Mark Lubert to the site where the videotaping took place, he failed to identify the site that Mark Lubert videotaped. Because Frankie Brooks and Mr. Hooker could have different opinions about the site at which they were video taping, defendant needs to know which site Mr. Hooker believes they were taping.

Additionally, Mr. Hooker once again refused to provide responses to Defendant's Interrogatory numbers 26-30. These interrogatories simply request that he provide us with the

factual and legal support for the general allegations contained in his complaint and amended complaint, including damage calculations. The complaint and amended complaint contain almost no information about most of Mr. Hooker's contentions or the alleged facts that support them. This request in entirely reasonable considering Mr. Hooker's lack of responses to date and the fact that much of what he classifies as "responses" to twenty-five of our interrogatories are statements that he is "unable to respond" to the interrogatories.

Pursuant to RCFC 11, by including allegations in the complaint, Mr. Hooker certified to the Court that the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. As he did not specifically identify any allegations as ones that were likely to have evidentiary support, we must assume that they actually have evidentiary support, which he must provide to us pursuant to the rules of discovery. Despite defendant's attempts to resolve this dispute, Mr. Hooker still has not sufficiently responded to any of the defendant's requests for the above-mentioned relevant information.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant this motion to compel, and enter an order requiring Mr. Hooker to respond to the discovery identified above by February 3, 2006.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Todd M. Hughes
TODD M. HUGHES
Assistant Director

s/ Lindsay Williams
LINDSAY WILLIAMS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street NW
Phone: (202) 353-7995
Fax: (202) 514-8624

January 20, 2006

Counsel for Defendant