IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM D. HOOKER,d/b/a<br>GEORGIA BOWHUNTERS SUPPLY,<br><br>Plaintiff<br>Vs<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 03-1501C, 04-1126<br>Judge Allegra |

TO: LINDSAY WILLIAMS, ESQ., ATTORNEY FOR DEFENDANT

PLAINTIFF'S SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to RCFC 33 and 34, plaintiff, through his undersigned counsel, responds as follows to the defendant's requests.

INTERROGATORY NO. 1:

Identify each individual who participated in preparing any of the responses to these interrogatories, including, but not limited to, drafting, discussing, commenting upon, or supplying information for use in any of the responses. For each individual, identify which interrogatory response or portion of a response with which the individual was involved, and describe the extent and nature of his or her involvement, including the basis for the individual's participation –e.g. personal knowledge of an event in question, or review of documents in connection with the individual's duties in his or her employment by plaintiff.

**RESPONSE:**

**William D. Hooker prepared responses from personal knowledge of all events in question assisted by Robbie M. Nichols, his counsel.**

INTERROGATORY NO. 2:

Identify the name, current address, current telephone number, and employer of each and every person who prepared, assisted, reviewed, or commented upon the plaintiff's offer, proposal, bid, or quotation for the award of the contracts and for each person describe in detail:

(a) the specific nature of their participation and review; and

(b) the employer of the person at the time he or she worked upon the proposal.

**RESPONSE:**

**William D. Hooker, 6950 Haire Baston Road, Appling, GA 30802. No phone. Not employed. At the time Mr. Hooker worked on the proposals, he was employed by Westinghouse; subsequent to March, 2000 Mr. Hooker was unemployed. Andy Cromer also participated in preparing proposals. His address is: 1018 Thurmond Street, N. Augusta, SC 29841. (803) 279-1364 Mr. Cromer was employed by Georgia Bowhunters.**

INTERROGATORY NO. 3:

Identify the name, current address, current telephone number, and employer of each and every person who prepared, assisted, reviewed, or commented upon the offer(s), proposals(2), bid(s), or quotation(s) of the subcontractor(s), supplier(s), and equipment rental(s) and purchase(s) for the contracts at issue, and for each person describe in detail:

(a) the specific nature of their participation and review; and

(b) the employer of the person at the time he or she worked upon the proposal.

**RESPONSE: See response to Interrogatory No. 2.**

INTERROGATORY NO. 4:

State the following information for each person that you expect to call as an expert witness in the trial of this case:

(a) Name;

(b) Business address and business telephone number;

(c) Describe in detail the expert's educational background including all schools of higher education attended and when, all degrees earned and when, and all honorary or other awards conferred and when;

(d) Describe in detail the expert's experience in the subject area about which the expert is expected to testify;

(e) State the subject matter about which the expert is expected to testify;

(f) State the substance of the facts and opinions about which the expert is expected to testify;

(g) Provide a summary of the grounds for each of the expert's opinions;

(h) Identify all documents the expert has reviewed in connection with his work as an expert witness;

(i) Identify all documents that have been prepared by the expert, under the expert's supervision, and/or pursuant to the expert's direction in connection with his work as an expert witness;

(j) Identify all documents the expert will rely upon in giving testimony at deposition and/or at trial; and

(k) Identify all court and administrative agency cases in which the expert has given testimony and state whether the testimony was given on behalf of plaintiff or defendant.

**RESPONSE:**

**Plaintiff has not retained an expert and does not plan to retain an expert witness.**

INTERROGATORY NO. 5:

State whether you rely, or intend to rely, in this litigation, either in whole or in part, upon any investigation, review, or audit, whether conducted for you, by you, or for or by someone else. If so, as to each such investigation, review, or audit:

(a) state the name or other identification of such investigation, review, or audit;

(b) state the date it was made;

(c) state whether any record or report was made of it and, if so, identify that record or report; and

(d) identify the person or organization conducting the investigation, review, or audit.

**RESPONSE: Plaintiff may make reference to the NIOSH report in possession of the defendant. A copy is attached.**

INTERROGATORY NO. 6:

Identify any document(s) relating, referring, or regarding the subject of your complaint and amended complaint known to you to be missing, destroyed, or otherwise disposed of and, for each document identified, state the disposition made of each document, the person last known to have the document in his or her possession or subject to his or her control, and identify each person you have reason to believe had knowledge of its contents or received a copy of such document.

**RESPONSE:**

**Upon Plaintiff's knowledge and belief, no documents of this type are missing, destroyed or otherwise disposed of.**

INTERROGATORY NO. 7:

Describe in detail the factual and legal basis for your contention, contained in paragraph 9 of the complaint, that hogs were dispatched while on the SRS property, were running wild, and were within the definition of wild or feral hogs under the contract, and provide the names, current addresses, current employers and phone numbers of all persons who witnessed or have knowledge related to this contention, identify all documents that substantiate this contention, and produce all documents that relate in any way to this interrogatory.

**RESPONSE: Plaintiff is unable to respond to this interrogatory without further information from the defendant which has been requested. Plaintiff will supplement this response as more information becomes available.**

INTERROGATORY NO. 8:

Describe in detail the factual and legal basis for your contention, contained in paragraph 10 of the complaint, that the Government's withholding of $1,320.00 due to non-conformance to contract specifications and refusal to pay subsequent invoices constituted a breach of the terms of the Hog Contract, and provide the names, addresses, current employers and phone numbers of all persons who witnessed or have knowledge related to this contention, identify all documents that substantiate this contention, and produce all documents that relate in any way to this interrogatory.

**RESPONSE:**

**Present and former employees of defendant:**

**Homer Gabard**

**Frankie Brooks**

**Dr. John (Jack) Mayer**

**H. B. Eagerton, Chief**

**Others:**

**Michael Eller, 204 Daniel Street, Jackson, SC 29831**

**Goldman Eller, address unknown**

**William Hooker**

**John A. Cromer**

**Reference is made to current contract specifications which define the term "wild hog".**

INTERROGATORY NO. 9:

Describe in detail the legal and factual basis for your contention, contained in paragraph 12 of the complaint, that as a consequence of losing two employees, plaintiff was unable to perform the Hog Contract, had to purchase dogs and other equipment to complete the contract, and hire new employees and provide the names, addresses, current employers and phone numbers of all persons who witnessed or have knowledge related to this contention, identify all documents that substantiate this contention, and produce all documents that relate in any way to this interrogatory. In answering, state specifically what tasks plaintiff was unable to perform, the dates and for what amounts plaintiff purchased dogs, and the dates and at what rates plaintiff hired new employees.

**RESPONSE: As a result of losing employees Goldman Eller and Michael Eller, Hooker was forced to replace the dogs required to be used in the hog contract. Hooker purchased four dogs from Michael Eller on July 6, 1999 at a cost of $2,400.00. Plaintiff then hired Mark Lubert and one other individual (hogman, name not recalled) to perform work previously performed by Goldman and Michael Eller.**

INTERROGATORY NO. 10:

State whether plaintiff submitted a bid for the hog contracts referred to in paragraph 14 of the complaint and provide the names, addresses, current employers and phone numbers of all persons who witnessed or have knowledge related to this contention, identify all documents that substantiate this contention, and produce all documents that relate in any way to this interrogatory. If you answered affirmatively, please provide copies of the bid(s).

**RESPONSE: Yes. Plaintiff's bid is provided. Homer Gabard, the former contracting officer would have knowledge of this bid . Mr. Gabard's address and other information is in possession of the defendant.**

INTERROGATORY NO. 11:

Describe in detail the factual and legal basis for your contention, contained in paragraph 15 of the complaint, that the removal of "these employees" constituted a breach of the contract terms and provide the names, addresses, current employers and phone numbers of all persons who witnessed or have knowledge related to this contention, identify all

documents that substantiate this contention, and produce all documents that relate in any way to this interrogatory.

**RESPONSE: The removal of these employees as well as the other restrictions placed on Hooker as a result of Homer Gabard's letter of June 30, 1999 constituted a breach of the hog contract in that the contract specifies wild or feral hogs. SRS has been unable to provide a definition of "wild" hogs during the 1998-99 hog contract; however, the general specifications in the current hog contracts define a wild hog as a any *wild living form of Sus scrofa, including Eurasian wild board(sic), feral hogs*, or *hybrids between these two forms*. Hooker disputes that the hogs deemed "domestic" were brought onto SRS property by Goldman or Michael Eller, who also denied these allegations. Additionally, Michael Eller was later awarded a contract with USFS, thus casting doubt upon the accuracy of the investigation.**

INTERROGATORY NO. 12:

Describe in detail the factual and legal basis for your contention, contained in paragraph 17 of the complaint, that the contracting officer "lost" the paperwork for Hooker's contraband pass, which prevented plaintiff from performing under the contract during this time and provide the names, addresses, current employers and phone numbers of all persons who witnessed or have knowledge related to this contention, identify all documents that substantiate this contention, and produce all documents that relate in any way to this interrogatory.

**RESPONSE: There is conflicting information regarding this contention; plaintiff cannot respond to this interrogatory at present. Plaintiff will supplement this response as soon as further information becomes available.**

INTERROGATORY NO. 13:

Describe in detail the factual and legal basis for your contention, contained in paragraph 18 of the complaint, that the Government's alleged loss of plaintiff's contraband pass constituted a breach of the contract and that plaintiff should be compensated for his lost income during this breach, and identify all persons who prepared, assisted, reviewed, or commented upon the information contained in this response, identify all documents that substantiate the information contained in this response, and produce all records that relate in any way to this interrogatory.

**RESPONSE: Please see response to Interrogatory No. 12.**

INTERROGATORY NO. 14:

State specifically what areas of the SRS property plaintiff hunted hogs and trapped beavers, and for each area identified, state what time frame the plaintiff hunted hogs and trapped beavers in that area.

**RESPONSE: Plaintiff hunted hogs on the entire Savannah River Site from 1992 to 1999. Plaintiff trapped beaver during approximately the same time period. During the contract at issue in this case, plaintiff trapped 53 sites as directed by the contract officer representative Frankie Brooks.**

INTERROGATORY NO. 15:

Describe in detail the factual and legal basis for your contention, contained in paragraph 20 of the complaint, that plaintiff became aware that it had been working in contaminated areas such as Par Pond and requested an adjustment in contract price, and identify all persons who prepared, assisted, reviewed, or commented upon the information contained in this response, identify all documents that substantiate the information contained in this response, and produce all records that relate in any way to this interrogatory. In answering, state specifically what the phrase "became aware" means.

**RESPONSE: Plaintiff became aware that he had been working in contaminated areas when presented with a Work Clearance Permit in February, 1999 and thereafter when soil contamination area signs were discovered at a trapping site as documented in the videotape taken June 1, 1999.**

INTERROGATORY NO. 16:

Describe in detail the factual and legal basis for your contention, contained in paragraph 23 of the complaint, that plaintiff is entitled to a readjustment to the contract price in light of possible exposure to contamination in Par Pond, and identify all persons who prepared, assisted, reviewed or commented upon the information contained in this response, identify all documents that substantiate the information contained in this response, and produce all records that relate in any way to this interrogatory.

**RESPONSE: The hog contract was silent on the issue of contamination but the beaver contract specifically stated that no toxicological hazards existed. Plaintiff bid the contract on that information. If plaintiff had known he and his employees**

**were to perform the contract in soil contamination areas, plaintiff would have submitted a higher bid for both contracts.**

INTERROGATORY NO. 17:

Describe in detail the factual and legal basis for your contention, contained in paragraphs 28 and 29 of the complaint, that the Government breached the Hog Contract by not exercising its option under the Hog Contract, and identify all persons who prepared, assisted, reviewed, or commented upon the information contained in this response, identify all documents that substantiate the information contained in this response, and produce all records that relate in any way to this interrogatory.

**RESPONSE: The modification to the hog contract extended the contract to October 31, 1999 or until a new contract is awarded. Solicitations were requested in January, 2000, but a new contract was not awarded until November 5, 2001. From October 31, 1999 until November, 2001 the Forest Service chose to have their own employees perform this contract, breaching the modification.**

INTERROGATORY NO. 18:

Explain in detail the legal and factual basis for your contention, contained in paragraph 29 of the complaint, that you have been damaged in the amount of $55,000, and identify all witnesses and documents that support your contention.

**RESPONSE: Hooker has been damaged in the amount of $55,000.00 for the contract year October 31, 1999 to October 30, 2000 and a sum to compensate him**

**for October 31, 2000 to November, 2001. Plaintiff will move to amend the complaint to reflect a more accurate claim.**

INTERROGATORY NO. 19:

Describe in detail the factual and legal basis for your contention, contained in paragraph 32 of the complaint, that you believe the Government's actions were taken in bad faith and with specific intent to injure you economically and punish you for your concerns about the negligence of the Government, and identify all persons who prepared, assisted, reviewed, or commented upon the information contained in this response, and produce all records that relate in any way to this interrogatory.

**RESPONSE: Please see plaintiff's complaint. Additionally, USFS paid Hooker's invoice twice into Hooker's bank account, and rather than reversing this deposit, instead deducted this amount from future invoices. Concurrently, USFS reduced Hooker's beaver trapping sites to one, thereby making it difficult for him to repay the amount overpaid.**

INTERROGATORY NO. 20:

Identify the sums referred to in paragraphs A, B, C, D, E and F of the complaint , and identify all witnesses and documents that support your contentions.

**RESPONSE: A. Hooker was required to purchase dogs in the amount of $2,400.00, as well as time lost in hog trapping opportunity while locating new employees. B. Withheld sums of $1,320.00 and unpaid invoices in an amount to be determined. C. As noted previously, the contract was modified to expire on October 31, 1999 or**

**until a new contract was awarded. A new contract was not awarded until November, 2001. Two years of a contract valued at $55,000 or a total of $110,000. D. A price adjustment per hog due to the contamination of the work environment is to be determined. E. Attorney's fees if bad faith is shown. Amount of fees to date is approximately $12,000.00 in fees and expenses.**

INTERROGATORY NO. 21:

Describe in detail the factual and legal basis for your contention, contained in paragraph 10 of the amended complaint, that the work clearance permit presented to you by the Government on or about February 22, 1999, required you to be RAD II qualified, have a standby person, wear protective equipment, rinse off waders and lay them on plastic for a Radiological Control Organization survey, and identify all persons who prepared, assisted, reviewed, or commented upon the information contained in this response, and produce all records that relate in any way to this interrogatory.

**RESPONSE: The Work Clearance Permit itself is the best evidence of this contention.**

INTERROGATORY NO. 22:

Describe in detail the factual and legal basis for your contention, contained in paragraph 12 of the amended complaint, that plaintiff investigated and found that at least one pond it had worked in without protection since the beginning of the Beaver Contract had been posted as contaminated, and identify all persons who prepared, assisted, reviewed, or commented upon the information contained in this response, identify all documents that

substantiate the information contained in this response, and produce all records that relate in any way to this interrogatory.

**RESPONSE: Please see videotape of June 1, 1999. Also testimony from deposition of Frankie Brooks, December 7, 2005. Also see work clearance permit for 4 Mile Creek at Rd. 4.**

INTERROGATORY NO. 23:

Identify the sites referred to in paragraph 14 of your complaint and state the dates upon which you hunted hog or trapped beaver at these sites.

**RESPONSE: Plaintiff is unable to respond to this question until defendant provides a list of all contaminated sites on the SRS.**

INTERROGATORY NO. 24:

Describe in detail the factual and legal basis for your contention, contained in paragraph 15 of the amended complaint, that you believe the Government "became aware" of Mark Lubert video taping an allegedly contaminated site, and identify all persons who prepared, assisted, reviewed, or commented upon the information contained in this response, and produce all records that relate in any way to this interrogatory. In answering, identify who "became aware" of the videotaping, what "became aware" means, and the site that Mark Lubert videotaped.

**RESPONSE: Frankie Brooks, the contracting officer representative, accompanied Mark Lubert and plaintiff to the site where the videotaping was done and was present during the videotaping.**

INTERROGATORY NO. 25:

Describe in detail the factual and legal basis for your contention, contained in paragraph 16 of the amended complaint, that after July 21, 1999, all culvert cleaning was stopped, that you were only allowed to trap one site, and that for the remained (sic) of the contract term, you were only given three additional work orders, and identify all persons who prepared, assisted, reviewed, or commented upon the information contained in this response, and produce all records that relate in any way to this interrogatory.

**RESPONSE: The work orders speak for themselves and are the best evidence of plaitiff's contention.**

INTERROGATORY NO. 26:

Explain in detail the legal and factual basis for your contention, contained in paragraph 18, that you have been damaged in the amount of $80,000, and identify all witnesses and documents that support your contention.

**RESPONSE:**

INTERROGATORY NO. 27:

Explain in detail the legal and factual basis for your contention, contained in paragraph 19 of the amended complaint, that you have suffered consequential damages as a result of financial hardship caused by the alleged breach of the Beaver Contract, and identify all witnesses and documents that support your contention.

**RESPONSE:**

INTERROGATORY NO. 28:

Describe in detail the factual and legal basis for your contention, contained in paragraph 21 of the amended complaint, that the Government knew or should have known prior to

February, 1999, that some of the beaver trapping and culvert sites were contaminated and should have required the protections that were instituted by way of the work clearance permit of February 22, 1999, and identify all persons who prepared, assisted, reviewed, or commented upon the information contained in this response, identify all documents that substantiate the information contained in this response, and produce all records that relate in any way to this interrogatory.

**RESPONSE:**

INTERROGATORY NO. 29:

Describe in detail the factual and legal basis for your contention, contained in paragraph 21 of the amended complaint, that Government required additional training and equipment because of contamination, and identify all persons who prepared, assisted, reviewed, or commented upon the information contained in this response, identify all documents that substantiate the information contained in this response, and produce all records that relate in any way to this interrogatory.

**RESPONSE:**

INTERROGATORY NO. 30:

Explain in detail the legal and factual basis for your contention, contained in paragraphs A, B and C, that you are entitled to $80,000, a sum to compensate you for the Government's alleged bad faith in refusing to renegotiate the Beaver Contract, and punitive damages, and identify all witnesses and documents that support your contention.

**RESPONSE:**

## REQUESTS FOR PRODUCTION

1. All documents required to be identified in response to defendant's first set of interrogatories.

**RESPONSE: These are attached.**

2. All documents prepared by plaintiff that relate to, refer to, discuss, or describe plaintiff's claims in its amended complaint.

**RESPONSE: These are attached.**

3. All correspondence and other documents exchanged between plaintiff and the United States relating to the claims alleged by plaintiff in its complaint and amended complaint.

**RESPONSE: These are attached.**

4. All the files maintained by plaintiff at its office for these contracts, including correspondence, diaries or notes kept by persons on the job, quotes or bids, payrolls and/or invoices of subcontractors, scheduling information, lists of personnel on the job on any given day, week or month, bills and or statements for equipment rental or purchase, and miscellaneous materials purchased.

**RESPONSE: No documents of this type are in the possession of the plaintiff**

5. All files maintained by your subcontractors/suppliers/equipment suppliers at their own offices for these contracts, including correspondence, diaries or notes kept by persons on the job, quotes or bids, payrolls and/or invoices of subcontractors, scheduling information, lists of personnel on the job on any given day, week or month, bills and or statements for equipment rental or purchase, and miscellaneous materials purchased.

**RESPONSE: No documents of this type are in the possession of plaintiff.**

6. All documents that relate in any way to these contracts, including, but not limited to: correspondence, modifications, delivery orders, payment vouchers, subcontracts and modifications, subcontract files, subcontract correspondence, subcontract claims and claim files, invoices, bills, meeting minutes, notes, drafts, electronic mail messages, facsimile messages, memoranda, purchase orders, budgets, production schedules and plans, production reports, inspections, reinspections, production items available for inspection or delivery, quality control reports and notes, budgets, and profit and loss computations and reports.

**RESPONSE: These are attached.**

7. All proposal or bid documents pertaining to the award of the contracts, including, but not limited to: the proposals or bids, bid/proposal work sheets, contract bid/proposal analyses, memoranda, reports, meeting minútes, notes, drafts and correspondence.

**RESPONSE: Plaintiff is unable to locate these documents; they should be in the defendants files**

8. All documents that relate in any way to communications between the Forest Service and plaintiff about these contracts, or plaintiff's bids or proposals for the contracts, including notes, drafts, correspondence, electronic mail messages, facsimile messages, show cause notices, responses to show cause notices, termination for default notices, responses to termination for default notices, inspection reports and notes, delivery schedules and/or progress reports, production reports, and communications with the defendant's representatives and/or contracting officers.

**RESPONSE: These are attached.**

9. All internal memoranda, correspondence, or other documents prepared by or for the plaintiff, or its subcontractors, for use in scheduling, monitoring, reviewing or in any other manner relating to the contracts and/or subcontracts.

**RESPONSE: No documents of this type are in the possession of the plaintiff.**

10. All documents that contain the financial data pertaining to the contracts, including but not limited to:

(a) Job cost accounting records;

(b) "In-house" financial records and audits pertaining to job costs;

(c) Independent audit records;

(d) Budgets and cost estimate reports;

(e) Financial statements.

**RESPONSE: No documents of this type are in the possession of the plaintiff.**

11. All logs, diaries, labor reports, production reports, production scheduling reports, or other documents reflecting the effort or work or planned work by the plaintiff or its subcontractors in the performance of the contract or subcontract, including reports, logs, notes tracking the activity and/or progress under the contracts and subcontracts.

**RESPONSE: No documents of this type are in the possession of the plaintiff.**

12. All reports or studies produced by any expert or outside consultant for the benefit of the plaintiff, or its subcontractors, or otherwise utilized by it or any person pertaining to the contracts and subcontracts.

**RESPONSE: No documents of this type are in the possession of the plaintiff.**

13. All test reports, analyses, evaluations, design, configuration reviews, specifications, drawings and/or memoranda relating in any way to the construction under the contracts and subcontracts.

**RESPONSE: No documents of this type are in the possession of plaintiff.**

14. All delivery records, test results, production schedules, inspections, quality control records, audits, or documents relating in any way to the contracts and subcontracts.

**RESPONSE: No documents of this type are in the possession of plaintiff.**

15. A copy of each contract plaintiff has been awarded with the United States Government.

**RESPONSE: These will be provided.**

16. All documents which you have previously relied or intend to rely upon to establish proof of any claims or damages as alleged in your complaint.

**RESPONSE: These are attached.**

Respectfully submitted,

[signature]

Berta E. (Robbie) Nichols
Attorney for Plaintiff
Post Office Box 7925
Hilton Head Isl., South Carolina 29938
(843) 686-5884 Facsimile (843) 842-3933

December 12, 2005

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A TRUE COPY OF THE FOREGOING DOCUMENT WAS SENT BY U.S. MAIL TO COUNSEL FOR THE DEFENDANT ON ~~OCTOBER~~ Dec 12, 2005

[signature]

Berta E. (Robbie) Nichols