IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM D. HOOKER, d/b/a GEORGIA BOWHUNTERS SUPPLY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Nos. 03-1501C, 04-1126C (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND FOR EXPEDITED CONSIDERATION OF THIS MOTION**

Pursuant to Rules 7.2(b) and (c) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully replies to plaintiff's response to our motion to compel and for expedited consideration of the motion. In our motion to compel, we stated that we had been unsuccessful in our attempts to resolve this matter in good faith with Mr. Hooker's counsel, pursuant to RCFC Appendix A, ¶ 10, and thus requested that the Court order Mr. Hooker to comply with discovery.

ARGUMENT

I. Mr. Hooker Should Produce The Information Upon Which He Relied In Bringing This Action

Plaintiff states that the Government's motion to compel is disingenuous because we are seeking to compel information which only we have. We disagree, and perhaps, this is the source of our discovery dispute. We are seeking the information upon which Mr. Hooker relied in drafting his complaint. Rather than responding to this request, Mr. Hooker has provided a rote response that he cannot provide any information until we provide him the information he has requested. Plainly, only Mr. Hooker knows the information upon which he relied in bringing

this action. Nonetheless, Mr. Hooker has refused to provide even the most basic information supporting the allegations contained in his complaint and amended complaint.[1]

II. The Government Has Complied With Its Discovery Obligations

Mr. Hooker's only response to our motion to compel is that the Government has not provided responses to his interrogatories and requests for document production. Even assuming for argument's sake, that this were responsive to our motion, it is incorrect. As we demonstrate below, we have produced all information requested by plaintiff in his first set of interrogatories and requests for document production, subject to our objections to some discovery requests which were vague, overly burdensome, or requested information that was equally accessible to Mr. Hooker as it was to the Government.

For example, Mr. Hooker in his interrogatories asked what the Forest Service's "policy" was with respect to wild hogs. We objected to that interrogatory upon the ground that the term "policy" is vague. We need Mr. Hooker to further define what he means by the term "policy." Mr. Hooker never provided a definition to defendant.

Mr. Hooker also states in his response that he requested the beaver sites at which he trapped beaver and the date that he trapped the beaver. Mr. Hooker requested this information in his supplemental interrogatories, not in his first set of interrogatories. In any event, notwithstanding the fact that this is information of which Mr. Hooker has personal knowledge as the individual who actually trapped the beaver, defendant provided the receipts to Mr. Hooker on

[1] All references below to plaintiff's responses are to plaintiff's supplemental responses, attached as Exhibit C to defendant's motion to compel.

February 14, 2006.[2]

Mr. Hooker further alleges that the Government has not responded to his interrogatory regarding "soil contaminated areas," on the Savannah River Site. We objected to the use of the term "soil contaminated areas" in his first set of interrogatories upon the ground that the term was vague. At deposition the parties stipulated to a definition, and we provided the relevant information to Mr. Hooker on February 15, 2006.

Mr. Hooker also claims in his response that we have not provided the photographs from his site visit. While the Government agreed to bear the cost of hiring a photographer, Mr. Hooker agreed to pay for the actual photographs. We have not been able to provide the photographs because Mr. Hooker has not yet paid for them. Once Mr. Hooker purchases the photographs, we will provide them.

Finally, Mr. Hooker states in his response brief that we have failed to provide him with the letter notifying him that the solicitation for the hog contract was withdrawn. We provided our response to this request on February 15, 2006.

III. <u>Mr. Hooker Continues To Withhold Responsive Information</u>

Mr. Hooker attaches to his response to our motion, a January 17, 2006 letter that his counsel sent to Government counsel. However, this letter still does not provide adequate

---

[2] Defendant stated in its motion to compel that it anticipated providing Mr. Hooker with its responses to his supplemental interrogatories and requests for document production within 14 days of the date of filing its motion to compel, which would have been February 3, 2006. Government counsel, however, had to serve on jury duty at the District of Columbia Superior Court from January 23-31, 2006, and thus, was unable to provide defendant's responses by February 3, 2006. Defendant notified plaintiff's counsel of this on February 8, 2006, and stated that the Government would produce its responses by February 17, 2006. To defendant's knowledge, plaintiff did not object.

responses to the Government's first set of interrogatories and requests for document production.

In his supplemental response to Interrogatory No. 7, Mr. Hooker again fails to provide the Government with the information upon which he relied when he alleged that hogs were dispatched while on SRS property, were running wild, and were within the definition of wild or feral hogs under the contract. Instead, he alleges that Mr. Gabard, the contracting officer, "suffered from a poor memory" during depositions and was unable to "define the policy." This statement is not only incorrect – the only time Mr. Gabard was asked by Mr. Hooker's counsel about a policy, it pertained to a hypothetical policy that does not exist regarding the hypothetical presence of domestic pigs running loose on the SRS – it is non-responsive. Mr. Hooker further states the Court will determine whether the Government's actions regarding the domestic pigs was a breach of the contract. Again, this does not respond to our request that Mr. Hooker provide us the factual and legal support for his contention contained in his complaint that hogs were dispatched while on SRS property, were running wild, and were within the definition of wild or feral hogs under the contract. Additionally, Mr. Hooker does not define what he means he uses the term "policy" regarding hogs on the SRS.

Mr. Hooker's supplemental response to Interrogatory No. 8 is also unresponsive. Defendant requested that Mr. Hooker "[d]escribe in detail the factual and legal basis for [his] contention, contained in paragraph 10 of the complaint, that the Government's withholding of $1,320.00 due to non-conformance to contract specifications and refusal to pay subsequent invoices constituted a breach of the terms of the Hog Contract." Mr. Hooker simply states that a later hog contract defines the term wild hog.

Defendant's Interrogatory No. 9 asked him to "[d]escribe in detail the factual and legal

basis for [his] contention, contained in paragraph 12 of the complaint, that as a consequence of losing two employees, plaintiff was unable to perform the Hog Contract, had to purchase dogs and other equipment to complete the contract, and hire new employees" and "state specifically what tasks plaintiff was unable to perform, the dates and for what amounts plaintiff purchased dogs, and the dates and at what rates plaintiff hired new employees." Mr. Hooker's supplemental response is that he cannot remember when he hired new employees or at what rates he hired them. If Mr. Hooker truly cannot remember these details, then he should not ask the Court to award him costs that he cannot remember incurring. Additionally, he once again fails to state what tasks he was unable to perform, when he was unable to perform, or the cost at which he purchased the dogs.

In his supplemental responses to Interrogatories Nos. 12 and 13, regarding the allegedly lost contraband pass, Mr. Hooker states only that he is investigating this issue and will supplement his responses as information becomes available. He does not identify to what information he is referring, what he is investigating, or an approximate date by which he will supplement his response.

Defendant's Interrogatory No. 14 requested that Mr. Hooker "[s]tate specifically what areas of the SRS property plaintiff hunted hogs and trapped beavers and for each area identified, state what time frame the plaintiff hunted hogs and trapped beavers in that area." In his supplemental response, Mr. Hooker stated that he hunted the entire site and that he has no records of the exact locations. First, it is impossible that he hunted the entire site, as there are many areas on the SRS that are restricted. Second, while he may not have records of the exact locations, he certainly has some memory of where he hunted and could provide a list of locations

where he often hunted, rarely hunted, or never hunted. This information is important in light of the fact that Mr. Hooker claims he was exposed to contamination while hunting in specific areas on the SRS.

In his supplemental response to Interrogatory No. 15, which requested that he "[d]escribe in detail the factual and legal basis for [his] contention, contained in paragraph 20 of the complaint, that [he] became aware that [he] had been working in contaminated areas such as Par Pond and requested an adjustment in the contract price," Mr. Hooker states that a Government witness testified on this matter. Obviously the Government can obtain information from its own witnesses. We are requesting that Mr. Hooker provide specific information – the time, the manner, the amount – regarding his allegation that he requested an increase in contract price.

Mr. Hooker's supplemental response to Interrogatory No. 20, which requested that he "[i]dentify the sums referred to in paragraphs A, B, C, D, E, and F of the complaint, and identify all witnesses and documents that support your contentions," is that the Government must provide a price differential for hourly work in contaminated areas on the SRS property. First, it is not the Government's burden to establish or prove Mr. Hooker's damages. Second, such a price differential does not exist. Mr. Hooker must provide information regarding his alleged damages.

Additionally, in response to the last paragraph of the January 17 letter, the Government has provided all available information regarding plaintiff's Interrogatory No. 18.

Finally, Mr. Hooker once again refused to provide responses to Defendant's Interrogatory Nos. 26-30. These interrogatories simply request that he provide us with the factual and legal support for the general allegations contained in his complaint and amended complaint, including damage calculations. The complaint and amended complaint contain

almost no information about most of Mr. Hooker's contentions or the alleged facts that support them. This request in entirely reasonable considering Mr. Hooker's lack of responses to date and the fact that much of what he classifies as "responses" to 25 of our interrogatories are statements that he is "unable to respond" to the interrogatories.

## CONCLUSION

For these reasons, we respectfully request that the Court grant this motion to compel, and enter an order requiring Mr. Hooker to respond to the discovery identified above by February 24, 2006.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Todd M. Hughes
By Patricia McCarthy
TODD M. HUGHES
Assistant Director

s/ Lindsay Williams
LINDSAY WILLIAMS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street NW
Phone: (202) 353-7995
Fax: (202) 514-8624

February 15, 2006

Counsel for Defendant