# EXHIBIT A

## Contract No. 53-4660-8-04
## Wild Hog Control

United States
Department of
Agriculture
Forest Service

FOREST SERVICE CONTRACT
OMB CLEARANCE NUMBER 05050005

CONTRACT NO.

53-4660-8-04

---

PROJECT: WILD HOG CONTROL

---

LOCATION: SAVANNAH RIVER NATURAL RESOURCE MANAGEMENT AND RESEARCH INSTITUTE

---

CONTRACTOR: GA BOWHUNTER SUPPLY CO.
3623 PEACH ORCHARD ROAD
AUGUSTA, GA 30906

(706)792-9422

---

AWARDING OFFICE: USDA FOREST SERVICE
P.O. BOX 710
NEW ELLENTON, SC 29809

SOLICITATION, OFFER AND AWARD

Page 1 of 2 Pages

1. This contract is a rated order under DPAS (15 CFR 350) RATING:

| 2. CONTRACT NO. | 3. SOLICITATION NO. | 4. TYPE OF SOLICITATION |
|---|---|---|
| 53-4660-8-04 | R8 36-98-01 | [ ] SEALED BID (IFB)<br>[X] NEGOTIATED (RFP) |

| 5. DATE ISSUED | 6. REQUISITION/PURCHASE REQ. NO. |
|---|---|
| September 9, 1997 | |

| 7. ISSUED BY CODE | 8. ADDRESS OFFER TO (If other than Item 7) |
|---|---|
| USDA FOREST SERVICE - SRI<br>BLDG 760-G<br>1-MILE INSIDE AIKEN BARRICADE<br>AIKEN, SC 29802 | USDA FS-SAVANNAH RIVER INSTITUTE<br>P.O. BOX 710<br>NEW ELLENTON, SC 29809-0710 |

NOTE: In sealed bid solicitations, "offer" and "offeror" mean "bid" and "bidder".

SOLICITATION

9. Sealed offers in original and 0 copies for furnishing the supplies or services in the Schedule will be received at the place specified in Item 8, or if handcarried, in the depository located in Item 7, until 2:00 P.M. local time on 10/09/97. CAUTION-LATE Submissions, Modifications, and Withdrawals: See Section L, Provision No. 52.214-7 or 52.215-10. All offers are subject to all terms and conditions contained in this solicitation.

| 10. FOR INFORMATION CALL: | A. NAME: | B. TELEPHONE NO. (Include Area Code) (NO COLLECT CALLS) |
|---|---|---|
| | Homer R. Gabard | 803-725-0239 |

11. TABLE OF CONTENTS


| X | SEC | DESCRIPTION | PAGE(S) |
|---|---|---|---|
| | | PART I - THE SCHEDULE | |
| | A | SOLICITATION/CONTRACT FORM | |
| | B | SUPPLIES OR SERVICES AND PRICES/COSTS | |
| | C | DESCRIPTION/SPECIFICATIONS/WORK STATEMENT | |
| | D | PACKAGING AND MARKING | |
| | E | INSPECTION AND ACCEPTANCE | |
| | F | DELIVERIES OR PERFORMANCE | |
| | G | CONTRACT ADMINISTRATION DATA | |
| | H | SPECIAL CONTRACT REQUIREMENTS | |
| | | PART II - CONTRACT CLAUSES | |
| | I | CONTRACT CLAUSES | |
| | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS | |
| | J | LIST OF ATTACHMENTS | |
| | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| | L | INSTRUCTIONS, CONDITIONS, AND NOTICES TO OFFERORS | |
| | M | EVALUATION FACTORS FOR AWARD | |


OFFER (Must be fully completed by offeror)

NOTE: Item 12 does not apply if the solicitation includes the provision at 52.214-16, Minimum Bid Acceptance Period.

SOLICITATION, OFFER AND AWARD



12. In compliance with the above, the undersigned agrees, if this offer is accepted within 60 calendar days (60 calendar days unless a different period is inserted by the offeror) from the date for receipt of offers specified above, to furnish any or all items upon which prices are offered at the price set opposite each item, delivered at the designated point(s), within the time specified in the schedule.

13. DISCOUNT FOR PROMPT PAYMENT (See Section I, Clause No. 52.232-8)

| 10 CALENDAR DAYS | 20 CALENDAR DAYS | 30 CALENDAR DAYS | 0 CALENDAR DAYS |
|---|---|---|---|
| 0 % | 0 % | 0 % | 0 % |

14. ACKNOWLEDGEMENT OF AMENDMENTS (The offeror acknowledges receipt of amendments to the SOLICITATION for offerors and related documents numbered and dated: W D Hooker 9-27-97

| AMENDMENT NO. | DATE | AMENDMENT NO. | DATE |
|---|---|---|---|
| No. 1 | Sep 19-1997 | | |

15A. NAME AND ADDRESS OF OFFEROR — CODE ______ FACILITY ______
Ga. Bowhunter Supply Co.
3623 Peach Orchard Rd
Augusta, GA 30906

16. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER (Type or print)
William Danny Hooker

15B. TELEPHONE NO. (Include Area Code)
706-792-9422

15C. CHECK IF REMITTANCE ADDRESS IS [ ] DIFFERENT FROM ABOVE - ENTER SUCH ADDRESS IN SCHEDULE

17. SIGNATURE: W. D. Hooker

18. OFFER DATE: 10-1-97

AWARD (To be completed by Government)

19. ACCEPTED AS TO ITEMS NUMBERED
01 Base Period

20. AMOUNT
Per Each Task Order

21. ACCOUNTING AND APPROPRIATION
Per Each Task Order

22. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:
[ ] 10 U.S.C. 2304(c)( ) [ ] 41 U.S.C. 253(c)( )

23. SUBMIT INVOICES TO ADDRESS SHOWN IN (4 copies unless otherwise specified) — ITEM 8

24. ADMINISTERED BY (If other than Item 7) — CODE ______

25. PAYMENT WILL BE MADE BY — CODE ______
USDA FOREST SERVICE - SRFS
BLDG 760-G
1-MILE INSIDE AIKEN BARRICADE
AIKEN, SC 29802

26. NAME OF CONTRACTING OFFICER (Type or Print)
HOMER R. GABARD

27. UNITED STATES OF AMERICA
Homer R. Gabard
(Signature of Contracting Officer)

28. AWARD DATE
10/29/97

IMPORTANT - Award will be made on this Form or on Standard Form 26, or by other authorized official written notice.

EXCEPTION TO STANDARD FORM 33 (REV.4-85)

TABLE OF CONTENTS PAGE


SOLICITATION, OFFER AND AWARD . . . . . 1

TABLE OF CONTENTS . . . . . 3

PART I - THE SCHEDULE . . . . . 8

SECTION B - SUPPLIES OR SERVICES AND PRICE/COSTS . . . . . 8
B.1 MINIMUM AND MAXIMUM CONTRACT AMOUNTS (AGAR 452.216-73) (FEB 1988) . . . 8

SECTION C - DESCRIPTION/SPECIFICATION /WORK STATEMENT . . . . . 10
C.1 GENERAL SPECIFICATIONS . . . . . 10
C.2 TECHNICAL SPECIFICATIONS . . . . . 11
C.3 PAYMENT . . . . . 18

SECTION D - PACKAGING AND MARKING . . . . . 19
[For this Solicitation, there are NO clauses in this Section] . . 19

SECTION E - INSPECTION AND ACCEPTANCE . . . . . 20
E.1 CLAUSES INCORPORATED BY REFERENCE (FAR 52.252-2) (JUN 1988) . . . . . 20
E.2 INSPECTION OF SERVICES--FIXED-PRICE (FAR 52.246-4) (AUG 1996) . . . . . 20

SECTION F - DELIVERIES OR PERFORMANCE . . . . . 22
F.1 CLAUSES INCORPORATED BY REFERENCE (FAR 52.252-2) (JUN 1988) . . . . . 22
F.2 PERIOD OF PERFORMANCE (AGAR 452.211-5) (FEB 1988) . . . . . 22

SECTION G - CONTRACT ADMINISTRATION DATA . . . . . 23

SECTION H - SPECIAL CONTRACT REQUIREMENTS . . . . . 24
H.1 POST AWARD CONFERENCE (AGAR 452.215-73) (NOV 1996) . . . . . 24
H.2 INSURANCE COVERAGE (AGAR 452.228-71) (NOV 1996) ALTERNATE I (NOV 1996) . . . . . 24
H.3 PERMITS AND RESPONSIBILITIES (FAR 52.236-7) (NOV 1991) . . . . . 25
H.4 EMERGENCY RESPONSE (AGAR 452.236-77) (NOV 1996) . . . . . 25
H.5 KEY PERSONNEL (AGAR 452.237-74) (FEB 1988) . . . . . 25
H.6 COMPLIANCE WITH AREA REGULATIONS . . . . . 26
H.7 SAFETY AND HEALTH . . . . . 27
H.8 QUARANTINE RESTRICTIONS . . . . . 29
H.9 REQUIRED INSURANCE . . . . . 29
H.10 LOSS OF TIMBER SALE LOCK KEY OR LOCK OR SECURITY BADGES . . 30
H.11 USE OF PREMISES (AGAR 452.236-72) (NOV 1996) . . . . . 30
H.12 ARCHAEOLOGICAL OR HISTORIC SITES (AGAR 452.236-73) (FEB . . 31
H.13 RESPONSIBILITIES OF THE CONTRACTOR (AGAR 4G52.236-807) (JUL 1986) . . . 31
H.14 USE OF UNDOCUMENTED WORKERS . . . . . 31
H.15CRIMINAL LIABILITY . . . . . 32
H.16 SITE ACCESS AUTHORIZATION FOR CONTRACTOR AND EMPLOYEES . . . 32

PART II - CONTRACT CLAUSES . . . . . 34

TABLE OF CONTENTS PAGE

SECTION I - CONTRACT CLAUSES . . . . . . . . . . . . . . . . . . 34
I.1 CLAUSES INCORPORATED BY REFERENCE . . . . . . . . . . . . . 34
(FAR 52.252-2) (JUN 1988)
I.2 ANTI-KICKBACK PROCEDURES (FAR 52.203-7) (JUL 1995). . . . . 35
I.3 CANCELLATION, RESCISSION, AND RECOVERY OF . . . . . . . . . 37
FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY (FAR 52.203-8)
(JAN 1997)
I.4 LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN . . . . . . . . 37
FEDERAL TRANSACTIONS (FAR 52.203-12)
(JAN 1990) - (DEVIATION)
I.5 ORDERING (FAR 52.216-18) (OCT 1995) . . . . . . . . . . . . 43
I.6 ORDER LIMITATIONS (FAR 52.216-19) (OCT 1995). . . . . . . . 44
I.7 INDEFINITE QUANTITY (FAR 52.216-22) (OCT 1995). . . . . . . 44
I.8 OPTION TO EXTEND THE TERM OF THE CONTRACT . . . . . . . . . 45
(FAR 52.217-9) (MAR 1989)
I.9 LIMITATIONS ON SUBCONTRACTING (FAR 52.219-14) (DEC 1996). . 45
I.10 CONTRACT WORK HOURS AND SAFETY. . . . . . . . . . . . . . . 46
STANDARDS ACT--OVERTIME COMPENSATION
(FAR 52.222-4) (JUL 1995)
I.11 SERVICE CONTRACT ACT OF 1965, AS AMENDED. . . . . . . . . . 47
(FAR 52.222-41) (MAY 1989)
I.12 STATEMENT OF EQUIVALENT RATES FOR FEDERAL HIRES . . . . . . 55
(FAR 52.222-42) (MAY 1989)
I.13 FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT . . . . . . . 55
ACT--PRICE ADJUSTMENT (MULTIPLE YEAR AND
OPTION CONTRACTS) (FAR 52.222-43) (MAY 1989)
I.14 DRUG-FREE WORKPLACE (FAR 52.223-6) (JAN 1997) . . . . . . . 57
I.15 EUROPEAN UNION SANCTION FOR SERVICES (FAR 52.225-19). . . . 59
(JAN 1996)
I.16 RIGHTS TO PROPOSAL DATA (TECHNICAL) . . . . . . . . . . . . 59
(FAR 52.227-23) (JUN 1987)
I.17 EXTRAS (FAR 52.232-11) (APR 1984) . . . . . . . . . . . . . 59
I.18 AVAILABILITY OF FUNDS FOR THE NEXT FISCAL . . . . . . . . . 59
YEAR (FAR 52.232-19) (APR 1984)
I.19 ASSIGNMENT OF CLAIMS (FAR 52.232-23) (JAN 1986) . . . . . . 59
I.20 PROMPT PAYMENT (FAR 52.232-25) (MAY 1997) . . . . . . . . . 60
I.21 DISPUTES (FAR 52.233-1) (OCT 1995) ALTERNATE I. . . . . . . 65
(DEC 1991)
I.22 PROTECTION OF GOVERNMENT BUILDINGS, . . . . . . . . . . . . 67
EQUIPMENT, AND VEGETATION
(FAR 52.237-2) (APR 1984)
I.23 CHANGES--FIXED-PRICE (FAR 52.243-1) (AUG 1987). . . . . . . 68
ALTERNATE I (APR 1984)
I.24 GOVERNMENT-FURNISHED PROPERTY (SHORT FORM). . . . . . . . . 68
(FAR 52.245-4) (APR 1984)
I.25 TERMINATION FOR CONVENIENCE OF THE. . . . . . . . . . . . . 69
GOVERNMENT (SERVICES) (SHORT FORM)
(FAR 52.249-4) (APR 1984)
I.26 DEFAULT (FIXED-PRICE SUPPLY AND SERVICE). . . . . . . . . . 69
(FAR 52.249-8) (APR 1984)
I.27 AUTHORIZED DEVIATIONS IN CLAUSES. . . . . . . . . . . . . . 71
(FAR 52.252-6) (APR 1984)

PART III - LIST OF DOCUMENTS, EXHIBITS . . . . . . . . . . . . . . . 72

TABLE OF CONTENTS PAGE

AND OTHER ATTACHMENTS

SECTION J - LIST OF ATTACHMENTS . . . . . . . . . . . . . . . . . . . . . 72

PART IV - REPRESENTATIONS AND INSTRUCTIONS . . . . . . . . . . . . . 73

SECTION K - REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS . . . . . . . . . . . 73

K.1 CERTIFICATE OF INDEPENDENT PRICE DETERMINATION (FAR 52.203-2) (APR 1985) . . . . . . . 73
K.2 CERTIFICATION AND DISCLOSURE REGARDING PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (FAR 52.203-11) DEVIATION (APR 1991) . . . . . 74
K.3 TAXPAYER IDENTIFICATION (FAR 52.204-3) (MAR 1994) . . . . . 75
K.4 CONTRACTOR IDENTIFICATION NUMBER--DATA UNIVERSAL NUMBERING SYSTEM (DUNS) NUMBER (FAR 52.204-6) (DEC 1996) . . . . . . 76
K.5 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, PROPOSED DEBARMENT, AND OTHER RESPONSIBILITY MATTERS (FAR 52.209-5) (MAR 1996) . . . . . . . . 77
K.6 TYPE OF BUSINESS ORGANIZATION (FAR 52.215-6) (JUL 1987) . . . . . . . . . 78
K.7 AUTHORIZED NEGOTIATORS (FAR 52.215-11) (APR 1984) . . . . . 78
K.8 SMALL BUSINESS PROGRAM REPRESENTATIONS (FAR 52.219-1) (JAN 1997) . . . . . . . . . . . 78
K.9 CERTIFICATION OF NONSEGREGATED FACILITIES (FAR 52.222-21) (APR 1984) . . . . . . . . . . 80
K.10 PREVIOUS CONTRACTS AND COMPLIANCE REPORTS (FAR 52.222-22) (APR 1984) . . . . . . . . . . 81
K.11 AFFIRMATIVE ACTION COMPLIANCE (FAR 52.222-25) (APR 1984) . . . . . . . . . . . . . . . . . 82
K.12 CLEAN AIR AND WATER CERTIFICATION (FAR 52.223-1) (APR 1984) . . . . . . 82
K.13 CERTIFICATION OF TOXIC CHEMICAL RELEASE REPORTING (FAR 52.223-13) (OCT 1996) . . . . . 82
K.14 BUY AMERICAN CERTIFICATE (FAR 52.225-1) (DEC 1989) . . . . . . . . . . . . . . . . . . . . 83

SECTION L - INSTRUCTIONS, CONDITIONS, AND NOTICES TO OFFERORS . . . . . . . . . . 84

L.1 SOLICITATION PROVISIONS INCORPORATED BY REFERENCE (FAR 52.252-1) (JUN 1988) . . . . . 84
L.2 INQUIRIES (AGAR 452.204-70) (FEB 1988) . . . . . . . . . . . 84
L.3 SUBMISSION OF OFFERS (FAR 52.215-9) (MAR 1997) . . . . . . . 84
L.4 LATE SUBMISSIONS, MODIFICATIONS, AND WITHDRAWALS OF PROPOSALS (FAR 52.215-10) (MAY 1997) . . . . . . . . . . . . 85
L.5 RESTRICTION ON DISCLOSURE AND USE OF DATA (FAR 52.215-12) (APR 1984) . . . . . . . . . 87
L.6 PREPARATION OF OFFERS (FAR 52.215-13) (APR 1984) . . . . . . . . . . . . . . . . . . 87
L.7 EXPLANATION TO PROSPECTIVE OFFERORS (FAR 52.215-14) (APR 1984) . . . . . . . . . . . . 88
L.8 CONTRACT AWARD (FAR 52.215-16) (OCT 1995) . . . . . . . . . 88
L.9 INSTRUCTIONS FOR THE PREPARATION OF TECHNICAL AND BUSINESS PROPOSALS (AGAR 452.215-71) (NOV 1996) . . . . . 89

TABLE OF CONTENTS PAGE

L.10 AMENDMENTS TO PROPOSALS (AGAR 452.215-72) (FEB 1988) . . . . 91
L.11 TYPE OF CONTRACT (FAR 52.216-1) (APR 1984) . . . . . . . . . . 91
L.12 SINGLE OR MULTIPLE AWARDS (FAR 52.216-27) (OCT 1995) . . . . 91
L.13 SIZE STANDARD AND SIC CODE INFORMATION (AGAR 452.219-70) . . 92
(NOV 1996)
L.14 SITE VISIT (FAR 52.237-1) (APR 1984) . . . . . . . . . . . . . 92
L.15 PRE-BID/PRE-PROPOSAL CONFERENCE (AGAR 452.237-71) . . . . . . 92
(FEB 1988)
L.16 SERVICE OF PROTEST (FAR 52.233-2) (AUG 1996) . . . . . . . . . 93
L.17 AUTHORIZED DEVIATIONS IN PROVISIONS . . . . . . . . . . . . . 93
(FAR 52.252-5) (APR 1984)
L.18 REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION. . . . 93
OTHER THAN COST OR PRICING DATA (FAR 52.215-41)
(JAN 1997) ALTERNATE IV (OCT 1995)

SECTION M - EVALUATION FACTORS FOR AWARD . . . . . . . . . . . . . . . 96
M.1 EVALUATION QUANTITIES--INDEFINITE DELIVERY CONTRACT . . . . 96
(AGAR 452.216-72) (FEB 1988)
M.2 EVALUATION OF OPTIONS (FAR 52.217-5) (JUL 1990) . . . . . . 96
M.3 AWARD DETERMINATION. . . . . . . . . . . . . . . . . . . . . . 96
M.4 EVALUATION FACTORS . . . . . . . . . . . . . . . . . . . . . . 97

PART I - THE SCHEDULE

SECTION B - SUPPLIES OR SERVICES AND PRICE/COSTS

| Item No. | Supplies/Services | ESTIMATED Quantity | Unit | Unit Price | Total |
|---|---|---|---|---|---|
| 01 | BASE PERIOD (12 MO) TRAP AND DISPATCH FERAL HOGS (ESTIMATED) | | | | |
| | Min quantity | 200 | EA | $ 55.00 | $ 11,000.00 |
| | Max quantity | 800 | EA | $ 55.00 | $ 44,000.00 |
| | TOTAL BASE PERIOD | | | | $ 55,000.00 |
| 01 | OPTION PERIOD 1 (12 MO) TRAP AND DISPATCH FERAL HOGS (ESTIMATED) | | | | |
| | Min quantity | 200 | EA | $ 55.00 | $ 11,000.00 |
| | Max quantity | 800 | EA | $ 55.00 | $ 44,000.00 |
| | TOTAL OPTION PERIOD 1 | | | | $ 55,000.00 |
| 01 | OPTION PERIOD 2 (12 MO) TRAP AND DISPATCH FERAL HOGS (ESTIMATED) | | | | |
| | Min quantity | 200 | EA | $ 55.00 | $ 11,000.00 |
| | Max quantity | 800 | EA | $ 55.00 | $ 44,000.00 |
| | TOTAL OPTION PERIOD 2 | | | | $ 55,000.00 |

B.1 MINIMUM AND MAXIMUM CONTRACT AMOUNTS (AGAR 452.216-73) (FEB 1988)

During the period specified in FAR clause 52.216-18, ORDERING, the **Government shall place orders totaling a minimum of 200 EACH**, but not in excess of 800 EACH.

NOTICE:

Savannah River Site is a restricted access Government facility and only United States citizens are authorized entry to the Site.

Contractor and all personnel using firearms on the contract must

possess either a S.C. Resident Hunting License or a S.C. Non-Resident Hunting License.

Contractor and personnel using firearms must not have any hunting violations either in S.C. or State of residence.

Contractor must show required hunting licenses to Contracting Officer prior to issuance of the Notice to Proceed or prior to any new employee being issued a Contraband Pass to bring firearm(s) on SRS.

SECTION C - DESCRIPTION/SPECIFICATION /WORK STATEMENT

C.1 GENERAL SPECIFICATIONS

A. Scope of Contract - The contractor shall be required to implement an organized program to control the wild hog population on the Savannah River Site (SRS). This program will include trapping and the use of trained dogs. The intensity and duration of use of these two techniques shall be subject to the direction of the Contracting Officer. The Contractor shall supply all supplies, personnel, equipment (including safety equipment), supervision and transportation (with the exception of the traps) for this contract. The following Contractor-furnished equipment is required as a minimum:

1. The firearm ~~shall~~ be a single shot .22 caliber rim fire rifle.
2. The bait for the traps and bait stations.
3. Adequate transportation (pickup truck preferred)
4. Dogs trained to hunt hogs only.

Attempts to dispatch hogs will take place during the daylight hours. No hogs will be taken at night with spotlights.

Any injuries incurred by the contractor, contractor's employees, or SRS employees or visitors during interaction with hogs or any part of the contract is the responsiblilty of the contractor.

The period of this contract shall be a base period of 12 months with options to extend the contract in 12 month increments. The maximum contract time shall not extend beyond 36 months (3 years). the option to extend would be evaluated every 12 months and would occur only upon the mutual agreement of the government and the contractor (see FAR Clause 52.217-9, page 37). The bid amount per wild hog trapped and properly delivered to the SRFS in accordance with C.3-PAYMENT.

B. Description and Location - All areas are within the boundaries of the Savannah River Site, Aiken, Barnwell and Allendale counties, S.C. (see Vicinity Map in Section J).

C. Boundaries - The hog control activities are located within the established boundaries of the Savannah River

Site.

D. Government-Furnished Property. The government will supply 25 traps and the supplies needed to maintain and modify the traps. These supplies could include lumber, plywood, wire, etc..

C.2 TECHNICAL SPECIFICATIONS

A. Trapping - The contractor shall trap and dispatch wild hogs from the designated areas at SRS during the contract period. To accomplish this, the Contractor shall perform the following tasks:

1. Trap during each seven day period throughout the term of the contract. The Contractor may leave traps set 24 hours per day seven days per week if the Contractor desires to do so. The number of traps to be used at a given time during the contract will be determined by the COR or Inspector(s).

2. Physically inspect each trap during each workday that traps are set. Hogs may be dispatched, physically within the confines of the trap or removed live and dispatched within 1/4 mile of the trap. The hogs will not be transported live outside the 1/4 mile limit of the trap, unless for approved research purposes. All non-target animals trapped will be immediately released unharmed. Trapped hogs shall be dispatched using a 22 caliber rim fire rifle, a bow and arrow or other method approved by CO.

3. The contractor may modify the traps to specifications desired, with the approval of the COR or Contracting Officer.

4. The trapping locations will be determined by the Contracting Officer, COR, and/or Inspector(s).

5. The bait will consist of fermented corn or other bait if approved by COR. The contractor will supply all materials needed to make the fermented corn or other bait mixture.

6. At the end of the contract, the contractor shall return the traps to the SRFS in the same condition as received except for normal wear and tear. If, upon inspection of the traps by the SRFS, they are not found to be in the same condition, the contractor shall make those necessary repairs prior to final payment.

7. Shooting with firearms (.22 rifle or bow & arrow) will take place only if the contractor knows what is in the line of fire and where the projectile(s) will stop if the hog is hit or missed. If the contractor does not know with 100% certainty that a shot can be

Site.

D. Government-Furnished Property. The government will supply 25 traps and the supplies needed to maintain and modify the traps. These supplies could include lumber, plywood, wire, etc..

C.2 TECHNICAL SPECIFICATIONS

A. Trapping - The contractor shall trap and dispatch wild hogs from the designated areas at SRS during the contract period. To accomplish this, the Contractor shall perform the following tasks:

1. Trap during each seven day period throughout the term of the contract. The Contractor may leave traps set 24 hours per day seven days per week if the Contractor desires to do so. The number of traps to be used at a given time during the contract will be determined by the COR or Inspector(s).

2. Physically inspect each trap during each workday that traps are set. Hogs may be dispatched physically within the confines of the trap or removed live and dispatched within 1/4 mile of the trap. The hogs will not be transported live outside the 1/4 mile limit of the trap, unless for approved research purposes. All non-target animals trapped will be immediately released unharmed. Trapped hogs shall be dispatched using a 22 caliber rim fire rifle, a bow and arrow or other method approved by CO.

3. The contractor may modify the traps to specifications desired, with the approval of the COR or Contracting Officer.

4. The trapping locations will be determined by the Contracting Officer, COR, and/or Inspector(s).

5. The bait will consist of fermented corn or other bait if approved by COR. The contractor will supply all materials needed to make the fermented corn or other bait mixture.

6. At the end of the contract, the contractor shall return the traps to the SRFS in the same condition as received except for normal wear and tear. If, upon inspection of the traps by the SRFS, they are not found to be in the same condition, the contractor shall make those necessary repairs prior to final payment.

7. Shooting with firearms (.22 rifle or bow & arrow) will take place only if the contractor knows what is in the line of fire and where the projectile(s) will stop if the hog is hit or missed. If the contractor does not know with 100% certainty that a shot can be

made at no risk to site employees or other persons, then the shot will not be made.

B. Use of Dogs - Contractor will use trained dogs (dogs that silently trail and bay) to find and dispatch hogs. The contractor will supply the dogs. The use of dogs will be in accordance with the following specifications:

1. Dogs shall be used to locate and dispatch hogs during each 7 day period of the contract.

2. All dogs to be used must have current rabies vaccinations and a rabies certificate must be provided by the contractor.

3. All dogs will wear a collar showing the owner's name, address, and telephone number. Also the dogs will be assigned a number that will remain the same for the contract period. This number will be displayed on the dog. Dogs may have tatoo instead of painted numbers if contractor chooses.

4. No dogs will be used if they have a history of aggression toward people.

5. The dogs must be a "silent trailer". In other words the dogs will bark only when they have bayed or captured a hog.

6. The dogs must be exclusively wild hog trail dogs, wild hog bay dogs, and wild hog capture dogs. Dogs that hunt or are prone to hunt other wildlife species will not be used. The dogs should respond favorably to the handlers commands. Prior to the award of the contract, the contractor will be asked to field demonstrate their dogs' compliance with above criteria and their effectiveness for hunting hogs and handling (see Section M - Evaluation Factors).

7. Locations where hogs will be dispatched with the use of dogs will be determined by the COR or Inspector(s).

8. When hogs are located by dogs, the contractor will dispatch the hog immediately at that location. Caution will be used when approaching and dispatching the hog to avoid personal injury to the contractor. Safety is a top priority in this situation and if the hog cannot be dispatched in a safe manner to ensure the contractor's safety and any nearby person's safety, then the hog will not be dispatched. Any injuries incurred by the contractor, contractors employees, or any person during interaction with hogs or tracking or any

other activity is the responsiblilty of the contractor.

9. The death of dogs due to injury by hogs or other reasons is the responsibility of the contractor. Replacements for these dogs should be readily available so as not to delay the use of this technique during the contract. If dogs are lost on site, then the contractor has the responsibility for thoroughly searching for the dog and picking the dog up from persons who may find it. The government will not house the dog for the contractor.

10. Shooting with firearms (.22 rifle or bow & arrow) will take place only if the contractor knows what is in the line of fire and where the projectile(s) will stop if the hog is hit or missed. If the contractor does not know with 100% certainty that a shot can be made at no risk to site employees or other persons, then the shot will not be made.

D. Data Collection - Data will be collected to maintain population records, aid management efforts and research, and to document records for payments to the contractor. The contractor will be responsible for the collection of this data according to the following:

1. Deliver the whole carcass (not field stripped) to the SRFS workcenter cooler at the end of each workday in order to receive credit for payment. The contractor shall not remove any hogs alive or dead, from the SRS. Body parts shall not be removed from SRS unless specifically authorized by the CO, COR, and/or Inspectors. Each carcass will be tagged with a serial identification number on a metal tag (same number as on data sheet) prior to placement in the cooler.

2. Data to be collected includes weight, age, sex, reproductive condition (pregnant &/or lactating), fetal measurements, and locations/dates the animals were dispatched. Also note the time the carcass was placed in the cooler. Data will be recorded and collected by the contractor according to SRFS guidelines and at the direction of the Contracting Officer, COR, and/or Inspector(s). The contractor will cooperate with researchers' request for data and will collect and deliver the data upon notification by the the Contracting Officer, COR, and/or Inspector(s).

3. One 50 ml test tube of blood will be collected from each hog immediately after it has been killed.

These vials of blood wil be placed in a portable cooler and stored in the SRFS workcenter cooler at the end of each workday. All test tubes, storage racks and coolers will be provided by the SRFS. Failure to collect blood samples will evaluated by the COR and appropriate action will be taken.

4. Twice a week remove all hogs not designated for research studies from the SRFS cooler and deliver to designated landfill. Hogs may not remain in cooler for more than four days. Contractor will log in all hogs with the operator at time of delivery to designated landfill.

5. Research needs which develop during the course of the contract may result in the need for additional data collection. If such action is required by the SRFS, a modification to the contract will be negoiated.

6. After the removal of all hogs from the SRFS cooler, contractro shall clean the cooler using Government furnished water, bleach or disinfectant. Cooler shall be cleaned so that all blood, tissue, etc. from wild hog carcasses and otehr carcasses are removed from cooler. COR shall provide instructions on how coolers shall be cleaned to the contractor and or contractor's employees at the star of the contract. COR shall inspect the SRFS cooler periodically to ensure that the cooler is being cleaned properly.

E. Other Considerations

1. Register with the Contracting Officer, COR, or Inspector(s) and Security forces the vehicle or vehicles and firearms that all contractor personnel will use. The contractor shall provide the state license number, the make and color of each vehicle. No other vehicles will be allowed on site. The firearms identification number shall be registered with the SRS Security forces. Vehicles used by the contractor shall be subject to search by the SRFS and the SRS Security forces. The use of ATV's is limited to four-wheelers in pre-approved locations only. The make, model, and serial number of all firearms to be used shall be given to the C.O. or COR immediately upon notification of award of this contract so that a Contraband Pass may be requested from DOE.

2. The total number of contractor employees shall not exceed eight (including contractor). No more than five contractor employees (including contractor) shall be permitted to possess or use firearms on the SRS.

3. Notify the SRFS or Technical Support Center, TSC (EOC), when entering site and when leaving for the day.

4. Submit to monitoring by Westinghouse Health protection personnel after trapping in specified areas.

5. The contractor will choose two barricades by which to enter and leave the SRS during the contract period. The contractor will use these barricades upon entering or leaving the SRS for any reason (except emergencies) during the contract period. When leaving SRS, the same barricade will be used as was used to enter on that day. At this barricade, the contractor and all employees shall be required to sign in with SRS security personnel whenever entering and leaving the SRS. Perimeter gates or other barricades will not be utilized by the contractor during the contract period.

6. If mutually agreeable, Contractor may store equipment, bait or other supplies necessary to the completion of the contract at the SRFS workcenter. SRFS and DOE assume no responsibility for any of the vendor's equipment, supplies, or material stored at the workcenter, in transit or in use at a designated work site.

7. In areas scheduled to be utilized on the SRS Deer Hunts, hogs will not be taken for one week prior to the deer hunt. Also, ~~traps shall be removed from the hunt areas~~. Contractor will not hunt in these units on the days they are scheduled for SRS Deer Hunt.

Traps can remain in hunt areas but must be securely closed and Contractor shall not bait traps in hunt area for one week prior to scheduled hunt.

8. Taking of hogs and related activities will not be done within the Advanced Tactical Training Area (ATTA) or the Small Arms Training Area (SATA) until proper notification of Wackenhut.

9. The contractor may use boats to retrieve hog carcasses in wet areas as approved by the Contracting Officer, COR, or Inspector(s) but not in the Savannah River. Use of boats in the Savannah River and on adjacent DOE lands shall be confined to the retrieval of dogs only. Any entrance to and departure from water by boat shall be confined to points within the boundaries of the SRS.

10. Contractor may use tracked vehicles similar in size to a four wheeled ATV in pre-approved locations only. Tracked vehicles larger than a four wheeled ATV will not be permitted to be used. Information on make, model, etc. for all tracked vehicles must


USFS
W.D. Hooker
Contractor/Supervisor
Andy Cromer
Trapper
Goldman Eller
Dog Man
Mike Eller
Dog Man

**SRS Wild Hog Contract**
**Technical Proposal**

## Introduction

The following details represents how Georgia Bowhunters Supply Company would organize and implement the following programs to control the wild hog population at the Savannah River Site. This technical proposal describes the aspects of the program to be conducted above and in addition to the specifications defined in the requirements of the Government (USFS) statement of work. All requirements from the Government (USFS) defined in this statement are to be considered and included in this technical proposal. irregardless of any specific mention in this document.

## Contract Objectives

Georgia Bowhunters Supply objectives of the proposed program, are to be conducted in a safe, professional manner. We are to remove a minimum of 200 and up to a maximum 800 wild hogs from the populations of these animals found on Savannah River Site in a safe and efficient manner as possible. Georgia Bowhunters Supply will work in a manner which is responsive to the needs of the Government (USFS). The products provided by this program will be dead wild hogs removed from Savannah River Site population and accurate data and blood samples collected from those animals removed during this program.

## General Background of Organization

Georgia Bowhunters Supply Company has held for the last 6 years trapping contracts for the Government (USFS). We have had no time lost due to injuries, or accidents due to unsafe acts. We have trapped over 51 different locations on the Savannah River Site. We have performed hog trapping for over 3 years (R8-36-94-08). The personnel that I have assembled for this bid have over 60 years of experience hunting wild hogs. See attached resumes of personnel. All have valid state drivers licenses and are U. S. citizens. We have as project equipment available to us for use in this contract, 27 Bay dogs and Trails dogs, 4 trucks, three with dog boxes, 4 ATVs with trailers, 3 boats with trailers, one motor home used as office only, and 3 trailers for transporting dead hogs. The Government Hog contracts that Georgia Bowhunters Supply Company have held R8-36-94-08 (RFP). All contracts were completed on time with no lost time due to injuries and at present contract for 97 has not lost time for injuries or unsafe conditions. Again details for personnel are attached to this technical proposal.

## Contingency Plan for Replacement Personnel

I know and have hunted with other hog hunters in the local Georgia and South Carolina vicinity. I can readily provide experienced replacement personnel for anyone who cannot continue to work the contract for whatever reason.

## Project Organization

The project personnel organization chart for this program is attached at the back of the technical proposal. The program will be organized and managed by myself, W. D. Hooker. The program will be staffed by Andy Cromer, Mr. Eller Sr. and Mike Eller. Decisions on the number and location of traps and bait piles will be determined by myself based on discussions with the Savannah River Forest Station and the project personnel. Daily locations to be hunted with dogs will be determined by a general agreement among the project personnel present at the time. All project personnel will work on all tasks in the proposed program. The approximate percentage of time that each individual will be available for this project is as follows: W. D. Hooker - a minimum of 5 days during every week during the contract, Andy Cromer - 3 days during every week of the contract, Mr. Eller, Sr., and Mike Eller 3 days during every week of the contract. There are no consultant and/or subcontract efforts associated with this technical proposal. All work required for the completion of this contract will be provided by the project personnel identified above.

**Proposal Task Technical Approac**

The proposed starting date would be immediately following the awarding of this contract to Georgia Bowhunters Supply. All project personnel are prepared to begin work on this proposed program immediately following the starting date. Both methods will be used during each 7 day period of the entire 12 months. These task technical approaches will be operated in a flexible manner such that any specific control/removal needs of the Savannah River Forest Station can be met as necessary and as soon as possible. Specific details on how the both tasks within this technical proposal will be accomplished are provided below.

**Trapping** -The use of the traps will begin immediatly after the contract is awarded to Georgia Bowhunters Supply. The traps will be modified before use. The modification will be the construction of wood drop doors rather than the metal doors provided. The use of wood drop doors was taught to me by John Reiner in 1994. The location of the traps will depend on either initial direction from Savannah River Forest Station or areas cf recent hog activity. The initial areas to be searched for activity will include Hog Barn. Leigh-Banana Road, Watergap, Robbins Station, L Lake, area below Wackenhut office, and the roads behind Forestry Headquarters. At least 25 traps will be used. When ideal locations are identified to set traps, the traps will be set up within 40 feet of a road so they will be accessible with a trailer. Corn, soured in water with lye, will be used as bait. Traps will be prebaited for 5 days before setting. A pegged trip bar, connected by a string through pulleys to the drop door. will be used for the trigger. All traps which are set will be checked the next morning. This will increase the chance of finding a hog feeding on the bait outside of the trap. Instead of shooting hogs found at bait lines, dogs will be used to catch hogs feeding on the bait. This will eliminate any problems caused by trying to shoot the hog. Any hogs caught in the traps will not be dispatched in the trap. The hog will be run into a trailer and relocated to be dispatched with either bow and arrow or 22 cal. rifle. A collecting permit will be requested from Mike Caudell to catch and dispatch any raccoons caught eating corn at the traps. A similar permit was used during 1995, 1996 and 1997. This will eliminate losing corn to raccoons. The proposed staff hours the project personnel will be allocated are: Andy Comer - 274 hours, W. D. Hooker - 600 hours, and Goldman Eller - 181 hours.

**Dogs** - The use of dogs will begin immediately after the contract is awarded to Georgia Bowhunters Supply. As stated in the section on General Background of Organization, our total of 97 dogs includes trail dogs, combined trail and bay dogs, and catch dogs. All of these dogs have been trained and used successfully to hunt hogs. Most of the hunting with dogs will begin in the late morning after the traps and bait piles are checked or in the late afternoon. However, dogs will be carried at all times in the event hogs are found unexpectedly. The dogs will be hunted out of trucks or on foot in the woods. When hunted out of the truck. all dogs will be carried in the dog box until a hog or a fresh sign is identified, or one trail dog may be released to walk in front of the truck to find fresh signs or wind of a hog. The roads hunted with dogs will initially be the same ones searched for trapping locations. As more hog signs are identified, dogs will be used in these areas. Hunting on foot with dogs will be done in areas of known hog activities. ATVs will be used for hunting in the woods and areas where access is limited. Hogs caught by the dogs will be killed by using hunting knives rather than guns, this will reduce the chance of injuring the trained dogs. The proposed staff hours that the project personnel will be allocated for this task are: W. D. Hooker - 440 hours, Andy Cromer - 350 hours, Mike Eller 616 - hours, and Goldman Eller - 441 hours.

# RESUME

Name: William D. Hooker Sr. Age: 43

Citizenship: USA SSN: 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

Address: 2603 Glenn Hills Dr.
Augusta, GA 30906

Education: High School Diploma 1971
6 1/2 years Augusta Technical School
"Q" Clearance at SRS

Training: Master Plumber # M007197 STATE GA.
3 years supervising Hog Trapping/Running Dogs on Contract R8-36-94-08 (RFP).

Skill/Experience in Wild Hog Control Techniques:

3 years of experiences watching other Hog contractors conduct hog hunting contracts at Savannah River Site S.C. for U.S.F.S. Have read numerous books on wild pigs, trapping tech., etc.

A. Trapping - under the guidance of John Riner I have learned to use the Root-Door as tool in trapping wild hogs prebait with sour corn. Savannah River Site 1993 and 1994.

B. Have 35 years of hunting experience.

C. Owner of GA. Bowhunter Supply Co. which has had 8 government contracts with no lost work days due to unsafe conditions, no unsafe act.

D. Certified Archery Instructor, State of Georgia.

E. Past Director of District #10 State Trapping Assoc. State of GA.

F. CPR Course - have taken 5 times at Local 150.

G. Completed 18 month course in Forestry & Conservation

H. Safety #1 priority

Ability to Obtain Proper SC Hunting License/List of Hunting Violations:

No past hunting violations in any state.

References available upon request

# RESUME

Name: Andy Cromer III Age: 41

Citizenship: USA SSN: 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

Address: 3726 Cemetary Road
Augusta, GA 30906

Education: High School Diploma 1973
2 years College / Brenton Fartier College
4 years Technical School / Augusta Tech.
18 years Journeyman Electrician
"Q" Clearance at SRS

Training: Master Electrician CIC # High Voltage EN007356
Low Voltage LVUOO0613

Skill/Experience in Wild Hog Control Techniques:

3 years of experience Trapping / Running Dogs Contract R8-36-94-08 (RFP)

3 years of experiences watching other Hog contractors conduct business at Savannah River Site S.C. for U.S.F.S.

A. Trapping - experienced with J. Riner in Root-Door Corral Traps - Prebaited and then baited with sour corn. Savannah River Site 1993. Also caught and dispatched hogs with Mr. Riner.

B. Actively hunted for 37 years been hunting unsupervised for 27 years actively trapped for 20 years. No safety related incidence. Presently working for GA. Bowhunter Supply Co. (trapping 6 years) Bow Instructor, Hunting Advisor, Coordinator.

C. CPR Course (Have taken twice Local 1579)

D. Safety is my #1 priority.

Ability to Obtain Proper SC Hunting License/List of Hunting Violations:

No hunting violations in any state.

References available upon request

# RESUME

NAME: Goldman Edward Eller AGE: 70

CITIZENSHIP: USA SSN: 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

ADDRESS: 302 Malson Street
Jackson SC 29831

EDUCATION: Graduate Hiwassee High School - 1945
Military Army 1945 - 1948
Air Force 1948 - 1950

OBJECTIVE: An opportunity to progress with the Forestry Department in Control and eliminating wild boar on the SRS. Safety is my #1 priority

SKILL/EXPERIENCE IN WILD HOG CONTROL TECHNIQUES:

Instructor in First Aid, C.P.C., Emergency Medical Technician, Ambulance Driver

Was on the Dupont Pistol team 12 years. Was on the Governor's top 20 Shooter for 8 years.

Hunted Deer, Bear and Wild Boar with dogs in the Great Smokey mountains in North Carolina 1940 to 1960.

Hunted wild hogs with dogs in South Carolina from 1960 to present.

Hunted wild hogs with dogs on the SRS with Fox Enterprises in 1991, 1992 and 1993, Palmetto Wildlife 1994. Also worked for GA Bowhunters for past Contract # R8-36-94-08. 95, 96, 97.

I have 7 years of setting up traps for wild hogs, catching, baiting and killing hogs with 12 Ga. Shotgun/22 Cal. Rifle.

I have had training in ageing, weighting and checking hogs for preganacy.

Ability to Obtain Proper SC Hunting License/List of Hunting Violations:

Currently have valid 1997, 1998, SC Hunting License - YES

No past hunting violations

References available upon request

# RESUME

NAME: Michael Edward Eller AGE: 40

CITIZENSHIP: USA SSN: 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

ADDRESS: 204 Daniel Street
Jackson, SC 29831

EDUCATION: Jackson High School, Jackson SC
Attended Aiken Tech
2 years in Elector Mechanical Engineer

OBJECTIVE: An opportunity to progress with the Forestry Department in Control and eliminating wild hog on the SRS. Safety is my #1 priority

SKILL/EXPERIENCE IN WILD HOG CONTROL TECHNIQUES:

Hunted Deer & Bear in North Carolina and Canada

Hunted wild hog with dogs in South Carolina for the past 28 years.

Hunted and trapped wild hogs with dogs on the SRS for Fox Enterprises 1991-1992-1993, Weeks Farm near Spring Field, SC.

Palmetto Wildlife 1994 - have received training in weighing hogs and checking for pregnancy.

Trapped/Hunted hogs for GA Bowhunters Supply Co., 1995, 1996, 1997 contract # R8-36-94-08 (RFP).

Ability to Obtain Proper SC Hunting License/List of Hunting Violations:

Currently have valid 1997-1998 SC Hunting License - YES

No past hunting violations

References available upon request

**HUNTER SAFETY CERTIFICATE**

This is to certify that

HOOKER W. D.

has completed a course in Hunter Education as prescribed by Georgia Law.

Date of Issue Aug, 13 -94

Instructor's Signature [signature] Instructor No. 349

GEORGIA DEPARTMENT OF NATURAL RESOURCES

Certification # 377702

**HUNTER SAFETY CERTIFICATE**

This is to certify that

John Andrew Cromer III

has completed a course in Hunter Education as prescribed by Georgia Law.

Date of Issue Aug. 13, 94

Instructor's Signature [signature] Instructor No. 349

GEORGIA DEPARTMENT OF NATURAL RESOURCES

Certification # 377701

be provided to the COR prior to teh contractor bringing the vehicle(s) on SRS. Tracked vehicles shall not be used in the Savannah River.

F. Protection of Improvements. The contractor shall take every precaution necessary to prevent damage to any improvement in the contract area such as roads, trails, ditches, fences, etc.

Roads and trails shall be kept free of logs, slash and debris. Any road or trail damage by the contractor's operation shall be promptly repaired by the contractor. Access guidelines will be provided by the COR.

G. Safety & Environment Requirements.

Contractor and all employees shall be required to attend an Environmental, Safety and Health Orientation at SRFS prior to starting work. The orientation will be no more than 2 hours long. Each new employee that the Contractor hires will be required to attend the above orientation prior to receiving a SRS access badge from SRFS.

The Contractor shall be required to comply with the Savannah River Forest Station's "Field Worker and Contractor Tracking System." This system aids in teh location of personnel in the case of an emergency, such as: severe weather, fire, personal injury, or other threats. The system will be explained at the Pre-Work Meeting.

1. The contractor shall provide and wear safety glasses with side shields when working in thick underbrush or where eyes are susceptible to injury from surrounding vegetation or flying debris.

2. The contractor shall have a First aid kit with each vehicle (including ATV's) in use on this contract.

3. Some form of communications (ie CB, 2-way radio, or cellular phone) must be provided for each crew for emergency notification.

4. Hardhats must be provided and worn at all times while working in wooded areas.

5. The contractor shall provide and use a metal "Safety Fuel Can" when dispensing gasoline into small engines (ie ATV's).

6. An operable "ABC" type fire extinguisher of at least 5 lbs. in size shall be located on each vehicle in use on this contract.

7. Employees operating seatbelt-equipped vehicles shall

wear the seatbelts at all times while vehicle is in motion.

8. All handtools (axes, shovels, etc..) used in the performance of this contract shall be in good working condition. Splintered, cracked or damaged handles and loose parts on any tool must be repaired or taken out of service. Hand tools with cutting edges must be properly guarded while not in use.

9. Any and all spills of petroleum products (ie gasoline, hydraulic fluid, motor oil, and antifreeze) must be contained and reported to the COR. The contractor will be responsible for cleanup and disposal. This will include, but is not limited to excavating all contaminated soils.

10. Any and all contractor generated debris must be cleaned up on a daily basis. This includes, but is not limited to empty petroleum product cans and/or drums.

11. Other personal protective equipment may be required for any other special equipment in use on this contract.

12. The contractor shall provide a "Written Bloodborne Pathogen and Hazard Communication Plan" prior to the start of work. The plan must include information on the hazards of the work, training, material safety data sheets for all hazardous chemicals in use, and documentation of training provided for each employee.

13. Contractor shall comply with all safety regulations governing the handling and storage of firearms and ammunition during the performance of this contract.

14. Persons handling firearms must provide documentation for attending and successfully completing a hunter safety course. They must demonstrate their ability to handle the firearms to be used on this contract.

15. Never permit loaded firearms in vehicles or boats in use on this contract. The safest firearm has an open action.

16. Never climb a tree or fence carrying a firearm with a loaded chamber. Before going over a fence, place the gun on the ground pointing away from you and others and leave chamber empty.

17. All firearms in use with this contract must be regularly maintained, with safety devices in perfect working order.

18. Consider trajectory and impact points before shooting.

19. Always treat firearms as if they are loaded. An unloaded firearm does not have ammunition in either the chamber or the magazine.

20. Do not shoot at any sound or movement in the brush and be absolutely sure no one is in your line of fire.

C.3 PAYMENT

Vendor will be paid a price per hog trapped and dispatched. Vendor is to provide a bid price per hog.

## SECTION D - PACKAGING AND MARKING

[For this Solicitation, there are NO clauses in this Section]

SECTION E - INSPECTION AND ACCEPTANCE

E.1 CLAUSES INCORPORATED BY REFERENCE
(FAR 52.252-2) (JUN 1988)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

I. FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1) CLAUSES

| CLAUSE NUMBER | DATE | TITLE |
|---|---|---|

None by reference

E.2 INSPECTION OF SERVICES--FIXED-PRICE
(FAR 52.246-4) (AUG 1996)

(a) Definitions. "Services," as used in this clause, includes services performed, workmanship, and material furnished or utilized in the performance of services.

(b) The Contractor shall provide and maintain an inspection system acceptable to the Government covering the services under this contract. Complete records of all inspection work performed by the Contractor shall be maintained and made available to the Government during contract performance and for as long afterwards as the contract requires.

(c) The Government has the right to inspect and test all services called for by the contract, to the extent practicable at all times and places during the term of the contract. The Government shall perform inspections and tests in a manner that will not unduly delay the work.

(d) If the Government performs inspections or tests on the premises of the Contractor or a subcontractor, the Contractor shall furnish, and shall require subcontractors to furnish, at no increase in contract price, all reasonable facilities and assistance for the safe and convenient performance of these duties.

(e) If any of the services do not conform with contract requirements, the Government may require the Contractor to perform the services again in conformity with contract requirements, at no increase in contract amount. When the defects in services cannot be corrected by reperformance, the Government may (1) require the Contractor to take necessary action to ensure that future

performance conforms to contract requirements and (2) reduce the contract price to reflect the reduced value of the services performed.

(f) If the Contractor fails to promptly perform the services again or to take the necessary action to ensure future performance in conformity with contract requirements, the Government may (1) by contract or otherwise, perform the services and charge to the Contractor any cost incurred by the Government that is directly related to the performance of such service or (2) terminate the contract for default.

## SECTION F - DELIVERIES OR PERFORMANCE

F.1 CLAUSES INCORPORATED BY REFERENCE
(FAR 52.252-2) (JUN 1988)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

I. FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1) CLAUSES

| CLAUSE NUMBER | DATE | TITLE |
|---|---|---|
| 52.247-55 | APR 1984 | F.O.B. POINT FOR DELIVERY OF GOVERNMENT-FURNISHED PROPERTY |

F.2 PERIOD OF PERFORMANCE (AGAR 452.211-5) (FEB 1988)

The period of performance of this contract is from Date of Contract Award through September 30, 2000.

## SECTION G - CONTRACT ADMINISTRATION DATA

THE FOLLOWING GOVERNMENT-FURNISHED PROPERTY SHALL BE PROVIDED:

1. 25 TRAPS AS REQUIRED
2. TRAP SUPPLIES AS REQUIRED^W

SECTION H - SPECIAL CONTRACT REQUIREMENTS

H.1 POST AWARD CONFERENCE (AGAR 452.215-73) (NOV 1996)

A post award conference with the successful offeror is required. It will be scheduled within 15 days after the date of contract award. The conference will be held at:

Savannah River Forest Station, Building 760-15G
1 mile inside the Aiken barricade
Aiken, South Carolina

H.2 INSURANCE COVERAGE (AGAR 452.228-71) (NOV 1996)
ALTERNATE I (NOV 1996)

Pursuant to FAR clause 52.228-5, Insurance-Work on a Government Installation, the Contractor will be required to present evidence to show, as a minimum, the amounts of insurance coverage indicated below:

(a) Workers Compensation and Employer's Liability. The Contractor is required to comply with applicable Federal and State workers' compensation and occupational disease statutes. If occupational diseases are not compensable under those statutes, they shall be covered under the employer's liability section of the insurance policy, except when contract operations are so commingled with a Contractor's commercial operations that it would not be practical to require this coverage. Employer's liability coverage of at least $100,000 shall be required, except in States with exclusive or monopolistic funds that do not permit worker's compensation to be written by private carriers.

(b) General Liability.

(1) The Contractor shall have bodily injury liability coverage written on a comprehensive form of policy of at least $500,000 per occurrence.

(2) The Contractor shall have property damage liability insurance shall be required in the amount of 500,000 per occurrence.

(c) Automobile Liability. The Contractor shall have automobile liability insurance written on a comprehensive form of policy. The policy shall provide for bodily injury and property damage liability covering the operation of all automobiles used in connection with performing the contract. Policies covering automobiles operated in the United States shall provide coverage of at least $200,000 per person and $500,000 per occurrence for bodily injury and $20,000 per occurrence for property damage or loss.

(d) Aircraft Public and Passenger Liability. When aircraft are used in connection with performing the contract, the Contractor shall have aircraft public and passenger liability insurance. Coverage shall be at least $200,000 per person and $500,000 per occurrence for bodily injury, other than passenger injury. Coverage for passenger injury shall be at least $200,000 multiplied by the number of seats or passengers, whichever is greater.

H.3 PERMITS AND RESPONSIBILITIES (FAR 52.236-7) (NOV 1991)

The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work. The Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence. The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract.

H.4 EMERGENCY RESPONSE (AGAR 452.236-77) (NOV 1996)

(a) Contractor's Responsibility for Fire Fighting . (1) The Contractor, under the provisions of FAR clause 52.236-9, PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS, shall immediately extinguish all fires on the work site other than those fires in use as a part of the work. (2) The Contractor may be held liable for all damages and for all costs incurred by the Government for labor, subsistence, equipment, supplies, and transportation deemed necessary to control or suppress a fire set or caused by the Contractor or the Contractor's agents or employees.

(b) Contractor's Responsibility for Notification in Case of Fire. The Contractor shall immediately notify the Government of any fires sighted on or in the vicinity of the work site.

(c) Contractor's Responsibility for Responding to Emergencies. When directed by the Contracting Officer, the Contractor shall allow the Government to temporarily use employees and equipment from the work site for emergency work (anticipated to be restricted to fire fighting). An equitable adjustment for the temporary use of employees and equipment will be made under the CHANGES clause, FAR 52.243-4.

H.5 KEY PERSONNEL (AGAR 452.237-74) (FEB 1988)

(a) The Contractor shall assign to this contract the following key personnel:

Supervisor
Trapper/Hunter

(b) During the first ninety (90) days of performance, the Contractor shall make no substitutions of key personnel unless the substitution is necessitated by illness, death, or termination of employment. The Contractor shall notify the Contracting Officer within 15 calendar days after the occurrence of any of these events and provide the information required by paragraph (c) below. After the initial 90-day period, the Contractor shall submit the information required by paragraph (c) to the Contracting Officer at least 15 days prior to making any permanent substitutions.

(c) The Contractor shall provide a detailed explanation of the circumstances necessitating the proposed substitutions, complete resumes for the proposed substitutes, and any additional information requested by the Contracting Officer. Proposed substitutes should have comparable qualifications to those of the persons being replaced. The Contracting Officer will notify the Contractor within 15 calendar days after receipt of all required information of the decision on substitutions. The contract will be modified to reflect any approved changes of key personnel.

H.6 COMPLIANCE WITH AREA REGULATIONS

The Contractor agrees to comply with all security and safety regulations and requirements of the Government. A short security questionnaire is required of the Contractor and all of his/her employees working on SRS. The Contractor shall be responsible for maintaining satisfactory standards of employee competency, conduct, and integrity, and shall be responsible for taking disciplinary action with respect to his/her employees as may be necessary. In the event the Contractor fails to remove any employee whose continued employment is deemed by the Government to be contrary to the public interest, the Government reserves the right to require the Contractor to remove the employee. The Contractor agrees to designate a representative who shall be authorized to receive on behalf of the Contractor any notices and instructions given by the Contracting Officer in regard to performance under this contract and to take such action thereon as is required by the terms of this contract.

The Contractor further agrees that only persons possessing a valid state driver's license will be permitted to operate motor vehicles engaged in the performance of this Contract upon the roads of the SRS. Failure to furnish evidence of such license for an employee driver, will result in such employee being denied access to the SRS. In addition, Contractor and all employee drivers shall comply with all applicable state laws regulating traffic on SRS.

NOTE: All personnel working on the SRS must be United States citizens.

H.7 SAFETY AND HEALTH

The contractor shall take all reasonable precautions in the performance of the work under this contract to protect the safety and health of employees, subcontractors, and members of the public and shall comply with all applicable safety and health regulations and requirements of the Department of Energy, USDA Forest Service and OSHA, including reporting.

The contractor agrees to cooperate in making it possible for the Contracting Officer, Forest Service, and DOE personnel to safely and economically inspect activities under this contract and to conduct their official duties on the contract site and such other places on the SRS where the contractor, his/her employees, and subcontractors conduct operations under this contract. The Contracting Officer shall notify the contractor, in writing, of any noncompliance with the provisions of this clause and the corrective action to be taken. After receipt of such notice, the contractor shall immediately take such corrective action. In the event that the contractor fails to comply with said regulations or requirements, the Contracting Officer may, without prejudice to any other legal or contractual rights, issue an order stopping all or any part of the work; thereafter, a start order for resumption of the work may be issued at the discretion of the Contracting Officer. The contractor shall make no claim for an extension of time or for compensation of damage by reason of or in connection with such work stoppage.

In the absence of the Contracting Officer, the COR, or the inspector, any DOE or government employee has the authority to stop all or any part of the work being conducted by the contractor if it is determined that any unsafe condition is occurring that threatens life or limb. If such action is taken, the government employee must notify the Contracting Officer or COR immediately at 5-2441. If the COR or inspector is at the work site the government employee must promptly notify the COR or inspector of the action taken and the unsafe condition observed. Resulting formal contract action will be directed by the Contracting Officer.

The contractor further agrees that only persons possessing a valid state driver's license will be permitted to operate motor vehicles engaged in the performance of this contract upon the roads of the SRS. Failure to furnish evidence of such license for any employee-driver will result in such employee being denied access to the SRS. In addition, the contractor and all employee-drivers shall comply with all applicable state laws regulating traffic & condition of vehicles on SRS.

Operating supplies and maintenance responsibility: Contractor shall furnish all fuel, oil, grease and repairs. The Contractor will pay any other expense incidental to operation of equipment.

Protection of streams, lakes and reservoirs: The contractor shall take sufficient precautions to prevent pollutions of streams, lakes and reservoirs by fuels, oils and other chemicals, silt or other harmful materials. Contractor shall schedule and conduct contract in such a manner so as to avoid siltation of streams, lakes and reservoirs, and loss of embankment materials during high flow periods. All streams will be kept free of contractor-generated debris.

Erosion: The Contractor shall take every precaution necessary to prevent soil erosion on contract areas and access facilities including, but not limited to installing and/or maintaining drainage dips and water bars on roads and trails, outsloping and revegetation of areas disturbed by Contractor's operations.

Final clean-up: Before final acceptance all trash, rubbish, spills, and debris generated by Contractor's operation shall be removed from DOE land.

Area clean-up: Contractor shall be responsible for the housekeeping of Contractor's employees and any approved subcontractors working under this contract. Roads, right-of-ways, timber stands and general areas shall be kept free of disabled or abandoned vehicles and equipment, parts of vehicles or equipment, fuel, oil, beverage and lunch containers, and other debris resulting from Contractor's operations.

Contractor shall be responsible for the clean up of all spills of any amount of petroleum products (i.e. diesel, oil, and coolant). This includes excavation of contaminated soils.

Liabilities: Contractor shall assume responsibilities and be liable for all damages to persons or property incurred in or resulting from Contractor's negligence and/or willful acts in conducting the operations required under this contract, and Contractor shall hold the Government harmless for any damages to property and/or injury to persons which may arise or result from the operations required hereof.

Fire protection: The Contractor and all approved subcontractors under Contractor shall exercise due diligence, and take all reasonable and practicable action, both independently and in cooperation with the Government to prevent and suppress forest fires on the contract areas and vicinity. A minimum of one axe and one shovel will be available in the immediate vicinity of the work areas. Gasoline or diesel-powered equipment will be equipped with satisfactory mufflers or spark arrestors. Contractor will not be allowed to start any warming fires on the SRS and agrees to reimburse the Government for the cost of fire suppression incurred as the result of Contractor's negligence and/or willful acts. All operations on the SRS may be suspended by the Contracting Officer during periods of extreme fire danger as determined by the Savannah River Forest Station's Fire Department or when ongoing fires warrant such suspension. Such suspension shall be effected by written

notice to the Contractor except in cases of sudden emergency when such notice may be given verbally. In the event of such suspension, the Contractor agrees to remove all personnel and equipment immmediately as requested by the Contracting Officer. The Government shall not be liable for any damages or claims of any nature resulting from suspension.

H.8 QUARANTINE RESTRICTIONS

(a) The DOE Savannah River Site is infested with imported fire ants and is under quarantine; therefore, the Contractor shall comply with U.S. Department of Agriculture (USDA) and South Carolina Plant Pest Regulatory Service restrictions to prevent the spread of the fire ants until they can be eliminated.

(b) Quarantine restrictions apply to movement of articles that may carry fire ants; such as used soil-moving equipment, soil plants with roots, grass sod, and hay and straw except hay and straw used for bedding and packing. The restrictions are imposed on the movement of the regulated articles from an infested area to noninfested areas. Movement of the regulated articles within the infested areas is not restricted. Geographical areas under quarantine for imported fire ants are shown on an Attachment in section J.

Cleaning and processing procedures are required before moving restricted material to a non-infested area. Earth moving equipment shall be cleaned of all loose noncompacted soil before moving. Facilities are available for this cleaning at the Savannah River Site.

Restricted material shall contain a certification from the USDA Animal and Plant Inspection Service (APHIS) that the material is pest-free before moving from an infested to a non-infested area.

Additional information may be obtained from the Savannah River Forest Station, Telephone (803)725-2441, or the USDA, APHIS, PPQ, P.O. Box 21792, Columbia, SC 29221, Telephone (803)765-5901.

H.9 REQUIRED INSURANCE

In accordance with FAR 52.228-05 Insurance - Work on a Government Installation, the following information on required insurance levels is provided:

| | |
|---|---|
| Workmen's Compensation and Employer's Liability Insurance that provides coverage for employees working in the State of South Carolina | $100,000.00 |
| General Liability Insurance | |
| For Bodily Injury Liability | |
| Minimum per occurrence | $500,000.00 |
| Automobile Liability Insurance | |
| Minimum per person | $200,000.00 |

| | |
|---|---|
| Minimum per occurence for bodily injury | $500,000.00 |
| Minimum per occurrence for property damage | $ 20,000.00 |

H.10 LOSS OF TIMBER SALE LOCK KEY OR LOCK OR SECURITY BADGES

When necessary Forest Service personnel will place Timber Sale locks on exterior and/or interior gates for areas where contractor will be working. Contractor will be issued one or more keys for these Timber Sale locks to allow the contractor access to the areas. When a key(s) and/or locks are lost or misplaced, Department of Energy Security Regulations require the Forest Service to remove all current Timber Sale locks and replace these locks immediately.

If the contractor or contractor's employee(s) loses a Timber Sale key(s) and/or lock the loss shall be reported to the COR or Contracting Officer immediately. When the loss of the Timber Sale key(s) and/or lock is due to the contractor's or contractor's employee(s) fault or negligence, the contractor shall be charged the costs that the Government incurs in removing all current Timber Sale locks, placing new locks on all required gates, collecting all keys for the locks that are removed, and issuing keys for the new locks. This charge will be approximately $1,935.00 and will be deducted from any payments due the contractor including the final payment.

A security badge is issued to the contractor and each of the contractor's employees to allow them access to SRS. When a security badge is lost or misplaced the contractor or his/her representative shall report the loss to the COR or Contracting Officer immediately and obtain a replacement badge for the lost or misplaced badge. At the completion of the contract, all security badges must be returned to the Government. A deduction of $10 will be made on the Final Payment for each security badge that is not returned.

Final payments will not be processed until all Timber Sale keys and security badges are either returned to the Government or determined to be lost. When a Timber Sale key(s) and security badge(s) are determined to be lost prior to final payment, appropriate deductions will be made from the Final Payment for this contract.

H.11 USE OF PREMISES (AGAR 452.236-72) (NOV 1996)

(a) Before any camp, quarry, borrow pit, storage, detour, or bypass site, other than shown on the drawings, is opened or operated on USDA lands or lands administered by the USDA, the Contractor shall obtain written permission from the Contracting Officer. A camp is interpreted to include a campsite or trailer parking area of any employee working on the project for the Contractor.

(b) Unless excepted elsewhere in the contract, the Contractor shall: (i) provide and maintain sanitation facilities for the work

force at the site and (ii) dispose of solid waste in accordance with applicable Federal, State and local regulations.

H.12 ARCHAEOLOGICAL OR HISTORIC SITES (AGAR 452.236-73) (FEB 1988)

If a previously unidentified archaeological or historic site(s) is encountered, the Contractor shall discontinue work in the general area of the site(s) and notify the Contracting Officer immediately.

H.13 RESPONSIBILITIES OF THE CONTRACTOR (AGAR 4G52.236-807) (JUL 1986)

(a) The contractor shall protect all trails, ditches, fences and other improvements in the operating area. Roads and trails needed for fire protection or other purposes shall be kept free of logs, slash and debris. Any road or trail used by the contractor that is damaged by his operations shall be promptly restored by him to its original condition.

(b) The contractor shall use every precaution necessary to prevent damage to young growth and trees left standing.

H.14 USE OF UNDOCUMENTED WORKERS

The Immigration and Nationality Act as amended by the Immigation reform and Control Act (8 USC 1324a; 8 CFR 274a) makes it unlawful for an employer to hire unauthorized aliens (undocumented workers) and establishes the I-9 Form as the document to be used for employment eligibility verification.

The contractor is required to 1) have all employees complete and sign the I-9 Form to certify that they are eligible for employment; 2) examine documents presented by the employee and ensure the documents appear to be geniune and related to the individual; 3) record information about the documents on the form, and complete the certification portion of the form; 4) retain the form for three years, or one year past the end of employment of the individual, whichever is longer.

It is illegal to discriminate against any individual (other than a citizen of another county who is not authorized to work in the U.S.) in hiring, discharging, or recruiting because of that individual's national origin or citizenship status.

For further information on the requirements of the Act, contractors should contract the Employer and Labor Relations Officer of their local INS office.

H.15CRIMINAL LIABILITY

It is understood that disclosure of any classified information relating to the work or services ordered herunder to any person not entitled to receive it, or failure to safeguard any classified information that may come to the USFS or any person under the USFS's control in connection with work under this Agreement, may subject USFS, its agents, employees, or subcontractors to criminal liability under the laws of the United States. (See the Atomic Energy Act of 1954, as amended, 42 U.S.C. 2011 et seq.; 18 U.S.C. 793 and 794; and Executive Order 12356)

H.16 SITE ACCESS AUTHORIZATION FOR CONTRACTOR AND EMPLOYEES

Prior to badging of contractor and contractor's employee(s), contractor and all employees requiring access to the Savannah River Site in order to work on this contract shall be required to complete a questionnaire titled "Application for Site Access Authorization". Also, the contractor and all employees shall be fingerprinted. Contractor and employees shall receive a red site access badge after this process. However, a screening process will be performed and those individuals meeting the following conditions will be denied future access to SRS.

A. Those who are currently on probation or parole for a felony (as determined by the state where the conviction occurred).

B. Any applicant for employment at SRS who has received a positive drug screen.

C. Any employee who was assigned by his employer to work at the SRS and was fired for possession, trafficking or use of illegal drugs or for being under the influence of drugs while at SRS.

D. Any employee who has been fired or quit to avoid being fired from any employment for violation of a contractor or subcontractor policy on the use or abuse of illegal drugs.

E. Any employee who has been denied a DOE access authorization (security clearance) pursuant to the procedures of 10 CFR 710 administrative review.

F. Individuals who have been involuntarily terminated or have voluntarily terminated to avoid involuntary termination from any employment for theft of government property at the SRS or for a willful violation of contractor policies or security regulations which may jeopardize the security of site operations or the health and safety of other employees or the general public.

G. Any employee who has been fired or quit to avoid being fired from any employment at the SRS for theft of property.

Contractor or their representative shall be notified of employees that will be denied access to SRS and immediately upon notification, contractor shall remove the employee(s) from SRS and return the site access badge(s) to the Contracting Officer or COR. Contractor shall be responsible for replacing those employee(s) denied access to SRS and denial of access for contractor's employee(s) shall not be construed as a suitable excuse for nonperformance of the contract. If the contractor is denied access to SRS the contract may be terminated for default.

Failure of the contractor to promptly remove employee(s) denied access and surrender their site access badges to the C.O. or COR may result in termination for default.

PART II - CONTRACT CLAUSES

SECTION I - CONTRACT CLAUSES

I.1 CLAUSES INCORPORATED BY REFERENCE (FAR 52.252-2) (JUN 1988)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

I. FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1) CLAUSES

| CLAUSE NUMBER | DATE | TITLE |
|---|---|---|
| 52.202-1 | OCT 1995 | DEFINITIONS |
| 52.203-3 | APR 1984 | GRATUITIES |
| 52.203-5 | APR 1984 | COVENANT AGAINST CONTINGENT FEES |
| 52.203-6 | JUL 1995 | RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT |
| 52.203-10 | JAN 1997 | PRICE OR FEE ADJUSTMENT FOR IMPROPER OR ILLEGAL ACTIVITY |
| 52.204-4 | JUN 1996 | PRINTING/COPYING DOUBLE-SIDED ON RECYCLED PAPER |
| 52.209-6 | JUL 1995 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT |
| 52.215-2 | AUG 1996 | AUDIT AND RECORDS--NEGOTIATION |
| 52.215-33 | JAN 1986 | ORDER OF PRECEDENCE |
| 52.222-3 | AUG 1996 | CONVICT LABOR |
| 52.222-26 | APR 1984 | EQUAL OPPORTUNITY |
| 52.222-35 | APR 1984 | AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS |
| 52.222-36 | APR 1984 | AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS |
| 52.222-37 | JAN 1988 | EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA |
| 52.223-2 | APR 1984 | CLEAN AIR AND WATER |
| 52.223-14 | OCT 1996 | TOXIC CHEMICAL RELEASE REPORTING |
| 52.225-11 | OCT 1996 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES |
| 52.227-1 | JUL 1995 | AUTHORIZATION AND CONSENT |
| 52.227-2 | AUG 1996 | NOTICE AND ASSISTANCE |

| | | |
|---|---|---|
| | | REGARDING PATENT AND COPYRIGHT INFRINGEMENT |
| 52.228-5 | JAN 1997 | INSURANCE--WORK ON A GOVERNMENT INSTALLATION |
| 52.229-3 | JAN 1991 | FEDERAL, STATE, AND LOCAL TAXES |
| 52.229-5 | APR 1984 | TAXES -- CONTRACTS PERFORMED IN U.S. POSSESSIONS OR PUERTO RICO |
| 52.232-17 | JUN 1996 | INTEREST |
| 52.232-18 | APR 1984 | AVAILABILITY OF FUNDS |
| 52.232-33 | AUG 1996 | MANDATORY INFORMATION FOR ELECTRONIC FUNDS TRANSFER PAYMENT |
| 52.233-3 | AUG 1996 | PROTEST AFTER AWARD |
| 52.242-13 | JUL 1995 | BANKRUPTCY |
| 52.245-1 | APR 1984 | PROPERTY RECORDS |
| 52.245-19 | APR 1984 | GOVERNMENT PROPERTY FURNISHED "AS IS" |
| 52.246-25 | FEB 1997 | LIMITATION OF LIABILITY--SERVICES |
| 52.253-1 | JAN 1991 | COMPUTER GENERATED FORMS |

I.2 ANTI-KICKBACK PROCEDURES (FAR 52.203-7) (JUL 1995)

(a) Definitions.

"Kickback," as used in this clause, means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to any prime Contractor, prime Contractor employee, subcontractor, or subcontractor employee for the purpose of improperly obtaining or rewarding favorable treatment in connection with a prime contract or in connection with a subcontract relating to a prime contract.

"Person," as used in this clause, means a corporation, partnership, business association of any kind, trust, joint-stock company, or individual.

"Prime contract," as used in this clause, means a contract or contractual action entered into by the United States for the purpose of obtaining supplies, materials, equipment, or services of any kind.

"Prime Contractor" as used in this clause, means a person who has entered into a prime contract with the United States.

"Prime Contractor employee," as used in this clause, means any officer, partner, employee, or agent of a prime Contractor.

"Subcontract," as used in this clause, means a contract or contractual action entered into by a prime Contractor or subcontractor for the purpose of obtaining supplies, materials, equipment, or services of any kind under a prime contract.

"Subcontractor," as used in this clause, (1) means any person,

other than the prime Contractor, who offers to furnish or furnishes any supplies, materials, equipment, or services of any kind under a prime contract or a subcontract entered into in connection with such prime contract, and (2) includes any person who offers to furnish or furnishes general supplies to the prime Contractor or a higher tier subcontractor.

"Subcontractor employee," as used in this clause, means any officer, partner, employee, or agent of a subcontractor.

(b) The Anti-Kickback Act of 1986 (41 U.S.C. 51-58) (the Act), prohibits any person from--

(1) Providing or attempting to provide or offering to provide any kickback;

(2) Soliciting, accepting, or attempting to accept any kickback; or

(3) Including, directly or indirectly, the amount of any kickback in the contract price charged by a prime Contractor to the United States or in the contract price charged by a subcontractor to a prime Contractor or higher tier subcontractor.

(c)(1) The Contractor shall have in place and follow reasonable procedures designed to prevent and detect possible violations described in paragraph (b) of this clause in its own operations and direct business relationships.

(2) When the Contractor has reasonable grounds to believe that a violation described in paragraph (b) of this clause may have occurred, the Contractor shall promptly report in writing the possible violation. Such reports shall be made to the inspector general of the contracting agency, the head of the contracting agency if the agency does not have an inspector general, or the Department of Justice.

(3) The Contractor shall cooperate fully with any Federal agency investigating a possible violation described in paragraph (b) of this clause.

(4) The Contracting Officer may (i) offset the amount of the kickback against any monies owed by the United States under the prime contract and/or (ii) direct that the Prime Contractor withhold from sums owed the subcontractor under the prime contract the amount of the kickback. The Contracting Officer may order that monies withheld under subdivision (c)(4)(ii) of this clause be paid over to the Government unless the Government has already offset those monies under subdivision (c)(4)(i) of this clause. In either case, the Prime Contractor shall notify the Contracting Officer when the monies are withheld.

(5) The Contractor agrees to incorporate the substance of this clause, including this subparagraph (c)(5) but excepting subparagraph (c)(1), in all subcontracts under this contract which

exceed $100,000.

I.3 CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY (FAR 52.203-8) (JAN 1997)

(a) If the Government receives information that a contractor or a person has engaged in conduct constituting a violation of subsection (a), (b), (c), or (d) of Section 27 of the Office of Federal Procurement Policy Act (41 U.S.C. 423) (the Act), as amended by section 4304 of the 1996 National Defense Authorization Act for Fiscal Year 1996 (Pub. L. 104-106), the Government may--

(1) Cancel the solicitation, if the contract has not yet been awarded or issued; or

(2) Rescind the contract with respect to which--

(i) The Contractor or someone acting for the Contractor has been convicted for an offense where the conduct constitutes a violation of subsection 27 (a) or (b) of the Act for the purpose of either--

(A) Exchanging the information covered by such subsections for anything of value; or

(B) Obtaining or giving anyone a competitive advantage in the award of a Federal agency procurement contract; or

(ii) The head of the contracting activity has determined, based upon a preponderance of the evidence, that the Contractor or someone acting for the Contractor has engaged in conduct constituting an offense punishable under subsections 27(e)(1) of the Act.

(b) If the Government rescinds the contract under paragraph (a) of this clause, the Government is entitled to recover, in addition to any penalty prescribed by law, the amount expended under the contract.

(c) The rights and remedies of the Government specified herein are not exclusive, and are in addition to any other rights and remedies provided by law, regulation, or under this contract.

I.4 LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (FAR 52.203-12) (JAN 1990) - (DEVIATION)

(a) Definitions.

"Agency," as used in this clause, means executive agency as defined in 2.101.

"Covered Federal action," as used in this clause, means any of the following Federal actions:

(a) The awarding of any Federal contract.

(b) The making of any Federal grant.

(c) The making of any Federal loan.

(d) The entering into of any cooperative agreement.

(e) The extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

"Indian tribe" and "tribal organization," as used in this clause, have the meaning provided in section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450B) and include Alaskan Natives.

"Influencing or attempting to influence," as used in this clause, means making, with the intent to influence, any communication to or appearance before an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any covered Federal action.

"Local government," as used in this clause, means a unit of government in a State and, if chartered, established, or otherwise recognized by a State for the performance of a governmental duty, including a local public authority, a special district, an intrastate district, a council of governments, a sponsor group representative organization, and any other instrumentality of a local government.

"Officer or employee of an agency," as used in this clause, includes the following individuals who are employed by an agency:

(a) An individual who is appointed to a position in the Government under title 5, United States Code, including a position under a temporary appointment.

(b) A member of the uniformed services as defined in subsection 101(3), title 37, United States Code.

(c) A special Government employee, as defined in section 202, title 18, United States Code.

(d) An individual who is a member of a Federal advisory committee, as defined by the Federal Advisory Committee Act, title 5, United States Code, appendix 2.

"Person," as used in this clause, means an individual, corporation, company, association, authority, firm, partnership, society, State, and local government, regardless of whether such entity is operated for profit or not for profit. This term excludes an Indian tribe, tribal organization, or any other Indian organization with respect to expenditures specifically permitted by

other Federal law.

"Reasonable compensation," as used this clause, means, with respect to a regularly employed officer or employee of any person, compensation that is consistent with the normal compensation for such officer or employee for work that is not furnished to, not funded by, or not furnished in cooperation with the Federal Government.

"Reasonable payment," as used this clause, means, with respect to professional and other technical services, a payment in an amount that is consistent with the amount normally paid for such services in the private sector.

"Recipient," as used in this clause, includes the Contractor and all subcontractors. This term excludes an Indian tribe, tribal organization, or any other Indian organization with respect to expenditures specifically permitted by other Federal law.

"Regularly employed," as used in this clause, means, with respect to an officer or employee of a person requesting or receiving a Federal contract, an officer or employee who is employed by such person for at least 130 working days within 1 year immediately preceding the date of the submission that initiates agency consideration of such person for receipt of such contract. An officer or employee who is employed by such person for less than 130 working days within 1 year immediately preceding the date of the submission that initiates agency consideration of such person shall be considered to be regularly employed as soon as he or she is employed by such person for 130 working days.

"State," as used in this clause, means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, an agency or instrumentality of a State, and multi-State, regional, or interstate entity having governmental duties and powers.

(b) Prohibitions.

(1) Section 1352 of title 31, United States Code, among other things, prohibits a recipient of a Federal contract, grant, loan, or cooperative agreement from using appropriated funds to pay any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any of the following covered Federal actions: the awarding of any Federal contract; the making of any Federal grant; the making of any Federal loan; the entering into of any cooperative agreement; or the modification of any Federal contract, grant, loan, or cooperative agreement.

(2) The Act also requires Contractors to furnish a disclosure if any funds other than Federal appropriated funds (including profit or fee received under a covered Federal transaction) have been paid, or will be paid, to any person for influencing or attempting to

influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with a Federal contract, grant, loan, or cooperative agreement.

(3) The prohibitions of the Act do not apply under the following conditions:

(i) Agency and legislative liaison by own employees. (A) The prohibition on the use of appropriated funds, in subparagraph (b)(1) of this clause, does not apply in the case of a payment of reasonable compensation made to an officer or employee of a person requesting or receiving a covered Federal action if the payment is for agency and legislative liaison activities not directly related to a covered Federal action.

(B) For purposes of subdivision (b)(3)(i)(A) of this clause, providing any information specifically requested by an agency or Congress is permitted at any time.

(C) The following agency and legislative liaison activities are permitted at any time where they are not related to a specific solicitation for any covered Federal action:

(1) Discussing with an agency the qualities and characteristics (including individual demonstrations) of the person's products or services, conditions or terms of sale, and service capabilities.

(2) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

(D) The following agency and legislative liaison activities are permitted where they are prior to formal solicitation of any covered Federal action--

(1) Providing any information not specifically requested but necessary for an agency to make an informed decision about initiation of a covered Federal action;

(2) Technical discussions regarding the preparation of an unsolicited proposal prior to its official submission; and

(3) Capability presentations by persons seeking awards from an agency pursuant to the provisions of the Small Business Act, as amended by Pub. L. 95-507, and subsequent amendments.

(E) Only those services expressly authorized by subdivision (b)(3)(i)(A) of this clause are permitted under this clause.

(ii) Professional and technical services. (A) The prohibition on the use of appropriated funds, in subparagraph (b)(1) of this clause, does not apply in the case of--

(1) A payment of reasonable compensation made to an officer or employee of a person requesting or receiving a covered Federal action or an extension, continuation, renewal, amendment, or modification of a covered Federal action, if payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, proposal, or application for that Federal action or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal action.

(2) Any reasonable payment to a person, other than an officer or employee of a person requesting or receiving a covered Federal action or any extension, continuation, renewal, amendment, or modification of a covered Federal action if the payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, proposal, or application for that Federal action or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal action. Persons other than officers or employees of a person requesting or receiving a covered Federal action include consultants and trade associations.

(B) For purposes of subdivision (b)(3)(ii)(A) of this clause, "professional and technical services" shall be limited to advice and analysis directly applying any professional or technical discipline. The following examples are not intended to be all inclusive, to limit the application of the professional or technical exemption provided in the law, or to limit the exemption to licensed professionals. For example, drafting of a legal document accompanying a bid or proposal by a lawyer is allowable. Similarly, technical advice provided by an engineer on the performance or operational capability of a piece of equipment rendered directly in the negotiation of a contract is allowable. However, communications with the intent to influence made by a professional (such as a licensed lawyer) or a technical person (such as a licensed accountant) are not allowable under this section unless they provide advice and analysis directly applying their professional or technical expertise and unless the advice or analysis is rendered directly and solely in the preparation, submission or negotiation of a covered Federal action. Thus, for example, communications with the intent to influence made by a lawyer that do not provide legal advice or analysis directly and solely related to the legal aspects of his or her client's proposal, but generally advocate one proposal over another are not allowable under this section because the lawyer is not providing professional legal services. Similarly, communications with the intent to influence made by an engineer providing an engineering analysis prior to the preparation or submission of a bid or proposal are not allowable under this section since the engineer is providing technical services but not directly in the preparation, submission or negotiation of a covered Federal action.

(C) Requirements imposed by or pursuant to law as a condition for receiving a covered Federal award include those

required by law or regulation and any other requirements in the actual award documents.

(D) Only those services expressly authorized by subdivisions (b)(3)(ii)(A)(1) and (2) of this clause are permitted under this clause.

(E) The reporting requirements of FAR 3.803(a) shall not apply with respect to payments of reasonable compensation made to regularly employed officers or employees of a person.

(iii) Selling activities by independent sales representatives.

The prohibition on the use of appropriated funds, in subparagraph (b) (1) of this clause, does not apply to the following selling activities before an agency by independent sales representatives, provided such activities are prior to formal solicitation by an agency and are specifically limited to the merits of the matter.

(A) Discussing with an agency (including individual demonstrations) the qualities and characteristics of the person's products or services, conditions or terms of sale, and service capabilities; and

(b) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

(c) Disclosure.

(1) The Contractor who requests or receives from an agency a Federal contract shall file with that agency a disclosure form, OMB standard form LLL, Disclosure of Lobbying Activities, if such person has made or has agreed to make any payment using nonappropriated funds (to include profits from any covered Federal action), which would be prohibited under subparagraph (b)(1) of this clause, if paid for with appropriated funds.

(2) The Contractor shall file a disclosure form at the end of each calendar quarter in which there occurs any event that materially affects the accuracy of the information contained in any disclosure form previously filed by such person under subparagraph (c)(1) of this clause. An event that materially affects the accuracy of the information reported includes--

(i) A cumulative increase of $25,000 or more in the amount paid or expected to be paid for influencing or attempting to influence a covered Federal action; or

(ii) A change in the person(s) or individual(s) influencing or attempting to influence a covered Federal action; or

(iii) A change in the officer(s), employee(s), or Member(s) contacted to influence or attempt to influence a covered Federal action.

(3) The Contractor shall require the submittal of a certification, and if required, a disclosure form by any person who requests or received any subcontract exceeding $100,000 under the Federal contract.

(4) All subcontractor disclosure forms (but not certifications) shall be forwarded from tier to tier until received by the prime Contractor. The prime Contractor shall submit all disclosures to the Contracting Officer at the end of the calendar quarter in which the disclosure form is submitted by the subcontractor. Each subcontractor certification shall be retained in the subcontract file of the awarding Contractor.

(d) Agreement. The Contractor agrees not to make any payment prohibited by this clause.

(e) Penalties. (1) Any person who makes an expenditure prohibited under paragraph (a) of this clause or who fails to file or amend the disclosure form to be filed or amended by paragraph (b) of this clause shall be subject to civil penalties as provided for by 31 U.S.C. 1352. An imposition of a civil penalty does not prevent the Government from seeking any other remedy that may be applicable.

(2) Contractors may rely without liability on the representation made by their subcontractors in the certification and disclosure form.

(f) Cost allowability. Nothing in this clause makes allowable or reasonable any costs which would otherwise be unallowable or unreasonable. Conversely, costs made specifically unallowable by the requirements in this clause will not be made allowable under any other provision.

I.5 ORDERING (FAR 52.216-18) (OCT 1995)

(a) Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued from Upon Contract Award through September 30, 2000.

(b) All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

(c) If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail. Orders may be issued orally, by facsimile, or by electronic commerce methods only if authorized in the Schedule.

required by law or regulation and any other requirements in the actual award documents.

(D)· Only those services expressly authorized by subdivisions (b)(3)(ii)(A)(1) and (2) of this clause are permitted under this clause.

(E) The reporting requirements of FAR 3.803(a) shall not apply with respect to payments of reasonable compensation made to regularly employed officers or employees of a person.

(iii) Selling activities by independent sales representatives.

The prohibition on the use of appropriated funds, in subparagraph (b) (1) of this clause, does not apply to the following selling activities before an agency by independent sales representatives, provided such activities are prior to formal solicitation by an agency and are specifically limited to the merits of the matter.

(A) Discussing with an agency (including individual demonstrations) the qualities and characteristics of the person's products or services, conditions or terms of sale, and service capabilities; and

(b) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

(c) Disclosure.

(1) The Contractor who requests or receives from an agency a Federal contract shall file with that agency a disclosure form, OMB standard form LLL, Disclosure of Lobbying Activities, if such person has made or has agreed to make any payment using nonappropriated funds (to include profits from any covered Federal action), which would be prohibited under subparagraph (b)(1) of this clause, if paid for with appropriated funds.

(2) The Contractor shall file a disclosure form at the end of each calendar quarter in which there occurs any event that materially affects the accuracy of the information contained in any disclosure form previously filed by such person under subparagraph (c)(1) of this clause. An event that materially affects the accuracy of the information reported includes--

(i) A cumulative increase of $25,000 or more in the amount paid or expected to be paid for influencing or attempting to influence a covered Federal action; or

(ii) A change in the person(s) or individual(s) influencing or attempting to influence a covered Federal action; or

(iii) A change in the officer(s), employee(s), or Member(s) contacted to influence or attempt to influence a covered Federal action.

(3) The Contractor shall require the submittal of a certification, and if required, a disclosure form by any person who requests or received any subcontract exceeding $100,000 under the Federal contract.

(4) All subcontractor disclosure forms (but not certifications) shall be forwarded from tier to tier until received by the prime Contractor. The prime Contractor shall submit all disclosures to the Contracting Officer at the end of the calendar quarter in which the disclosure form is submitted by the subcontractor. Each subcontractor certification shall be retained in the subcontract file of the awarding Contractor.

(d) Agreement. The Contractor agrees not to make any payment prohibited by this clause.

(e) Penalties. (1) Any person who makes an expenditure prohibited under paragraph (a) of this clause or who fails to file or amend the disclosure form to be filed or amended by paragraph (b) of this clause shall be subject to civil penalties as provided for by 31 U.S.C. 1352. An imposition of a civil penalty does not prevent the Government from seeking any other remedy that may be applicable.

(2) Contractors may rely without liability on the representation made by their subcontractors in the certification and disclosure form.

(f) Cost allowability. Nothing in this clause makes allowable or reasonable any costs which would otherwise be unallowable or unreasonable. Conversely, costs made specifically unallowable by the requirements in this clause will not be made allowable under any other provision.

I.5 ORDERING (FAR 52.216-18) (OCT 1995)

(a) Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued from Upon Contract Award through September 30, 2000.

(b) All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

(c) If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail. Orders may be issued orally, by facsimile, or by electronic commerce methods only if authorized in the Schedule.

I.6 ORDER LIMITATIONS (FAR 52.216-19) (OCT 1995)

(a) Minimum order. When the Government requires supplies or services covered by this contract in an amount of less than 200 each , the Government is not obligated to purchase, nor is the Contractor obligated to furnish, those supplies or services under the contract.

(b) Maximum order. The Contractor is not obligated to honor--

(1) Any order for a single item in excess of 800 each;

(2) Any order for a combination of items in excess of 800 each; or

(3) A series of orders from the same ordering office within 1 days that together call for quantities exceeding the limitation in subparagraph (1) or (2) above.

(c) If this is a requirements contract (i.e., includes the Requirements clause at subsection 52.216-21 of the Federal Acquisition Regulation (FAR)), the Government is not required to order a part of any one requirement from the Contractor if that requirement exceeds the maximum-order limitations in paragraph (b) above.

(d) Notwithstanding paragraphs (b) and (c) above, the Contractor shall honor any order exceeding the maximum order limitations in paragraph (b), unless that order (or orders) is returned to the ordering office within 5 days after issuance, with written notice stating the Contractor's intent not to ship the item (or items) called for and the reasons. Upon receiving this notice, the Government may acquire the supplies or services from another source.

I.7 INDEFINITE QUANTITY (FAR 52.216-22) (OCT 1995)

(a) This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

(c) Except for any limitations on quantities in the Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

(d) Any order issued during the effective period of this contract

and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after September 30, 2000.

I.8 OPTION TO EXTEND THE TERM OF THE CONTRACT (FAR 52.217-9) (MAR 1989)

(a) The Government may extend the term of this contract by written notice to the Contractor within 60 days; provided, that the Government shall give the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option provision.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed 36 months_or 3 years .

I.9 LIMITATIONS ON SUBCONTRACTING (FAR 52.219-14) (DEC 1996)

(a) This clause does not apply to the unrestricted portion of a partial set-aside.

(b) By submission of an offer and execution of a contract, the Offeror/Contractor agrees that in performance of the contract in the case of a contract for--

(1) Services (except construction). At least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern.

(2) Supplies (other than procurement from a nonmanufacturer of such supplies). The concern shall perform work for at least 50 percent of the cost of manufacturing the supplies, not including the cost of materials.

(3) General construction. The concern will perform at least 15 percent of the cost of the contract, not including the cost of materials, with its own employees.

(4) Construction by special trade contractors. The concern will perform at least 25 percent of the cost of the contract, not including the cost of materials, with its own employees.

I.10 CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--OVERTIME COMPENSATION (FAR 52.222-4) (JUL 1995)

(a) Overtime requirements. No Contractor or subcontractor contracting for any part of the contract work which may require or involve the employment of laborers or mechanics (see Federal Acquisition Regulation (FAR) 22.300) shall require or permit any such laborers or mechanics in any workweek in which the individual is employed on such work to work in excess of 40 hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than 1 1/2 times the basic rate of pay for all hours worked in excess of 40 hours in such workweek.

(b) Violation; liability for unpaid wages; liquidated damages. In the event of any violation of the provisions set forth in paragraph (a) of this clause, the Contractor and any subcontractor responsible therefor shall be liable for the unpaid wages. In addition, such Contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to such District or to such territory), for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic employed in violation of the provisions set forth in paragraph (a) of this clause in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of 40 hours without payment of overtime wages required by provisions set forth in paragraph (a) of this clause.

(c) Withholding for unpaid wages and liquidated damages. The Contracting Officer shall upon his or her own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld, from any moneys payable on account of work performed by the Contractor or subcontractor under any such contract or any other Federal contract with the same Prime Contractor, or any other Federally-assisted contract subject to the Contract Work Hours and Safety Standards Act which is held by the same Prime Contractor, such sums as may be determined to be necessary to satisfy any liabilities of such Contractor or subcontractor for unpaid wages and liquidated damages as provided in the provisions set forth in paragraph (b) of this clause.

(d) Payrolls and basic records. (1) The Contractor or subcontractor shall maintain payrolls and basic payroll records during the course of the contract work and shall preserve them for a period of 3 years from the completion of the contract for all laborers and mechanics working on the contract. Such records shall contain the name and address of each such employee, social security number, correct classifications, hourly rates of wages paid, daily and weekly number of hours worked, deductions made, and actual wages paid. Nothing in this paragraph shall require the duplication of records required to be maintained for construction work by Department of Labor regulations at 29 CFR 5.5(a)(3) implementing the Davis-Bacon Act.

(2) The records to be maintained under paragraph (d)(1) of this clause shall be made available by the Contractor or subcontractor for inspection, copying, or transcription by authorized representatives of the Contracting Officer or the Department of Labor. The Contractor or subcontractor shall permit such representatives to interview employees during working hours on the job.

(e) Subcontracts. The Contractor or subcontractor shall insert in any subcontracts, exceeding $100,000, the provisions set forth in paragraphs (a) through (e) of this clause and also a clause requiring the subcontractors to include these provisions in any lower tier subcontracts. The Prime Contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the the provisions set forth in paragraphs (a) through (e) of this clause.

I.11 SERVICE CONTRACT ACT OF 1965, AS AMENDED
(FAR 52.222-41) (MAY 1989)

(a) Definitions. "Act," as used in this clause, means the Service Contract Act of 1965, as amended (41 U.S.C. 351 et seq.).

"Contractor," as used in this clause or in any subcontract, shall be deemed to refer to the subcontractor, except in the term "Government Prime Contractor."

"Service Employee," as used in this clause, means any person engaged in the performance of this contract other than any person employed in a bona fide executive, administrative, or professional capacity, as these terms are defined in Part 541 of Title 29, Code of Federal Regulations, as revised. It includes all such persons regardless of any contractual relationship that may be alleged to exist between a Contractor or subcontractor and such persons.

(b) Applicability. This contract is subject to the following provisions and to all other applicable provisions of the Act and regulations of the Secretary of Labor (29 CFR Part 4). This clause does not apply to contracts or subcontract administratively exempted by the Secretary of Labor or exempted by 41 U.S.C. 356, as interpreted in Subpart C of 29 CFR Part 4.

(c) Compensation. (1) Each service employee employed in the performance of this contract by the Contractor or any subcontractor shall be paid not less than the minimum monetary wages and shall be furnished fringe benefits in accordance with the wages and fringe benefits determined by the Secretary of Labor, or authorized representative, as specified in any wage determination attached to this contract.

(2)(i) If a wage determination is attached to this contract, the Contractor shall classify any class of service employee which is not listed therein and which is to be employed under the contract (i.e., the work to be performed is not performed by any classification listed in the wage determination) so as to provide a reasonable

relationship (i.e., appropriate level of skill comparison) between such unlisted classifications and the classifications listed in the wage determination. Such conformed class of employees shall be paid the monetary wages and furnished the fringe benefits as are determined pursuant to the procedures in this paragraph (c).

(ii) This conforming procedure shall be initiated by the Contractor prior to the performance of contract work by the unlisted class of employee. The Contractor shall submit Standard Form (SF) 1444, Request for Authorization of Additional Classification and Rate, to the Contracting Officer no later than 30 days after the unlisted class of employee performs any contract work. The Contracting Officer shall review the proposed classification and rate and promptly submit the completed SF 1444 (which must include information regarding the agreement or disagreement of the employees' authorized representatives or the employees themselves together with the agency recommendation), and all pertinent information to the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor. The Wage and Hour Division will approve, modify, or disapprove the action or render a final determination in the event of disagreement within 30 days of receipt or will notify the Contracting Officer within 30 days of receipt that additional time is necessary.

(iii) The final determination of the conformance action by the Wage and Hour Division shall be transmitted to the Contracting Officer who shall promptly notify the Contractor of the action taken. Each affected employee shall be furnished by the Contractor with a written copy of such determination or it shall be posted as a part of the wage determination.

(iv) (A) The process of establishing wage and fringe benefit rates that bear a reasonable relationship to those listed in a wage determination cannot be reduced to any single formula. The approach used may vary from wage determination to wage determination depending on the circumstances. Standard wage and salary administration practices which rank various job classifications by pay grade pursuant to point schemes or other job factors may, for example, be relied upon. Guidance may also be obtained from the way different jobs are rated under Federal pay systems (Federal Wage Board Pay System and the General Schedule) or from other wage determinations issued in the same locality. Basic to the establishment of any conformable wage rate(s) is the concept that a pay relationship should be maintained between job classifications based on the skill required and the duties performed.

(B) In the case of a contract modification an exercise of an option, or extension of an existing contract, or in any other case where a Contractor succeeds a contract under which the classification in question was previously conformed pursuant to paragraph (c) of this clause, a new conformed wage rate and fringe benefits may be assigned to the conformed classification by indexing (i.e., adjusting) the previous conformed rate and fringe benefits by an amount equal to the average (mean) percentage increase (or decrease, where appropriate) between the wages and fringe benefits

specified for all classifications to be used on the contract which are listed in the current wage determination, and those specified for the corresponding classifications in the previously applicable wage determination. Where conforming actions are accomplished in accordance with this paragraph prior to the performance of contract work by the unlisted class of employees, the Contractor shall advise the Contracting Officer of the action taken but the other procedures in subdivision (c)(2)(ii) of this clause need not be followed.

(C) No employee engaged in performing work on this contract shall in any event be paid less than the currently applicable minimum wage specified under section 6(a)(1) of the Fair Labor Standards Act of 1938, as amended.

(v) The wage rate and fringe benefits finally determined under this subparagraph (c)(2) of this clause shall be paid to all employees performing in the classification from the first day on which contract work is performed by them in the classification. Failure to pay the unlisted employees the compensation agreed upon by the interested parties and/or finally determined by the Wage and Hour Division retroactive to the date such class of employees commended contract work shall be a violation of the Act and this contract.

(vi) Upon discovery of failure to comply with subparagraph (c)(2) of this clause, the Wage and Hour Division shall make a final determination of conformed classification, wage rate, and/or fringe benefits which shall be retroactive to the date such class or classes of employees commenced contract work.

(3) Adjustments of Compensation. If the term of this contract is more than 1 year, the minimum monetary wages and fringe benefits required to be paid or furnished thereunder to service employees under this contract shall be subject to adjustment after 1 year and not less often than once every 2 years, under wage determinations issued by the Wage and Hour Division.

(d) Obligation to Furnish Fringe Benefits. The Contractor or subcontractor may discharge the obligation to furnish fringe benefits specified in the attachment or determined under subparagraph (c)(2) of this clause by furnishing equivalent combinations of bona fide fringe benefits, or by making equivalent or differential cash payments, only in accordance with Subpart D of 29 CFR Part 4.

(e) Minimum Wage. In the absence of a minimum wage attachment for this contract, neither the Contractor nor any subcontractor under this contract shall pay any person performing work under this contract (regardless of whether the person is a service employee) less than the minimum wage specified by section 6(a)(1) of the Fair Labor Standards Act of 1938. Nothing in this clause shall relieve the Contractor or any subcontractor of any other obligation under law or contract for payment of a higher wage to any employee.

(f) Successor Contracts. If this contract succeeds a contract

subject to the Act under which substantially the same services were furnished in the same locality and service employees were paid wages and fringe benefits provided for in a collective bargaining agreement, in the absence of the minimum wage attachment for this contract setting forth such collectively bargained wage rates and fringe benefits, neither the Contractor nor any subcontractor under this contract shall pay any service employee performing any of the contract work (regardless of whether or not such employee was employed under the predecessor contract), less than the wages and fringe benefits provided for in such collective bargaining agreement, to which such employee would have been entitled if employed under the predecessor contract, including accrued wages and fringe benefits and any prospective increases in wages and fringe benefits provided for under such agreement. No contractor or subcontractor under this contract may be relieved of the foregoing obligation unless the limitations of 29 CFR 4.1(b) apply or unless the Secretary of Labor or the Secretary's authorized representative finds, after a hearing as provided in 29 CFR 4.10 that the wages and/or fringe benefits provided for in such agreement are substantially at variance with those which prevail for services of a character similar in the locality, or determines, as provided in 29 CFR 4.11, that the collective bargaining agreement applicable to service employees employed under the predecessor contract was not entered into as a result of arm's length negotiations. Where it is found in accordance with the review procedures provided in 29 CFR 4.10 and/or 4.11 and Parts 6 and 8 that some or all of the wages and/or fringe benefits contained in a predecessor Contractor's collective bargaining agreement are substantially at variance with those which prevail for services of a character similar in the locality, and/or that the collective bargaining agreement applicable to service employees employed under the predecessor contract was not entered into as a result of arm's length negotiations, the Department will issue a new or revised wage determination setting forth the applicable wage rates and fringe benefits. Such determination shall be made part of the contract or subcontract, in accordance with the decision of the Administrator, the Administrative Law Judge, or the Board of Service Contract appeals, as the case may be, irrespective of whether such issuance occurs prior to or after the award of a contract or subcontract (53 Comp. Gen. 401 (1973)). In the case of a wage determination issued solely as a result of a finding of substantial variance, such determination shall be effective as of the date of the final administrative decision.

(g) Notification to Employees. The Contractor and any subcontractor under this contract shall notify each service employee commencing work on this contract of the minimum monetary wage and any fringe benefits required to be paid pursuant to this contract, or shall post the wage determination attached to this contract. The poster provided by the Department of Labor (Publication WH 1313) shall be posted in a prominent and accessible place at the worksite. Failure to comply with this requirement is a violation of section 2(a)(4) of the Act and of this contract.

(h) Safe and Sanitary Working Conditions. The Contractor or

subcontractor shall not permit any part of the services called for by this contract to be performed in buildings or surroundings or under working conditions provided by or under the control or supervision of the Contractor or subcontractor which are unsanitary, hazardous, or dangerous to the health or safety of the service employees. The Contractor or subcontractor shall comply with the safety and health standards applied under 29 CFR Part 1925.

(i) Records. (1) The Contractor and each subcontractor performing work subject to the Act shall make and maintain for 3 years from the completion of the work, and make them available for inspection and transcription by authorized representatives of the Wage and Hour Division, Employment Standards Administration, a record of the following:

(i) For each employee subject to the Act--

(A) Name and address and social security number;

(B) Correct work classification or classifications, rate or rates of monetary wages paid and fringe benefits provided, rate or rates of payments in lieu of fringe benefits, and total daily and weekly compensation.

(C) Daily and weekly hours worked by each employee; and

(D) Any deductions, rebates, or refunds from the total daily or weekly compensation of each employee.

(ii) For those classes of service employees not included in any wage determination attached to this contract, wage rates or fringe benefits determined by the interested parties or by the Administrator or authorized representative under the terms of paragraph (c) of this clause. A copy of the report required by subdivision(C)(2)(ii) of this clause will fulfill this requirement.

(iii) Any list of the predecessor Contractor's employees which had been furnished to the Contractor as prescribed by paragraph (n) of this clause.

(2) The Contractor shall also make available a copy of this contract for inspection or transcription by authorized representatives of the Wage and Hour Division.

(3) Failure to make and maintain or to make available these records for inspection and transcription shall be a violation of the regulations and this contract, and in the case of failure to produce these records, the Contracting Officer, upon direction of the Department of Labor and notification to the Contractor, shall take action to cause suspension of any further payment or advance of funds until the violation ceases.

(4) The Contractor shall permit authorized representatives of the Wage and Hour Division to conduct interviews with employees at

the worksite during normal working hours.

(j) Pay Periods. The Contractor shall unconditionally pay to each employee subject to the Act all wages due free and clear and without subsequent deduction (except as otherwise provided by law or Regulations, 29 CFR Part 4), rebate or kickback on any account. These payments shall be made no later than one pay period following the end of the regular pay period in which the wages were earned or accrued. A pay period under this Act may not be of any duration longer than semi-monthly.

(k) Withholding of Payments and Termination of Contract. The Contracting Officer shall withhold or cause to be withheld form the Government Prime Contractor under this or any other Government contract with the Prime Contractor such sums as an appropriate official of the Department of Labor requests or such sums as the Contracting Officer decides may be necessary to pay underpaid employees employed by the Contractor or subcontractor. In the event of failure to pay any employees subject to the Act all or part of the wages or fringe benefits due under the Act, the Contracting Officer may, after authorization or by direction of the Department of Labor and written notification to the Contractor, take action to cause suspension of any further payment or advance of funds until such violations have ceased. Additionally, any failure to comply with the requirements of this clause may be grounds for termination of the right to proceed with the contract work. In such event, the Government may enter into other contracts or arrangements for completion of the work, charging the Contractor in default with any additional cost.

(l) Subcontracts. The Contractor agrees to insert this clause in all subcontracts subject to the Act.

(m) Collective Bargaining Agreements Applicable to Service Employees. If wages to be paid or fringe benefits to be furnished any service employees employed by the Government Prime Contractor or any subcontractor under the contract are provided for in a collective bargaining agreement which is or will be effective during any period in which the contract is being performed, the Government Prime Contractor shall report such fact to the Contracting Officer, together with full information as to the application and accrual of such wages and fringe benefits, including any prospective increases, to service employees engaged in work on the contract, and a copy of the collective bargaining agreement. Such report shall be make upon commencing performance of the contract, in the case of collective bargaining agreements effective at such time, and in the case of such agreements or provisions or amendments thereof effective at a later time during the period of contract performance such agreements shall be reported promptly after negotiation thereof.

(n) Seniority List. Not less than 10 days prior to completion of any contract being performed at a Federal facility where service employees may be retained in the performance of the succeeding contract and subject to a wage determination which contains vacation or other benefit provisions based upon length of service with a

Contractor (predecessor) or successor (29 CFR 4.173) the incumbent Prime Contractor shall furnish the Contracting Officer a certified list of the names, of all service employees on the Contractor's or subcontractor's payroll during the last month of contract performance. Such list shall also contain anniversary dates of employment on the contract either with the current or predecessor Contractors of each such service employee. The Contracting Officer shall turn over such list to the successor Contractor at the commencement of the succeeding contract.

(o) Rulings and Interpretations. Rulings and interpretations of the Act are contained in Regulations, 29 CFR Part 4.

(p) Contractor's Certification. (1) By entering into this contract, the Contractor (and officials thereof) certifies that neither it (nor he or she) nor any person or firm who has a substantial interest in the Contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of the sanctions imposed under section 5 of the Act.

(2) No part of this contract shall be subcontracted to any person or firm ineligible for award of a Government contract under section 5 of the Act.

(3) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

(q) Variations, Tolerances, and Exemptions Involving Employment. Notwithstanding any of the provisions in paragraphs (b) through (o) of this clause, the following employees may be employed in accordance with the following variations, tolerances, and exemptions, which the Secretary of Labor, pursuant to section 4(b) of the Act prior to this amendment by Pub. L 92-473, found to be necessary and proper in the public interest or to avoid serious impairment of the conduct of Government business.

(1) Apprentices, student-learners, and workers whose earning capacity is impaired by age, physical or mental deficiency or injury may be employed at wages lower than the minimum wages otherwise required by section 2(a)(1) or 2(b)(1) of the Act without diminishing any fringe benefits or cash payments in lieu thereof required under section 2(a)(2) of the Act, in accordance with the conditions and procedures prescribed for the employment of apprentices, student-learners, handicapped persons, and handicapped clients of sheltered workshops under section 14 of the Fair Labor Standards Act of 1938, in the regulations issued by the Administrator (29 CFR Parts 520, 521, 524, and 525).

(2) The Administrator will issue certificates under the Act for the employment of apprentices, student-learners, handicapped persons, or handicapped clients of sheltered workshops not subject to the Fair Labor Standards Act of 1938, or subject to different minimum rates of pay under the two acts, authorizing appropriate rates of minimum wages (but without changing requirements concerning fringe benefits or supplementary cash payments in lieu thereof),

applying procedures prescribed by the applicable regulations issued under the Fair Labor Standards Act of 1938 (29 CFR Parts 520, 521, 524, and 525).

(3) The Administrator will also withdraw, annul, or cancel such certificates in accordance with the regulations in 29 CFR Parts 525 and 528.

(r) Apprentices. Apprentices will be permitted to work at less than the predetermined rate for the work they perform when they are employed and individually registered in a bona fide apprenticeship program registered with a State Apprenticeship Agency which is recognized by the U.S. Department of Labor, or if no such recognized agency exists in a State, under a program registered with the Bureau of Apprenticeship and Training, Employment and Training Administration, U.S. Department of Labor. Any employee who is not registered as an apprentice in an approved program shall be paid the wage rate and fringe benefits contained in the applicable wage determination for the journeyman classification of work actually performed. The wage rates paid apprentices shall not be less than the wage rate for their level of progress set forth in the registered program, expressed as the appropriate percentage of the journeyman's rate contained in the applicable wage determination. The allowable ratio of apprentices to journeymen employed on the contract work in any craft classification shall not be greater than the ratio permitted to the Contractor as to his entire work force under the registered program.

(s) Tips. An employee engaged in an occupation in which the employee customarily and regularly receives more than $30 a month in tips may have the amount of these tips credited by the employer against the minimum wage required by section 2(a)(1) or section 2(b)(1) of the Act, in accordance with section 3(m) of the Fair Labor Standards Act and Regulations 29 CFR Part 531. However, the amount of credit shall not exceed $1.34 per hour beginning January 1, 1981. To use this provision--

(1) The employer must inform tipped employees about this tip credit allowance before the credit is utilized;

(2) The employees must be allowed to retain all tips (individually or through a pooling arrangement and regardless of whether the employer elects to take a credit for tips received);

(3) The employer must be able to show by records that the employee receives at least the applicable Service Contract Act minimum wage through the combination of direct wages and tip credit; and

(4) The use of such tip credit must have been permitted under any predecessor collective bargaining agreement applicable by virtue of section 4(c) of the Act.

(t) Disputes Concerning Labor Standards. The U.S. Department of Labor has set forth in 29 CFR Parts 4, 6, and 8 procedures for

resolving disputes concerning labor standards requirements. Such disputes shall be resolved in accordance with those procedures and not the Disputes clause of this contract. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

I.12 STATEMENT OF EQUIVALENT RATES FOR FEDERAL HIRES (FAR 52.222-42) (MAY 1989)

In compliance with the Service Contract Act of 1965, as amended, and the regulations of the Secretary of Labor (29 CFR Part 4), this clause identifies the classes of service employees expected to be employed under the contract and states the wages and fringe benefits payable to each if they were employed by the contracting agency subject to the provisions of 5 U.S.C. 5341 or 5332.

THIS STATEMENT IS FOR INFORMATION ONLY: IT IS NOT A WAGE DETERMINATION.

| Employee class | Monetary wage--<br>Fringe benefits |
|---|---|
| Biological Technician | 16.89 |
| Biological Technician | 11.15 |

I.13 FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT ACT--PRICE ADJUSTMENT (MULTIPLE YEAR AND OPTION CONTRACTS) (FAR 52.222-43) (MAY 1989)

(a) This clause applies to both contracts subject to area prevailing wage determinations and contracts subject to collective bargaining agreements.

(b) The Contractor warrants that the prices in this contract do not include any allowance for any contingency to cover increased costs for which adjustment is provided under this clause.

(c) The wage determination, issued under the Service Contract Act of 1965, as amended, (41 U.S.C. 351 et seq.), by the Administrator, Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, current on the anniversary date of a multiple year contract or the beginning of each renewal option period, shall apply to this contract. If no such determination has been made applicable to this contract, then the

Federal minimum wage as established by section 6(a)(1) of the Fair Labor Standards Act of 1938, as amended, (29 U.S.C. 206) current on the anniversary date of a multiple year contract or the beginning of each renewal option period, shall apply to this contract.

(d) The contract price or contract unit price labor rates will be adjusted to reflect the Contractor's actual increase or decrease in applicable wages and fringe benefits to the extent that the increase is made to comply with or the decrease is voluntarily made by the Contractor as a result of:

(1) The Department of Labor wage determination applicable on the anniversary date of the multiple year contract, or at the beginning of the renewal option period. For example, the prior year wage determination required a minimum wage rate of $4.00 per hour. The Contractor chose to pay $4.10. The new wage determination increases the minimum rate to $4.50 per hour. Even if the Contractor voluntarily increases the rate to $4.75 per hour, the allowable price adjustment is $.40 per hour;

(2) An increased or decreased wage determination otherwise applied to the contract by operation of law; or

(3) An amendment to the Fair Labor Standards Act of 1938 that is enacted after award of this contract, affects the minimum wage, and becomes applicable to this contract under law.

(e) Any adjustment will be limited to increases or decreases in wages and fringe benefits as described in paragraph (c) of this clause, and the accompanying increases or decreases in social security and unemployment taxes and workers compensation insurance, but shall not otherwise include any amount for general and administrative costs, overhead, or profit.

(f) The Contractor shall notify the Contracting Officer of any increase claimed under this clause within 30 days after receiving a new wage determination unless this notification period is extended in writing by the Contracting Officer. The Contractor shall promptly notify the Contracting Officer of any decrease under this clause, but nothing in the clause shall preclude the Government from asserting a claim within the period permitted by law. The notice shall contain a statement of the amount claimed and any relevant supporting data, including payroll records, that the Contracting Officer may reasonably require. Upon agreement of the parties, the contract price or contract unit price labor rates shall be modified in writing. The Contractor shall continue performance pending agreement on or determination of any such adjustment and its effective date.

(g) The Contracting Officer or an authorized representative shall have access to and the right to examine any directly pertinent books, documents, papers and records of the Contractor until the expiration of 3 years after final payment under the contract.

I.14 DRUG-FREE WORKPLACE (FAR 52.223-6) (JAN 1997)

(a) Definitions. As used in this clause--

"Controlled substance" means a controlled substance in schedules I through V of section 202 of the Controlled Substances Act (21 U.S.C. 812) and as further defined in regulation at 21 CFR 1308.11 - 1308.15.

"Conviction" means a finding of guilt (including a plea of nolo contendere) or imposition of sentence, or both, by any judicial body charged with the responsibility to determine violations of the Federal or State criminal drug statutes.

"Criminal drug statute" means a Federal or non-Federal criminal statute involving the manufacture, distribution, dispensing, possession or use of any controlled substance.

"Drug-free workplace" means the site(s) for the performance of work done by the Contractor in connection with a specific contract at which employees of the Contractor are prohibited from engaging in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance.

"Employee" means an employee of a Contractor directly engaged in the performance of work under a Government contract. "Directly engaged" is defined to include all direct cost employees and any other Contractor employee who has other than a minimal impact or involvement in contract performance.

"Individual" means an offeror/contractor that has no more than one employee including the offeror/contractor.

(b) The Contractor, if other than an individual, shall--within 30 days after award (unless a longer period is agreed to in writing for contracts of 30 days or more performance duration); or as soon as possible for contracts of less than 30 days performance duration--

(1) Publish a statement notifying its employees that the unlawful manufacture, distribution, dispensing, possessions or use of a controlled substance is prohibited in the contractor's workplace and specifying the actions that will be taken against employees for violations of such prohibition;

(2) Establish an ongoing drug-free awareness program to inform such employees about--

(i) The dangers of drug abuse in this workplace;

(ii) The contractor's policy of maintaining a drug-free workplace;

(iii) Any available drug counseling, rehabilitation, and employee assistance programs; and

(iv) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(3) Provide all employees engaged in performance of the contract with a copy of the statement required by subparagraph (b)(1) of this clause;

(4) Notify such employees in writing in the statement required by subparagraph (b)(1) of this clause that, as a condition of continued employment on this contract, the employee will--

(i) Abide by the terms of the statement; and

(ii) Notify the employer in writing of the employee's conviction under a criminal drug statute for a violation occurring in the workplace no later than 5 days after such conviction;

(5) Notify the Contracting Officer in writing within 10 days after receiving notice under subdivision (a)(4)(ii) of this clause, from an employee or otherwise receiving actual notice of such conviction. The notice shall include the position title of the employee;

(6) Within 30 days after receiving notice under subdivision (b)(4)(ii) of this clause of a conviction, take one of the following actions with respect to any employee who is convicted of a drug abuse violation occurring in the workplace;

(i) Taking appropriate personnel action against such employee, up to and including termination; or

(ii) Require such employee to satisfactorily participate in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency; and

(7) Make a good faith effort to maintain a drug-free workplace through implementation of subparagraphs (b)(1) through (b)(6) of this clause.

(c) The Contractor, if an individual, agrees by award of the contract or acceptance of a purchase order, not to engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance while performing this contract.

(d) In addition to other remedies available to the Government, the Contractor's failure to comply with the requirements of paragraph (b) or (c) of this clause may, pursuant to FAR 23.506, render the Contractor subject to suspension of contract payments, termination of the contract for default, and suspension or debarment.

I.15 EUROPEAN UNION SANCTION FOR SERVICES (FAR 52.225-19) (JAN 1996)

(a) Definition.

"Sanctioned member state of the European Union (EU)", as used in this clause, is any of the following countries: Austria, Belgium, Denmark, Finland, France, Ireland, Italy, Luxembourg, the Netherlands, Sweden, and the United Kingdom.

(b) Agreement. The Contractor agrees not to perform services under

this contract in a sanctioned member state of the EU. This does not apply to subcontracts.

I.16 RIGHTS TO PROPOSAL DATA (TECHNICAL) (FAR 52.227-23) (JUN 1987)

Except for data contained on pages _______, it is agreed that as a condition of award of this contract, and notwithstanding the conditions of any notice appearing thereon, the Government shall have unlimited rights (as defined in the "Rights in Data--General" clause contained in this contract) in and to the technical data contained in the proposal dated ______ upon which this contract is based.

I.17 EXTRAS (FAR 52.232-11) (APR 1984)

Except as otherwise provided in this contract, no payment for extras shall be made unless such extras and the price therefor have been authorized in writing by the Contracting Officer.

I.18 AVAILABILITY OF FUNDS FOR THE NEXT FISCAL YEAR (FAR 52.232-19) (APR 1984)

Funds are not presently available for performance under this contract beyond September 30, 1998. The Government's obligation for performance of this contract beyond that date is contingent upon the availability of appropriated funds from which payment for contract purposes can be made. No legal liability on the part of the Government for any payment may arise for performance under this contract beyond September 30, 1998, until funds are made available to the Contracting Officer for performance and until the Contractor receives notice of availability, to be confirmed in writing by the Contracting Officer.

I.19 ASSIGNMENT OF CLAIMS (FAR 52.232-23) (JAN 1986)

(a) The Contractor, under the Assignment of Claims Act, as amended, 31 U.S.C. 3727, 41 U.S.C. 15 (hereafter referred to as "the Act"), may assign its rights to be paid amounts due or to become due as a result of the performance of this contract to a bank, trust

company, or other financing institution, including Federal lending agency. The assignee under such an assignment may thereafter further assign or reassign its right under the original assignment to any type of financing institution described in the preceding sentence.

(b) Any assignment or reassignment authorized under the Act and this clause shall cover all unpaid amounts payable under this contract, and shall not be made to more than one party, except that an assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in the financing of this contract.

(c) The Contractor shall not furnish or disclose to any assignee under this contract any classified document (including this contract) or information related to work under this contract until the Contracting Officer authorizes such action in writing.

I.20 PROMPT PAYMENT (FAR 52.232-25) (MAY 1997)

Notwithstanding any other payment clause in this contract, the Government will make invoice payments and contract financing payments under the terms and conditions specified in this clause. Payment shall be considered as being made on the day a check is dated or the date of an electronic funds transfer. Definitions of pertinent terms are set forth in 32.902 of the Federal Acqusition Regulation. All days referred to in this clause are calendar days, unless otherwise specified. (However, see subparagraph (a) (4) of this clause concerning payments due on Saturdays, Sundays, and legal holidays.)

(a) Invoice Payments.

(1) Due date--(i)Except as indicated in subparagraph (a)(2) and paragraph (c) of this clause, the due date for making invoice payments by the designated payment office shall be the later of the following two events:

(A) The 30th day after the designated billing office has received a proper invoice from the Contractor (except as provided in subdivision (a)(1)(ii) of this clause).

(B) The 30th day after Government acceptance of supplies delivered or services performed by the Contractor. On a final invoice where the payment amount is subject to contract settlement actions, acceptance shall be deemed to have occurred on the effective date of the contract settlement.

(ii)If the designated billing office fails to annotate the invoice with the actual date of receipt at the time of receipt, the invoice payment due date shall be the 30th day after the date of the Contractor's invoice; provided a proper invoice is received and there is no disagreement over quantity, quality, or Contractor compliance with contract requirements.

(2) Certain food products and other payments. (i) Due date on Contractor invoices for meat, meat food products, or fish; perishable agricultural commodities, dairy products, edible fats or oils, and food products prepared from edible fats or oils are--

(A) For meat and meat food products, as defined in section 2(a)(3) of the Packers and Stockyard Act of 1921 (7 U.S.C. 182(3)) and further defined in Pub. L. 98-181 including any edible fresh or frozen poultry meat, any perishable poultry meat food product, fresh eggs, and any perishable egg product, will be as close as possible to, but not later than, the 7th day after product delivery.

(B) For fresh or frozen fish, as defined in section 204(3) of the Fish and Seafood Promotion Act of 1986 (16 U.S.C. 4003(3)), as close as possible to, but not later than, the 7th day after product delivery.

(C) For perishable agricultural commodities, as defined in section 1(4) of the Perishable Agricultural Commodities Act of 1930 (7 U.S.C. 499a(44)), as close as possible to, but not later than, the 10th day after product delivery, unless another date is specified in the contract.

(D) For dairy products, as defined in section 111(e) of the Dairy Production Stabilization Act of 1983 (7 U.S.C. 4502(e)), edible fats or oils, and food products prepared from edible fats or oils, will be as close as possible to, but not later than, the 10th day after the date on which a proper invoice has been received. Liquid milk, cheese, certain processed cheese products, butter, yogurt, ice cream, mayonnaise, salad dressings, and other similar products, fall within this classification. Nothing in the Act limits this classification to refrigerated products. When questions arise regarding the proper classification of a specific product, prevailing industry practices will be followed in specifying a contract payment due date. The burden of proof that a classifications of a specific product is, in fact, prevailing industry practice is upon the Contractor making the representation.

(ii) If the contract does not require submission of an invoice for payment (e.g., periodic lease payments), the due date will be as specified in the contract.

(3) Contractor's invoice. The Contractor shall prepare and submit invoices to the designated billing office specified in the contract. A proper invoice must include the items listed in subdivisions (a)(3)(i) through (a)(3)(viii) of this clause. If the invoice does not comply with these requirements, it shall be returned within 7 days after the date the designated billing office received the invoice (3 days for meat, meat food products, or fish, and 5 days for perishable agricultural commodities, edible fats or oils, and food products prepared from edible fats or oils), with a statement of the reasons why it is not a proper invoice. Untimely notification will be taken into account in the computation of any interest penalty owed the Contractor in the manner described in subparagraph (a)(5) of this clause.

(i) Name and address of the Contractor.

(ii) Invoice date. (The Contractor is encouraged to date invoices as close as possible to the date of the mailing or transmission.)

(iii) Contract number or other authorization for supplies delivered or services performed (including order number and contract line item number).

(iv) Description, quantity, unit of measure, unit price, and extended price of supplies delivered or services performed.

(v) Shipping and payment terms (e.g., shipment number and date of shipment, prompt payment discount terms). Bill of lading number and weight of shipment will be shown for shipments on Government bills of lading.

(vi) Name and address of Contractor official to whom payment is to be sent (must be the same as that in the contract or in a proper notice of assignment).

(vii) Name (where practicable), title, phone number and mailing address of person to be notified in event of a defective invoice.

(viii) Any other information or documentation required by other requirements of the contract (such as evidence of shipment).

(ix) While not required, the Contractor is strongly encouraged to assign an identification number to each invoice.

(4) Interest penalty. An interest penalty shall be paid automatically by the designated payment office, without request from the Contractor, if payment is not made by the due date and the conditions listed in subdivisions (a)(4)(i) through (a)(4)(iii) of this clause are met, if applicable. However, when the due date falls on a Saturday, Sunday, or legal holiday when Federal Government offices are closed and Government business is not expected to be conducted, payment may be made on the following business day without incurring a late payment interest penalty.

(i) A proper invoice was received by the designated billing office.

(ii) A receiving report or other Government documentation authorizing payment was processed and there was no disagreement over quantity, quality, or Contractor compliance with any contract term or condition.

(iii) In the case of a final invoice for any balance of funds due the Contractor for supplies delivered or services performed, the amount was not subject to further contract settlement actions between the Government and the Contractor.

(5) Computing penalty amount. The interest penalty shall be at the rate established by the Secretary of the Treasury under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) that is in effect on the day after the due date, except where the interest penalty is prescribed by other governmental authority (e.g.,tariffs). This rate is referred to as the "Renegotiation Board Interest Rate," and it is published in the Federal Register semiannually on or about January 1 and July 1. The interest penalty shall accrue daily on the invoice principal payment amount approved by the Government until the payment date of such approved principal amount; and will be compounded in 30-day increments inclusive from the first day after the due date through the payment date. That is, interest accrued at the end of any 30-day period will be added to the approved invoice principal payment amount and be subject to interest penalties if not paid in the succeeding 30-day period. If the designated billing office failed to notify the Contractor of a defective invoice within the periods prescribed in subparagraph (a)(3) of this clause, the due date on the corrected invoice will be adjusted by subtracting from such date the number of days taken beyond the prescribed notification of defects period. Any interest penalty owed the Contractor will be based on this adjusted due date. Adjustments will be made by the designated payment office for errors in calculating interest penalties.

(i) For the sole purpose of computing an interest penalty that might be due the Contractor, Government acceptance shall be deemed to have occurred constructively on the 7th day (unless other-wise specified in this contract) after the Contractor delivered the supplies or performed the services in accordance with the terms and conditions of the contract, unless there is a disagreement over quantity, quality, or contractor compliance with a contract provision. In the event that actual acceptance occurs within the constructive acceptance period, the determination of an interest penalty shall be based on the actual date of acceptance. The constructive acceptance requirement does not, however, compel Government officials to accept supplies or services, perform contract administration functions, or make payment prior to fulfilling their responsibilities.

(ii) The following periods of time will not be included in the determination of an interest penalty:

(A) The period taken to notify the Contractor of defects in invoices submitted to the Government, but this may not exceed 7 days (3 days for meat, meat food products, or fish, and 5 days for perishable agricultural commodities, dairy products, edible fats or oils, and food products prepared from edible fats or oils).

(B) The period between the defects notice and resubmission of the corrected invoice by the Contractor.

(C) For incorrect electronic funds transfer (EFT) information, in accordance with the EFT clause of this contract.

(iii) Interest penalties will not continue to accrue after the filing of a claim for such penalties under the clause at 52.233-1, Disputes, or for more than 1 year. Interest penalties of less than $1 need not be paid.

(iv) Interest penalties are not required on payment delays due to disagreement between the Government and Contractor over the payment amount or other issues involving contract compliance or on amounts temporarily withheld or retained in accordance with the terms of the contract. Claims involving disputes, and any interest that may be payable, will be resolved in accordance with the clause at 52.233-1, Disputes.

(6) Prompt payment discounts. An interest penalty shall also be paid automatically by the designated payment office, without request from the Contractor, if a discount for prompt payment is taken improperly. The interest penalty will be calculated as described in subparagraph (a)(5) of this clause on the amount of discount taken for the period beginning with the first day after the end of the discount period through the date when the Contractor is paid.

(7) Additional interest penalty. (i) If this contract was awarded on or after October 1, 1989, a penalty amount, calculated in accordance with subdivision (a)(7)(iii) of this clause, shall be paid in addition to the interest penalty amount if the Contractor-

(A) Is owed an interest penalty of $1 or more;

(B) Is not paid the interest penalty within 10 days after the date the invoice amount is paid; and

(C) Makes a written demand to the designated payment office for additional penalty payment, in accordance with subdivision (a)(7)(ii) of this clause, postmarked not later than 40 days after the date the invoice amount is paid.

(ii)(A) Contractors shall support written demands for additional penalty payments with the following data. No additional data shall be required. Contractors shall-- (1) Specifically assert that late payment interest is due under a specific invoice, and request payment of all overdue late payment interest penalty and such additional penalty as may be required; (2) Attach a copy of the invoice on which the unpaid late payment interest was due; and (3) State that payment of the principal has been received, including the date of receipt. (B) Demands must be postmarked on or before the 40th day after payment was made, except that-- (1) If the postmark is illegible or nonexistent, the demand must have been received and annotated with the date of receipt by the designated payment office on or before the 40th day after payment was made; or (2) If the postmark is illegible or nonexistent and the designated payment office fails to make the required annotation, the demand's validity will be determined by the date the Contractor has placed on the demand; provided such date is no later than the 40th day after payment was made.

(iii)(A) The additional penalty shall be equal to 100 percent of any original late payment interest penalty that is due on or after January 22, 1990, except-- (1) For additional penalties due on or before January 22, 1992, such penalties shall not exceed $2,500; (2) After January 22, 1992, the additional penalty shall not exceed $5,000; (3) The additional penalty shall never be less than $25; and (4) No additional penalty is owed if the amount of the underlying interest penalty is less than $1. (B) If the interest penalty ceases to accrue in accordance with the limits stated in subdivision (a)(5)(iii) of this clause, the amount of the additional penalty shall be calculated on the amount of interest penalty that would have accrued in the absence of these limits, subject to the overall limits on the additional penalty specified in subdivision (a)(7)(iii)(A) of this clause. (C) For determining the maximum and minimum additional penalties, the test shall be the interest penalty due on each separate payment made for each separate contract. The maximum and minimum additional penalty shall not be based upon individual invoices unless the invoices are paid separately. Where payments are consolidated for disbursing purposes, the maximum and minimum additonal penalty determination shall be made separately for each contract therein. (D) The additional penalty does not apply to payments regulated bv other Government regulations (e.g.,payments under utility contracts subject to tariffs and regulation).

(b) Contract financing payments. (1) Due dates for recurring financing payments. If this contract provides for contract financing, requests for payment shall be submitted to the designated billing office as specified in this contract or as directed by the Contracting Officer. Contract financing payments shall be made on the 30th day after receipt of a proper contract financing request by the designated billing office. In the event that an audit or other review of a specific financing request is required to ensure compliance with the terms and conditions of the contract, the designated payment office is not compelled to make payment by the due date specified.

(2) Due dates for other contract financing. For advance payments, loans, or other arrangements that do ot involve recurring submissions of contract financing requests, payment shall be made in accordance with the corresponding contract terms or as directed by the Contracting Officer.

(3) Interest penalty not applicable. Contract financing payments shall not be assessed an interest penalty for payment delays.

(c) Fast payment procedure due dates. If this contract contains the clause at 52.213-1, Fast Payment Procedure, payments will be made within 15 days after the date of receipt of the invoice.

I.21 DISPUTES (FAR 52.233-1) (OCT 1995) ALTERNATE I (DEC 1991)

(a) This contract is subject to the Contracts Disputes Act of 1978, as amended (41 U.S.C. 601-613).

(b) Except as provided in the Act, all disputes arising under or related to this contract shall be resolved under this clause.

(c) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $50,000 is not a claim under the Act until certified as required by subparagraph (d)(2) below. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

(d) (1) A claim by the Contractor shall be made in writing and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision. A claim by the Government against the Contractor shall be subject to a written decision by the Contracting Officer.

(2) (i) Contractors shall provide the certification specified in subparagraph (d)(2)(iii) of this clause when submitting any claim:

(A) Exceeding $100,000; or

(B) Regardless of the amount claimed, when using:

(1) Arbitration conducted pursuant to 5 U.S.C. 575-580; or

(2) Any other alternative means of dispute resolution (ADR) technique that the agency elects to handle in accordance with the Administrative Dispute Resolution Act (ADRA).

(ii) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.

(iii) The certification shall state as follows:

"I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor."

(3) The certification may be executed by any person duly

authorized to bind the Contractor with respect to the claim.

(e) For Contractor claims of $100,000 or less, the Contracting Officer must, if requested in writing by the Contractor, render a decision within 60 days of the request. For Contractor-certified claims over $100,000, the Contracting Officer must, within 60 days, decide the claim or notify the Contractor of the date by which the decision will be made.

(f) The Contracting Officer's decision shall be final unless the Contractor appeals or files a suit as provided in the Act.

(g) If the claim by the Contractor is submitted to the Contracting Officer or a claim by the Contracting Officer or a claim by the Government is presented to the Contractor, the parties, by mutual consent, may agree to use ADR. If the Contractor refuses an offer for alternative disputes resolution, the Contractor shall inform the Contracting Officer, in writing, of the Contractor's specific reasons for rejecting the request. When using arbitration conducted pursuant to 5 U.S.C. 575-580, or when using any other ADR technique that the agency elects to handle in accordance with the ADRA, any claim, regardless of amount, shall be accompanied by the certification described in subparagraph (d)(2)(iii) of this clause, and executed in accordance with subparagraph (d)(3) of this clause.

(h) The Government shall pay interest on the amount found due and unpaid from (1) the date the Contracting Officer receives the claim (certified, if required); or (2) the date that payment otherwise would be due, if that date is later, until the date of payment. With regard to claims having defective certifications, as defined in (FAR) 48 CFR 33.201, interest shall be paid from the date that the Contracting Officer initially receives the claim. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable to the period during which the Contracting Officer receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim.

(i) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under or relating to the contract, and comply with any decision of the Contracting Officer.

I.22 PROTECTION OF GOVERNMENT BUILDINGS, EQUIPMENT, AND VEGETATION (FAR 52.237-2) (APR 1984)

The Contractor shall use reasonable care to avoid damaging existing buildings, equipment, and vegetation on the Government installation. If the Contractor's failure to use reasonable care causes damage to any of this property, the Contractor shall replace or repair the damage at no expense to the Government as the Contracting Officer directs. If the Contractor fails or refuses to make such repair or replacement, the Contractor shall be liable for the cost, which may be deducted from the contract price.

I.23 CHANGES--FIXED-PRICE (FAR 52.243-1) (AUG 1987)
ALTERNATE I (APR 1984)

(a) The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more of the following:

(1) Description of services to be performed. (2) Time of performance (i.e., hours of the day, days of the week, etc.). (3) Place of performance of the services.

(b) If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.

(c) The Contractor must assert its right to an adjustment under this clause within 30 days from the date of receipt of the written order. However, if the Contracting Officer decides that the facts justify it, the Contracting Officer may receive and act upon a proposal submitted before final payment of the contract.

(d) If the Contractor's proposal includes the cost of property made obsolete or excess by the change, the Contracting Officer shall have the right to prescribe the manner of the disposition of the property.

(e) Failure to agree to any adjustment shall be a dispute under the Disputes clause. However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

I.24 GOVERNMENT-FURNISHED PROPERTY (SHORT FORM)
(FAR 52.245-4) (APR 1984)

(a) The Government shall deliver to the Contractor, at the time and locations stated in this contract, the Government-furnished property described in the Schedule or specifications. If that property, suitable for its intended use, is not delivered to the Contractor, the Contracting Officer shall equitably adjust affected provisions of this contract in accordance with the Changes clause when--

(1) The Contractor submits a timely written request for an equitable adjustment; and

(2) The facts warrant an equitable adjustment.

(b) Title to Government-furnished property shall remain in the Government. The Contractor shall use the Government-furnished property only in connection with this contract. The Contractor

shall maintain adequate property control records in accordance with sound industrial practice and will make such records available for Government inspection at all reasonable times, unless the clause at Federal Acquisition Regulation 52.245-1, Property Records, is included in this contract.

(c) Upon delivery of Government-furnished property to the Contractor, the Contractor assumes the risk and responsibility for its loss or damage, except--

(1) For reasonable wear and tear;

(2) To the extent property is consumed in performing this contract; or

(3) As otherwise provided for by the provisions of this contract.

(d) Upon completing this contract, the Contractor shall follow the instructions of the Contracting Officer regarding the disposition of all Government-furnished property not consumed in performing this contract or previously delivered to the Government. The Contractor shall prepare for shipment, deliver f.o.b. origin, or dispose of the Government property, as may be directed or authorized by the Contracting Officer. The net proceeds of any such disposal shall be credited to the contract price or shall be paid to the Government as directed by the Contracting Officer.

(e) If this contract is to be performed outside the United States of America, its territories, or possessions, the words "Government" and "Government-furnished" (wherever they appear in this clause) shall be construed as "United States Government" and "United States Government-furnished," respectively.

I.25 TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (SERVICES) (SHORT FORM) (FAR 52.249-4) (APR 1984)

The Contracting Officer, by written notice, may terminate this contract, in whole or in part, when it is in the Government's interest. If this contract is terminated, the Government shall be liable only for payment under the payment provisions of this contract for services rendered before the effective date of termination.

I.26 DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (FAR 52.249-8) (APR 1984)

(a) (1) The Government may, subject to paragraphs (c) and (d) of this clause, by written notice of default to the Contractor, terminate this contract in whole or in part if the Contractor fails to--

(i) Deliver the supplies or to perform the services within the time specified in this contract or any extension;

(ii) Make progress, so as to endanger performance of this contract (but see subparagraph (a)(2) of this clause; or

(iii) Perform any of the other provisions of this contract (but see subparagraph (a)(2) of this clause).

(2) The Government's right to terminate this contract under subdivisions (a)(1)(ii) and (1)(iii) of this clause, may be exercised if the Contractor does not cure such failure within 10 days (or more if authorized in writing by the Contracting Officer) after receipt of the notice from the Contracting Officer specifying the failure.

(b) If the Government terminates this contract in whole or in part, it may acquire, under the terms and in the manner the Contracting Officer considers appropriate, supplies or services similar to those terminated, and the Contractor will be liable to the Government for any excess costs for those supplies or services. However, the Contractor shall continue the work not terminated.

(c) Except for defaults of subcontractors at any tier, the Contractor shall not be liable for any excess costs if the failure to perform the contract arises from causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include (1) acts of God or of the public enemy, (2) acts of the Government in either its sovereign or contractual capacity, (3) fires, (4) floods, (5) epidemics, (6) quarantine restrictions, (7) strikes, (8) freight embargoes, and (9) unusually severe weather. In each instance the failure to perform must be beyond the control and without the fault or negligence of the Contractor.

(d) If the failure to perform is caused by the default of a subcontractor at any tier, and if the cause of the default is beyond the control of both the Contractor and subcontractor, and without the fault or negligence of either, the Contractor shall not be liable for any excess costs for failure to perform, unless the subcontracted supplies or services were obtainable from other sources in sufficient time for the Contractor to meet the required delivery schedule.

(e) If this contract is terminated for default, the Government may require the Contractor to transfer title and deliver to the Government, as directed by the Contracting Officer, any (1) completed supplies, and (2) partially completed supplies and materials, parts, tools, dies, jigs, fixtures, plans, drawings, information, and contract rights (collectively referred to as "manufacturing materials" in this clause) that the Contractor has specifically produced or acquired for the terminated portion of this contract. Upon direction of the Contracting Officer, the Contractor shall also protect and preserve property in its possession in which the Government has an interest.

(f) The Government shall pay contract price for completed supplies delivered and accepted. The Contractor and Contracting Officer shall agree on the amount of payment for manufacturing materials delivered and accepted and for the protection and preservation of the property. Failure to agree will be a dispute under the Disputes clause. The Government may withhold from these amounts any sum the Contracting Officer determines to be necessary to protect the Government against loss because of outstanding liens or claims of former lien holders.

(g) If, after termination, it is determined that the Contractor was not in default, or that the default was excusable, the rights and obligations of the parties shall be the same as if the termination had been issued for the convenience of the Government.

(h) The rights and remedies of the Government in this clause are in addition to any other rights and remedies provided by law or under this contract.

I.27 AUTHORIZED DEVIATIONS IN CLAUSES
(FAR 52.252-6) (APR 1984)

(a) The use in this solicitation or contract of any Federal Acquisition Regulation (48 CFR Chapter 1) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the date of the clause.

(b) The use in this solicitation or contract of any Department of Agriculture Acquisition Regulation (48 CFR Chapter 4) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the name of the regulation.

PART III - LIST OF DOCUMENTS, EXHIBITS
AND OTHER ATTACHMENTS

SECTION J - LIST OF ATTACHMENTS

LIST OF ATTACHMENTS

Vicinity Map
Wage Rate Determination_No. 75-0208
Fire Ant Quarantine Map
Exhibit A, Sample Order


South Carolina
Savannah River
Columbia
Athens
Aiken
Charleston
Atlanta
Augusta
Savannah River Site
Savannah
Georgia
Atlantic Ocean

ATTACHMENT B
Page 1 of 4

REGISTER OF WAGE DETERMINATIONS UNDER
THE SERVICE CONTRACT ACT
By direction of the Secretary of Labor

Alan L. Moss
Director

Division of
Wage Determinations

U.S. DEPARTMENT OF LABOR
EMPLOYMENT STANDARDS ADMINISTRATION
WAGE AND HOUR DIVISION
WASHINGTON, D.C. 20210

Wage Determination No.: 75-0208
Revision No.: 12
Date of Last Revision: 11/29/1995

State(s): South Carolina

Area: SOUTH CAROLINA COUNTIES OF STATEWIDE.

** Fringe Benefits Required For All Occupations Included In This Wage Determination Follow The Occupational Listing **

| OCCUPATION | MINIMUM HOURLY WAGE |
|---|---|
| **Employed on contracts for Forestry and Logging services in the above locality:** | |
| Forestry Technician | $ 12.46 |
| Forestry Heavy Equipment Operator | $ 12.46 |
| Forestry Truckdriver (all types of trucks) | $ 11.72 |
| Tree Climber | $ 7.15 |
| Tree Planter | $ 7.15 |
| Tree Planter, Mechanical | $ 7.15 |

** Fringe Benefits Required For All Occupations Included In This Wage Determination **

HEALTH & WELFARE: ~~$0.90~~ $1.16 7-1-02 per hour or $36.00 per week or $156.00 per month.

VACATION: 2 weeks paid vacation after 1 year of service with a contractor or successor; 3 weeks after 8 years; 4 weeks after 15 years. Length of service includes the whole span of continuous service with the present contractor or successor, wherever employed, and with predecessor contractors in the performance of similar work at the same Federal facility. (See 29 CFR 4.173)

HOLIDAYS: Minimum of ten paid holidays per year: New Year's Day, Martin Luther King Jr.'s Birthday, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, and Christmas Day. (A contractor may substitute for any of the named holidays another day off with pay in accordance with a plan communicated to the employees involved.) (See 29 CFR 4.174)

** UNIFORM ALLOWANCE **

If employees are required to wear uniforms in the performance of this contract (either by the terms of the Government contract, by

the employer, by the state or local law, etc.,, the cost of furnishing such uniforms and maintaining (by laundering or dry cleaning) such uniforms is an expense that may not be borne by an employee where such cost reduces the hourly rate below that required by the wage determination. The Department of Labor will accept payment in accordance with the following standards as compliance:

The contractor or subcontractor is required to furnish all employees with an adequate number of uniforms without cost or to reimburse employees for the actual cost of the uniforms. In addition, where uniform cleaning and maintenance is made the responsibility of the employee, all contractors and subcontractors subject to this wage determination shall (in the absence of a bona fide collective bargaining agreement providing for a different amount, or the furnishing of contrary affirmative proof as to the actual cost), reimburse all employees for such cleaning and maintenance at a rate of $4.25 per week (or $.85 cents per day). However, in those instances where the uniforms furnished are made of "wash and wear" materials, may be routinely washed and dried with other personal garments, and do not require any special treatment such as dry cleaning, daily washing, or commercial laundering in order to meet the cleanliness or appearance standards set by the terms of the Government contract, by the contractor, by law, or by the nature of the work, there is no requirement that employees be reimbursed for uniform maintenance costs.

** NOTES APPLYING TO THIS WAGE DETERMINATION **

REQUEST FOR AUTHORIZATION OF ADDITIONAL CLASSIFICATION AND WAGE RATE (Standard Form 1444 (SF 1444))

Conformance Process:

The contracting officer shall require that any class of service employee which is not listed herein and which is to be employed under the contract (i.e., the work to be performed is not performed by any classification listed in the wage determination), be classified by the contractor so as to provide a reasonable relationship (i.e., appropriate level of skill comparison) between such unlisted classifications and the classifications listed in the wage determination. Such conformed classes of employees shall be paid the monetary wages and furnished the fringe benefits as are determined. Such conforming process shall be initiated by the contractor prior to the performance of contract work by such unlisted class(es) of employees. The conformed classification, wage rate, and/or fringe benefits shall be retroactive to the commencement date of the contract. (See Section 4.6 (C)(vi)) When multiple wage determinations are included in a contract, a separate SF 1444 should be prepared for each wage determination to which a class(es) is to be conformed.

The process for preparing a conformance request is as follows:

1) When preparing the bid, the contractor identifies the need for a conformed occupation(s) and computes a proposed rate(s).

2) After contract award, the contractor prepares a written report listing in order proposed classification title(s), a Federal grade equivalency (FGE) for each proposed classification(s), job

description(s), and rationale for proposed wage rate(s), including information regarding the agreement or disagreement of the authorized representative of the employees involved, or where there is no authorized representative, the employees themselves. This report should be submitted to the contracting officer no later than 30 days after such unlisted class(es) of employees performs any contract work.

3) The contracting officer reviews the proposed action and promptly submits a report of the action, together with the agency's recommendations and pertinent information including the position of the contractor and the employees, to the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, for review. (See section 4.6(b)(2) of Regulations 29 CFR Part 4).

4) Within 30 days of receipt, the Wage and Hour Division approves, modifies, or disapproves the action via transmittal to the agency contracting officer, or notifies the contracting officer that additional time will be required to process the request.

5) The contracting officer transmits the Wage and Hour decision to the contractor.

6) The contractor informs the affected employees.

Information required by the Regulations must be submitted on SF 1444 or bond paper.

When preparing a conformance request, the "Service Contract Act Directory of Occupations" (the Directory) should be used to compare job definitions to insure that duties requested are not performed by a classification already listed in the wage determination. Remember, it is not the job title, but the required tasks that determine whether a class is included in an established wage determination. Conformances may not be used to artificially split, combine, or subdivide classifications listed in the wage determination.

** OCCUPATIONS NOT INCLUDED IN THE SCA DIRECTORY OF OCCUPATIONS **

FORESTRY TECHNICIAN

Forestry and range technicians apply general knowledge of the organization, its programs, and the characteristics of the local environment. They are specialists in specific forestry or range conservation subject-matter areas or techniques and practices. They use formulas and factors in estimating and inspecting a particular segment of work, according to standards provided by professionals. They perform any of the following basic kinds of forestry or range conservation support work, in varying combinations of duties:

- Administer a particular operation or area such as timber sales, recreation area, or research area that is a segment of a professional resource management or research programs, when such assignment requires use of practical knowledge and experience in planning and carrying out the work.

- Apply standard forestry and range conservation techniques and practices in suppporting professional programs and may modify standard practices when such modifications
do not affect basic characteristics or relationships among

resource programs.

- Collect, consolidate, tentatively analyze, summarize, and report data within controls established by professional standards and research study plans or by resource management plans.

- Maintain contacts wi[illegible] forest and range users, the public and contractors for purpose of factfinding, explanation, gaining cooperation, and inspecting and evaluating operations, using standards and guides established by professionals.

- Plan or perform fire prevention, presuppression, suppression, postsuppression, or related forest fire control work and fire management.

FORESTRY HEAVY EQUIPMENT OPERATOR

Operates heavy equipment such as bulldozer, grader, power shovel, backhoe, feller/buncher, skidder, jammer, yarder, high tower, tree peeler, or grapple loader. Equipment is used to build and maintain roads, move logs, pile brush, and prevent or fight fires. Operator may lubricate, fuel, adjust, and make emergency repairs to equipment.

For wage study purposes, heavy equipment operators are classified as follows:

Loader operator
Skidder operator
Other heavy equipment operator

FORESTRY TRUCKDRIVER

Drives a truck to transport logs, dirt, gravel, trash, brush, equipment, supplies, or personnel. May direct the work of laborers loading or unloading truck. May also load or unload truck without helpers, perform routine maintenance, or make minor mechanical repairs. Exclude owner operators, over-the-road drivers, and general freight haulers.

For wage study purposes, truckdrivers are classified by type and rated capacity of truck, as follows:

Light truck
(straight truck, under 1 1/2 tons, usually 4 wheels)

Medium truck
(straight truck, 1 1/2 to 4 tons inclusive, usually 6 wheels)

Heavy truck
(straight truck, over 4 tons, usually 10 wheels

Tractor-trailer

Combination of sizes

Truckdrivers in positions with work characteristics as described should be reported under this type when the information neeed to classify them by type is not available or they are not assigned to a particular type of truck.

# Imported Fire Ant Quarantines




**Conditions of Movement**

Counties entirely colored are completely regulated; counties partially colored are partially regulated.

■ Regulated area

Restrictions are imposed on the movement of regulated articles as follows: From red areas into or through white areas.

**Consult your State or Federal plant protection inspector or your county agent for assistance regarding exact areas under regulation and requirements for moving regulated articles. For detailed information see 7 CFR 301.81 for quarantine and regulations.**

ATTACHMENT D
Page 1 of 2

**The Following Regulated Articles Require a Certificate or Permit for Movement:**

1. Soil, separately or with other things, except soil samples shipped to approved laboratories.* Potting soil is exempt, if commercially prepared, packaged, and shipped in original containers.
2. Plants with roots with soil attached, except houseplants maintained indoors and not for sale.
3. Grass sod.
4. Baled hay and straw that have been stored in contact with the soil.
5. Used soil-moving equipment.
6. Any other products, articles, or means of conveyance of any character whatsoever not covered by the above, when it is determined by an inspector that they present a hazard of spread of the pest and the person in possession thereof has been so notified.

**information as to designated laboratories, facilities, gins, oil mills, and processing plants may be obtained from an inspector*

United States Department of Ag ulture
DELIVERY ORDER

AD838 - Vendor (APOS 7/90) Order Number: 43-4660-4-0223 Sub:

| Page | Contract Number | Order Date | |
|---|---|---|---|
| 01 of 01 | 53-4660-3-19 | March 17, 1994 | This Number must appear on all Invoices, Packages, and Papers Relating to this Order. |

| Seller's Ident. No. | Form 1099 | Taxpayer's Ident. No. |
|---|---|---|
| | No | |

To: (Seller's Name and Address)

SHIP TO ->

Consignee:
USDA-FS Savannah River Forest Sta.
Bldg 760-G ATTN:
1 mile inside Aiken Barricade-SRS
Aiken SC 29802

| Line Item | Description | Quantity | Unit Issue | Unit Price | Amount |
|---|---|---|---|---|---|
| 01 | TRAP AND DISPATCH FERAL HOGS | 200 | EA | 10.00 | 2000.00 |

| F. O. B. Point | Deliver to Consignee Address on or Before | TOTAL > | 2000.00 |
|---|---|---|---|
| Destination | per contract | | |

| Ship Via | Discount Terms |
|---|---|
| | Net 30 Days |

Billing Address (DO NOT SHIP ORDER HERE)
(Ship to Consignee Address above)
USDA Forest Service
Savannah River Forest Station
P. O. Box 710
New Ellenton SC 29809-0710

BILLING INSTRUCTIONS: Do not submit bill in advance of shipment. Send invoice with our Order Number to Billing Address at left. Failure to show our Order Number will delay payment. If available, include your nine position DUNS number on each invoice. Freight charge over $100 requires bill of lading.

Issuing Office:
USDA Forest Service
Savannah River Forest Station
P. O. Box 710
New Ellenton SC 29809-0710

Ordered By: (Name and Title)
Homer R. Gabard Contracting Officer
Phone Number: (803) 725-2441
Authorized Signature:

SELLER'S ORIGINAL 7/18/94

SECTION M - EVALUATION FACTORS FOR AWARD

M.1 EVALUATION QUANTITIES--INDEFINITE DELIVERY CONTRACT (AGAR 452.216-72) (FEB 1988)

To evaluate offers for award purposes, the Government will apply the offeror's proposed fixed-prices/rates to the estimated quantities included in the solicitation, and will add other direct costs if applicable.

M.2 EVALUATION OF OPTIONS (FAR 52.217-5) (JUL 1990)

Except when it is determined in accordance with FAR 17.206(b) not to be in the Government's best interests, the Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. Evaluation of options will not obligate the Government to exercise the option(s).

M.3 AWARD DETERMINATION

A. Award will be made to that offeror (1) whose proposal is technically acceptable and (2) whose technical/cost relationship is the most advantageous to the Government. While cost is secondary to technical, it will be a factor in the award decision. The critical factor in making any cost/technical trade-off is not the spread between the technical scores, but rather what is the significance of that difference. The significance of the spread in scores will be determined on the basis of what that difference might mean in terms of performance and what it would cost the Governement to take advantage of it. Award may not necessarily me made to that offeror submitting the lowest offer. Also, award may not necessarily be made for technical capabilities that would appear to exceed those needed for the successful performance of the work. The Government reserves the right to make cost/technical trade-offs that are in the best interest and to the advantage of the Government.

B. Proposals will be rated to determine those offerors which are within the competitive range, price and other factors considered. Proposals should be submitted initially on the most favorable terms which the offeror can make to the Government. The Government reserves the right to reject any or all proposals or to make award without conducting discussions. Discussions (oral or written) may be conducted as appropriate with all offerors considered to be within the competitive range. For the purpose of this solicitation, discussion shall not be considered to have been initiated where the Government requests additional information supplementing or clarifying a proposal without materially

changing it. Discussion shall be considered to be open negotiation with an offeror for the purpose of modifying or materially changing the proposal as submitted. Where discussions are held with one offeror within the competitive range, they will be held with all offerors within the competitive range.

M.4 EVALUATION FACTORS

Evaluation factors are shown in descending order of importance. Within each criteria subfactors are of equal importance.

A. Ability to perform in accordance with the specifications including demonstrated satisfactory experience in the two methods of wild hog control required by the solicitation.

1. Experience in using traps for wild hog control.
2. Experience in usirg dogs for wild hog control.
3. Sufficient trained dogs and other necessary equipment.
4. Sufficient trained and experienced employees.
5. History of satisfactory performance on contracts or projects similar in size and scope.

B. Ability to satisfactorily collect required hog biological data.

1. Experience in hog biological data collection.
2. Ability to determine correct age, sex, and reproductive condition of wild hogs.

C. Ability of dogs to locate, track, and catch/bay wild hogs.

1. Experience of dogs in locating, tracking, and catching/baying wild hogs.
2. Demonstrated ability of dogs to locate, track, and catch/bay wild hogs. After evaluation of offers, offerors determined to be in the competitive range may be required to bring at least two dogs to a location on SRS designated by the Contracting Officer and Technical Evaluation Board to evaluate the following:

a. Inclination and ability of dogs to locate hogs (scent)
b. Inclination and ability of dogs to track hogs
c. Inclination and ability of dogs to catch/bay (stop/hold) hogs
d. Inclination of dogs to avoid pursuit of other wildlife
e. Inclination of dogs to stay with handler and respond to commands.

D. Ability to maintain quality control over work in progress.

1. Ability to insure correct use of the two methods of wild hog control.
2. Ability to properly use personnel, dogs, and equipment including firearms.
3. History of quality work on contracts/projects similar in

size and scope.

E. Ability to perform within established timeframe.

1. Ability to recruit, train, and retain sufficient employees.
2. Ability to keep dogs and equipment operational during performance.
3. History of on-time performance on contracts/projects similar in size and scope.

F. Ability to meet other contract requirements.
1. Requirement for all personnel to be U.S. citizens.
2. Evidence of required insurance.
3. Ability of contractor and all employees to obtain proper S.C. Hunting License.
4. Demonstrated clean and safe hunting record.
5. Compliance with regulations governing contractor's business, including but not limited to minimum wage, overtime, worker's compensation, unemployment, safe working conditions.

M.5 PRICE PROPOSALS

A. Price considerations will be approximately equally as important as all technical considerations in the selection of an offer for award. Completeness of detail for proposed costs will be considered quite heavily in evaluation and analysis of offeror's price proposal.

B. Price proposals will be thoroughly reviewed by the Contracting Officer to ensure that all anticipated costs are accounted for, proposed costs are reasonable, and to gain an understanding of the offeror's estimating system. It may be necessary for the Contracting Officer to review supporting records to determine the reasonableness of proposed costs, and the reliability of the offeror's estimating system, especially in the case where there is not adequate competition for the contract.

STANDARD FORM 30

**USDA - FOREST SERVICE** PAGE 2 of 2

ATTACHMENT TO MODIFICATION OF CONTRACT, SF-30

| DATE | FOREST | PROJECT NAME: Wild Hog Control |
|---|---|---|
| 08/06/98 | SAVANNAH RIVER INSTITUTE | |

| MODIFICATION NUMBER | ORIGINAL CONTRACT AMOUNT | CONTRACT NUMBER |
|---|---|---|
| 01 | $44,000 (Base Period) | 53-4660-8-04 |

Describe each modification identified by item number, location, etc., and state its purpose. On a separate sheet for internal use, give justification and estimate where applicable.

| PROPOSED MODIFICATION | AMOUNT OF INCREASE (+) OR DECREASE (-) |
|---|---|

| ITEM NO. | SUPPLIES SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE | TOTAL | AMOUNT OF INCREASE (+) OR DECREASE (-) |
|---|---|---|---|---|---|---|
| 01 | Base Period (12mon.) Trap and Dispatch feral hogs Maximum quantity | 1000 | EA | $55.00 | $55,000.00 | (+) $11,000.00 |

Purpose: Government requires the services provided by this contract to be performed year round and not be stopped when the contractor has killed the maximum quantity of hogs shown for the Base Period.

| | |
|---|---|
| **NET CHANGE THIS MODIFICATION** | + $11,000.00 |
| **CONTRACT AMOUNT PRIOR TO THIS MODIFICATION** | $44,000.00 |
| **NEW CONTRACT TOTAL** | $ 55,000.00 |

| CONTRACT TIME Requirements | DAYS INCREASED | DAYS DECREASED | NEW TOTAL CONTRACT TIME: |
|---|---|---|---|
| SUBMITTED | SIGNATURE Frankie Brooks | TITLE COR | DATE 8-21-98 |
| RECOMMENDED | SIGNATURE Elizabeth LeMaster | TITLE WF&B STAFF OFFICER | DATE 8/21/98 |
| AVAILABLE FUNDS $11,000.00 MGT. CODE: 002845 | SIGNATURE [signature] | TITLE B.O. | DATE 8/21/98 |

STANDARD FORM 30

**AMENDMENT OF SOLICITATION/ MODIFICATION OF CONTRACT**

| | | | |
|---|---|---|---|
| 1. CONTRACT ID CODE | | PAGE 1 of 2 PAGES | |
| 2. AMENDMENT/MODIFICATION NO. 01 | 3. EFFECTIVE DATE 08/06/98 | 4. REQUISITION/PURCHASE REQ. # | 5. PROJECT # (If applic.) |
| 6. ISSUED BY USDA, FOREST SERVICE SAVANNAH RIVER INSTITUTE P.O. BOX 700 NEW ELLENTON, SC 29809-0700 | CODE | 7. ADMINISTERED BY (If other than Item 6) | CODE |
| 8. NAME & ADDRESS OF CONTRACTOR (No. street, county, state & zip code) GA BOWHUNTER SUPPLY CO., 5330 COLUMBIA ROAD GROVETOWN, GA 30813 | | 9A. AMENDMENT OF SOLICITATION NO. | 9B. DATED (SEE ITEM 11) |
| 10A. MODIFICATION OF CONTRACT ORDER NO. 53-4660-8-04 | 10B. DATED (SEE ITEM 13) 10/29/97 | CODE | FACILITY CODE |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATION**

[]The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [] is extended. [] is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning 1 copies of the amendment (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14.PURSUANT TO THE AUTHORITY OF FAR 43.103(b) |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 43.103(a) FAR 43.102(a) |
| | D. OTHER (Specify type of modification and authority) |

**E. IMPORTANT:** Contractor [ ] is not. [X] is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation contract subject matter where feasible.)

Please refer to Page 7, Part I, Section B, and change the maximum quantity for the Base Period as shown on page 2 of this modification.

EXCEPT AS PROVIDED HEREIN ALL TERMS AND CONDITIONS OF THE DOCUMENT REFERENCED IN 9A OR 10A AS HERETOFORE CHANGED REMAINS UNCHANGED AND IN FULL FORCE AND EFFECT.

| | | |
|---|---|---|
| 15A. NAME AND TITLE OF SIGNER (Type/Print) W. D. Hooker W. D. Hooker | 15B. CONTRACTOR/OFFEROR (Person authorized to sign) W. D. Hooker | 15C. DATE SIGNED 8-26-98 |
| 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type/Print) HOMER R. GABARD, Contracting Officer | 16B. UNITED STATES OF AMERICA Homer R. Gabard BY:(Contracting Officer) | 16C. DATE SIGNED 9/1/98 |

STANDARD FORM 30

**AMENDMENT OF SOLICITATION/ MODIFICATION OF CONTRACT**

1. CONTRACT ID CODE | PAGE 1 of 1 PAGES

2. AMENDMENT/MODIFICATION NO. 02 | 3. EFFECTIVE DATE 10/01/98 | 4. REQUISITION PURCHASE REQ. # | 5. PROJECT # (If applic.)

6. ISSUED BY
USDA, FOREST SERVICE
SAVANNAH RIVER INSTITUTE
P.O. BOX 700
NEW ELLENTON, SC 29809-0700

CODE

7. ADMINISTERED BY (If other than Item 6) CODE

8. NAME & ADDRESS OF CONTRACTOR (No. street, county, state & zip code)
GA BOWHUNTER SUPPLY CO.
5330 COLUMBIA ROAD
GROVETOWN, GA 30813

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

10A. MODIFICATION OF CONTRACT/ORDER NO. 53-4660-8-04

10B. DATED (SEE ITEM 13) 10/29/97

CODE | FACILITY CODE

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATION**

[]The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [] is extended, [] is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning 1 copies of the amendment (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14. PURSUANT TO THE AUTHORITY OF FAR 43.103(b) |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 52.217-9, AGAR CLAUSE 452.217-8. |
| | D. OTHER (Specify type of modification and authority) |

**E. IMPORTANT:** Contractor [ ] is not, [X] is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

THE CONTRACT IS HEREBY RENEWED BY THE FOREST SERVICE FOR THE OPTION PERIOD I FOR THE PERIOD OCTOBER 1, 1998 TO SEPTEMBER 30, 1999.

EXCEPT AS PROVIDED HEREIN ALL TERMS AND CONDITIONS OF THE DOCUMENT REFERENCED IN 9A OR 10A AS HERETOFORE CHANGED REMAINS UNCHANGED AND IN FULL FORCE AND EFFECT.

15A. NAME AND TITLE OF SIGNER (Type Print)
W. P. Hooker

15B. CONTRACTOR/OFFEROR (Person authorized to sign) [signature]

15C. DATE SIGNED 10-1-98

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type/Print)
HOMER R. GABARD, Contracting Officer

16B. UNITED STATES OF AMERICA BY: (Contracting Officer) [signature: Homer R. Gabard]

16C. DATE SIGNED 10/2/98

STANDARD FORM 30

**AMENDMENT OF SOLICITATION/ MODIFICATION OF CONTRACT** | 1.CONTRACT ID CODE | PAGE 1 of 1 PAGES

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4.REQUISITION/PURCHASE REQ. # | 5. PROJECT # (If applic.) |
|---|---|---|---|
| 04 | 10/01/99 | | |

| 6. ISSUED BY | CODE | 7. ADMINISTERED BY (If other than Item 6) | CODE |
|---|---|---|---|
| USDA, FOREST SERVICE<br>SAVANNAH RIVER INSTITUTE<br>P.O. BOX 700<br>NEW ELLENTON, SC 29809-0700 | | | |

| 8.NAME & ADDRESS OF CONTRACTOR (No. street, county, state & zip code) | 9A. AMENDMENT OF SOLICITATION NO. | 9B. DATED (SEE ITEM 11) |
|---|---|---|
| GA BOWHUNTER SUPPLY CO.<br>5330 COLUMBIA ROAD<br>GROVETOWN, GA 30813 | | August 9, 1999 |

| 10A.MODIFICATION OF CONTRACT | 10B.DATED(SEE ITEM 13) | CODE | FACILITY CODE |
|---|---|---|---|
| 53-4660-8-04 | 10/29/97 | | |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATION**

[ ]The above numbered solicitation is amended as set forth in Item 14.The hour and date specified for receipt of Offers [ ] is extended, [] is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning 1 copies of the amendment (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (FAR 52.243-1) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14.PURSUANT TO THE AUTHORITY OF FAR 43.103(b) |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 43.103(a), FAR 52.217-9, AGAR Clause 452.217-8 |
| | D. OTHER (Specify type of modification and authority) Disclosure of the magnitude of construction projects. |

**E. IMPORTANT:** Contractor [ ] is not, [X] is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation contract subject matter where feasible.)

**CONTRACT IS EXTENDED TO OCTOBER 31, 1999, OR UNTIL A NEW CONTRACT IS AWARDED.**

EXCEPT AS PROVIDED HEREIN ALL TERMS AND CONDITIONS OF THE DOCUMENT REFERENCED IN 9A OR 10A AS HERETOFORE CHANGED REMAINS UNCHANGED AND IN FULL FORCE AND EFFECT.

| 15A. NAME AND TITLE OF SIGNER (Type/Print) | 15B. CONTRACTOR/OFFEROR (Person authorized to sign) | 15C. DATE SIGNED |
|---|---|---|
| W. D. Hocker owner | [signature] | 9/4/99 |
| **16A. NAME AND TITLE OF CONTRACTING OFFICER (Type/Print)** | **16B. UNITED STATES OF AMERICA BY:(Contracting Officer)** | **16C. DATE SIGNED** |
| HOMER R. GABARD, Contracting Officer | [signature] | 9/7/99 |

STANDARD FORM 30