IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WILLIAM D. HOOKER, d/b/a )
GEORGIA BOWHUNTERS SUPPLY )
)
Plaintiff )
)
vs ) No. 03-1501C
)
THE UNITED STATES, )
)
Defendant )
)

# COMPLAINT

## Jurisdiction

FILED JUN 17 2003

1. This complaint is brought under the Contract Disputes Act. 41 U.S.C. §609(a)(1)(2002). The Court of Federal Claims has jurisdiction over claims based on any express or implied contract pursuant to 28 U.S.C. §1491(a)(1)(1994).

2. William D. Hooker (Hooker) brings this action for equitable adjustment for four contracts with the United States Department of Agriculture Forest Service as follows: Contract number 53-4660-8-04 dated October 30, 1997; number 53-4660-9-06 dated January 29, 1999; 43-4660-3-0134; and 53-4660-4-14 (dates unknown).

3. Eight Requests for Equitable Adjustment dated between October 1, 2000 and October 27, 2000 and an additional seven requests dated between April 1 and April 15, 2002 were denied by the contracting officer, Homer R. Gabard, in a letter dated July 29, 2002.

## Background

4. During the period from February, 1992 through 2000, Hooker was a contractor with the U.S.D.A. Forest Service, performing under two contracts; one for hog control and the other for beaver trapping and culvert cleaning at the Savannah River Site which is managed by Westinghouse.

<u>Hog Contract</u>

5. Contract number 43-4660-8-0027 for hog control and dated October 30, 1997 had a base period of 12 months, with two option periods of October 1, 1998 to September 30, 1999 and October 1, 1999 to September 30, 2000.

6. Hooker performed satisfactorily under this contract from its inception.

7. On June 30, 1999 the contracting officer, Homer Gabard, wrote to Hooker alleging Hooker's default of the contract.

8. These allegations concerned two of Hooker's employees, Goldman E. Eller and Michael E. Eller, complaining of inappropriate documentation of hogs and complaining that domestic pigs had been brought to the SRI cooler.

9. The contracting officer gave Hooker fifteen days to correct problems or default the hog contract.

10. The contracting officer also forever barred both Michael and Goldman Eller from working on this or any other contract with the Forest Service.

11. The contracting officer was not within his authority under H.16(f) under the contract to bar these employees, but this same contracting officer has subsequently awarded contracts to Michael Eller. Hooker was effectively deprived of these two employees.

12. The contracting officer was not within his authority under the contract to make the determination that pigs killed under the contract were wild or domestic.

13. The contracting officer then deducted the sum of $1,320.00 from future payments for so called domestic pigs trapped on the SRS site, and demanded that Hooker find new replacement personnel within fifteen days.

14. This deduction was arbitrary and in violation of the terms of the contract as the contract does not define the difference between "wild" and "domestic" hogs.

15. Unstated in the contract, Hooker and employees were required to obtain contraband passes from Wackenhut Security for the firearms used to dispatch the hogs. On 7/9/99, Hooker produced the information required by Wackenhut for contraband pass. This paperwork was lost for six weeks, and then held without issuing the pass.

16. Hooker called the contracting officer about the contraband pass on 11/10/99 with no response.

17. On 11/29/99 and 11/30/99 Hooker was required to put on a "hog hunt" using his dogs for the new hog contract. He was not allowed a gun because the contraband pass had still not been issued. Hooker was required to kill a 300 lb. boar using only his pocket knife, which was not only dangerous but contrary to the hog contract . Hooker also hunted the following day with only a knife.

18. Hooker was effectively prevented from performing under the hog contract which requires a firearm to be used in dispatching hogs.

19. Hooker claims an equitable adjustment and contract damages because of the USFS actions in preventing him from fulfilling the terms of the contract.

20. Hooker claims damages in the amount of $20,000.00 as an adjustment because of the breach of contract by the contracting officer, as well as the sum of $30,000.00 for the balance of the contract.

21. Hooker claims damages in an unspecified amount for the contracting officer's unreasonable delay in responding to the Requests for Equitable Adjustment.

22. Total damages are estimated at $50,000.00, plus interest from the date of denial.

<u>Beaver and Culvert Cleaning Contract</u>

23. Contract #53-4660-9-06 involved killing of beaver by trapping on the SRS site and also cleaning of culverts at the Savannah River Natural Resource Management and Research Institute. The contract price as negotiated was $51,300.00 a year, beginning February 1, 1999 and ending December 31, 1999 with an option period for one year, and an additional option period for one more year at $51,300.00.

24. This contract required Hooker to trap 700 beaver at sites 1 through 53 as directed by the Contracting Officer's Representative and perform 1100 hours

of culvert maintenance. Unit price per beaver was $45.00 and hourly rate for culvert cleaning was $18.00.

25. The general specifications for this contract specifically stated that no toxicological hazards are associated with trapping beavers at SRS; however, normal environmental and physical hazards such as snakes and uncertain footing do exist. No specific statement involved the culvert cleaning.

26. On or about February 22, 1999, Hooker learned that the beaver trapping he had performed under the contract now required a work clearance permit and protective equipment, waders, gloves, etc. Hooker made inquiries as to what substances were in the water he and his men had been trapping in without protection since the beginning of the contract term in October, 1997.

27. These inquiries produced no answers, but on further investigation Hooker found that the ponds he had worked in unprotected since the beginning of the contract had been posted as contaminated, but the signage had not been maintained

    a) From October, 1997 until February, 1999 USFS failed to notify Hooker of the contamination of the ponds he and his employees worked in; and only after February, 1999 required protective equipment.

b) If Hooker had known that he and his employees would be working in contaminated areas without protection, his bid of $55.00 per hog would have been increased to $110.00 per hog .

c) If Hooker had known that he and his employees would be working barehanded in contaminated culverts without protection, his bid of $18.00 per hour would have been increased to $50.00 per hour.

28. The USDA Forest Service contract stated no toxicological hazards, but subsequent to the contract formation, one site that Hooker had previously worked in was posted and barricaded. Hooker would have worn protective gear if this situation was disclosed. Instead, he put his employees and himself at risk.

29. Subsequent to Hooker's discovery of the contamination, and questioning as to what substances were in the ponds, USFS failed to renew the contract as to the option.

30. Hooker now has emotional difficulties because of fear of past exposure to contaminants.

31. Hooker has been damaged in the amount of $80,700.00 for the initial contract and $80,700.00 for the option year.

32. Hooker has been damaged in an unspecified amount for the emotional damages caused by defendant's breach of contract.

<u>Contracting Officer's Delay in Issuing Decision</u>

33. Hooker has suffered damages because the Contracting Officer unreasonably delayed consideration of the Requests for Equitable Adjustment.

34. Hooker filed eight Requests for Equitable Adjustment between October 1 and October 27, 2000.

35. No response was received until July 10, 2001 when Hooker made an inquiry to the Department of Energy. Mark W. Frie, Deputy Assistant Secretary for Project Completion, Office of Environmental Management reported that the contracting officer, Homer Gabard had assured him that a response would be received on or before July 31, 2001.

36. No response was received.

37. The Contracting Officer, Homer Gabard, did not reply to these requests until February 13, 2002, when he "hoped to provide a response" by February 28, 2002 or certainly no later than March 31, 2002.

38. No response was forthcoming.

39. Hooker filed seven Requests for Equitable Adjustment between April 1 and April 15, 2002.

40. No response was received until the denial of all requests dated July 29, 2002.

41. Hooker has been damaged in the Contracting Officer's unreasonable delay in responding to the Requests for Equitable Adjustment and requests this Court to allow him interest under the Contracts Disputes Act to the date of filing of the Requests pursuant to 41 U.S.C.§611.

NOW THEREFORE, the plaintiff requests that this Court award him the following damages under the contracts:

A. The sum of $50,000.00 as damages in Hog Contract number 43-4660-8-0027;

B. The sum of $170,400.00 as damages in Beaver and Culvert Cleaning contract 53-4660-9-06;

C. Reformation and damages from Contract 53-4660-8-04;

D. Interest at the statutory rate from date of filing of Requests.

Respectfully submitted,

Berta E (Robbie) Nichols

Berta E. (Robbie) Nichols, Attorney for Plaintiff
Post Office Box 7925
Hilton Head Isl., South Carolina 29938
(843) 686-5884 (Facsimile (843) 842-3933

June 9, 2003