IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WILLIAM D. HOOKER, d/b/a<br>GEORGIA BOWHUNTERS SUPPLY<br><br>Plaintiff<br><br>vs<br><br>THE UNITED STATES,<br><br>Defendant | No.03-1501C<br>(Judge Allegra) |

FIRST AMENDED COMPLAINT

Jurisdiction

1. This complaint is brought under the Contract Disputes Act 41 U.S.C.§609(a)(1)(2002). The Court of Federal Claims has jurisdiction over claims based on any express or implied contract pursuant to 28 U.S.C.§1491(a)(1)(1994).
2. William D. Hooker (Hooker) brings this action for equitable adjustment of Contract #53-4660-9-06 dated January 29, 1999 with the United States Department of Agriculture Forest Service.
3. Hooker also brings an action for bad faith breach of this contract and failure to renew the option period .
4. Requests for Equitable Adjustment dated between October 1, 2000 and October 27, 2000; and between April 1 and April 15 , 2002 were denied by the contracting officer, Homer R. Gabard, in a letter dated July 29, 2002.
5. This action was timely filed on June 17, 2003, and motion was granted to amend the original complaint on February 20. 2004.

Beaver and Culvert Cleaning Contract

6. During the period from February, 1992 through July, 2000, Hooker held contracts with the U.S. Forest Service for beaver trapping and culvert cleaning at the Savannah River Site (SRS) , New Ellenton, South Carolina. Contract #53-4660-9-06 dated January 29,

1999 involved the killing of beaver by trapping on the SRS site and also cleaning culverts at the Savannah River Natural Resource Management and Research Institute. The contract price as negotiated was $51,300.00 per year, beginning February 1, 1999 and ending December 31, 1999 with an option period for one year, and an additional option period for one more year at $51,300.00.

7. This contract was based upon Hooker trapping 700 beaver at sites 1 through 53 as directed by the Contracting Officer's Representative Frankie Brooks; and to perform 1100 hours of culvert maintenance. The unit price per beaver was $45.00 and the hourly rate for culvert cleaning was $18.00.

8. The general specifications for this contract specifically stated that "no toxicological hazards are associated with trapping beavers at SRS; however, normal environmental and physical hazards such as snakes and uncertain footing do exist." No specific statement was made involving the culvert cleaning.

9. On or about February 22, 1999, Hooker for the first time in his seven years of contracting with the U.S.F.S. was presented with a work clearance permit for the beaver trapping.

10. This work clearance permit required Hooker to be RAD II qualified; have a standby person, and also required protective equipment, waders, gloves, etc. It further required that Hooker rinse off the waders and lay them on plastic for RCO (Radiological Control Organization) survey.

11. Hooker was at that time RAD II qualified, but his employees were not. He began to make inquiries of the USFS as to what substances were in the water that he and his men had been trapping in without protection since the beginning of the original contract term in October, 1997.

12. There was no response to these inquiries; Hooker investigated and found that at least one pond he had worked in without protection since the beginning of the contract had been posted as contaminated, but the signs had fallen on the ground and covered with debris

and weeds.

13. Hooker requested additional money under the contract in order to hire RAD II trained workers; stating that he would have increased his bid if he had known the sites were not clean and would require trained personnel. This request was denied by the contracting officer and he was told he had to honor the contract price as it was.

14. Hooker continued to request information on what contamination existed in the sites and on June 1, Hooker had his standby person, Mark Lubert, make a video of the contaminated site that had been posted and where Hooker had trapped beaver.

15. USFS became aware of the videotaping and shortly thereafter Hooker's contract was effectively terminated.

16. USFS breached the contract on July 21, 1999 when the COR Frankie Brooks effectively terminated the contract for beaver trapping and culvert cleaning. Hooker had previously trapped 55 sites for the USFS; after July 1, all culvert cleaning was stopped and he was only allowed to trap 1 site. For the remainder of the contract term, Hooker was only given 3 additional work orders.

17. Defendant USFS has breached the contract in reducing the number of trapping sites from the original contract language, and prohibiting Hooker from performing the culvert cleaning.

18. Hooker has been damaged by USFS' breach in the loss of the remaining contract term plus the loss of the option year in the amount of $80,000.00.

19. Hooker has also suffered consequential damages as a result of financial hardship caused by the breach.

<u>Bad Faith</u>

20. Paragraphs 1 through 19 are realleged as if herein rewritten.

21. USFS knew or should have known prior to February, 1999 that some of the beaver trapping and culvert sites were contaminated; and should have required the protections that were instituted by way of the work clearance permit of February 22, 1999.

21. In requiring additional training and equipment because of the contamination, USFS should have reformed the contract terms to compensate Hooker for the additional expense, but instead refused to compensate him.

22. As a result of Hooker's inquiries and concern over the contamination, instead of addressing these concerns, USFS effectively stopped Hooker from performing any work, breaching the contract.

23. The USFS later published a report in the form of a bar graph showing Beavers trapped in 1999. This report showed an average of 40 to 50 beavers trapped every month until July, 1999 when no beavers were trapped; with the rest of the year 1999 showing no beavers trapped for the months of October and November, and 2 beavers trapped for the month of December.

24. Hooker is informed and believes that USFS deliberately failed to trap beavers or clean culverts for the balance of the year 1999 in order to breach Hooker's contract.

25. Hooker believes that these actions were taken with a specific intent to injure him economically, and punish him for his concerns about the negligence of the Forest Service.

26. USFS has acted in bad faith, both in failing to inform Hooker of the contamination in the ponds that USFS required him to work in; and breach of the contract and options, in retaliation for Hooker's concerns about the contamination.

WHEREFORE, having stated his amended complaint, Hooker requests that this Court award him damages as follows:

A. The sum of $80,000.00 representing the balance of the breached contract plus the option year;

B. A sum to compensate him for the defendant's bad faith in refusing to renegotiate the contract after learning of changed circumstances;

C. Punitive damages;

D. And such other and further relief as this Court may allow.

Respectfully submitted,

/s/ Berta E. (Robbie) Nichols, Attorney for Plaintiff
Post Office Box 7925
Hilton Head Isl., South Carolina 29938
(843) 686-5884 (Facsimile (843) 842-3933

March 16, 2003