ECF

ORIGINAL

Cover Sheet

RECEIVED
JUL 7 2004
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

Plaintiff(s) or Petitioner(s) William D. Hooker d/b/a Georgia Bowhunters Supply

If this is a multi-plaintiff case, pursuant to RCFC 20(a), please attach an alphabetized, numbered list of all plaintiffs.

Name of the attorney of record (See RCFC 83.1(c)): Berta E (Robbie) Nichols

Firm Name:

Post Office Box: PO Box 7925

04-1126C

Street Address: 206 Carolina Bldg.

City-State-Zip: Hilton Head, SC 29938

Telephone & Facsimile Numbers: (843) 686-5884 Fax: (843) 842-3933

Is the attorney of record admitted to the Court of Federal Claims Bar? Yes

If **NO**, please call (202) 219-9630 for admission papers and instructions.

Nature of Suit Code: 1 1 4

Select only one (three digit) nature of suit code from attached sheet and if numbers 118, 134, 226, 312, 356, or 528 are used, please explain.

Agency Identification Code: A G R

See attached sheet for three digit codes.

Amount Claimed: $ 80,000.00 (est)

Use estimate if specific amount is not pleaded.

Vaccination Date (vaccine cases only) ______________________

If this is case directly related to any pending or previous case, you are required to file a separate notice of directly related case(s). See RCFC 40.2.

**Natures of Suit Codes for General Jurisdiction Cases**

ORIGINAL

ECF

FILED
JUL 7 2004
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WILLIAM D. HOOKER, d/b/a
GEORGIA BOWHUNTERS SUPPLY

Plaintiff

vs

THE UNITED STATES,

Defendant

04-1126C

(Judge Allegra)

Jurisdiction

1. This complaint is brought under the Contract Disputes Act 41 U.S.C.§601 *et seq.* The Court of Federal Claims has jurisdiction over claims based on any express or implied contract pursuant to 28 U.S.C.§1491(a)(1)(1994).

2. William D. Hooker ("Hooker") brings this action for equitable adjustment of Contract #53-4660-8-04 awarded October 29, 1997 as modified October 1, 1999 with the United States Department of Agriculture Forest Service ("USFS").

3. Hooker also brings an action for bad faith breach of this contract and failure to renew the option period .

4. Hooker submitted a Request for Equitable Adjustment dated April 7, 2004 which was denied by the contracting officer, Margaret J. Yeaton on June 10, 2004.

5. Hooker brings this action within twelve months of the date of receipt of the decision.

The Hog Contract

6. On October 29, 1997 Hooker was awarded contract #53-4660-8-04 by the United States Department of Agriculture Forest Service to control the wild hog population on the Savannah River Site by trapping and the use of trained dogs. This contract was further modified as of October 1, 1999.

A. THE WITHHELD PAYMENTS

7. On June 30, 1999 the then contracting officer, Homer Gabard, issued a letter withholding payments totaling $1,320.00 due to non-conformance to contract specifications, and further refused to pay for hogs itemized in subsequent invoices. Specifically, the contracting officer advised that domestic pigs were brought to the cooler as substitutes for wild hogs, claiming that the animals had dull rounded hooves from standing on hard surfaced floors, extra teats, the absence of parasites, and other factors indicating the hogs were domestic, not feral hogs. The contracting officer failed to note whether Wackenhut security had noticed hogs being transported into the Savannah River Site.

8. The contract language does not define feral, but according to *The New Shorter Oxford English Dictionary,* feral is defined as "forming or belonging to a wild population ultimately descended from individuals which escaped from captivity or domestication".

9. Plaintiff Hooker states these hogs were dispatched while on the SRS property, were running wild, and were within the definition of wild or feral hogs under the contract.

10. Hooker is informed and believes that this deduction as well as the unpaid subsequent invoices constituted a breach of the terms of the hog contract.

B. USFS BARRED TWO OF HOOKER'S EMPLOYEES FROM THE SRS SITE

11. On June 30, 1999; the Contracting Officer, Homer Gabard, presented Hooker with a letter stating that as a result of the alleged dispatching of domestic pigs; two of Hooker's employees, Michael E. Eller and Goldman E. Eller were barred from working on the contract or any other contract at the Savannah River Site forever. I

12. As a consequence of losing these two employees, who owned the dogs required to be used under the contract; Hooker was unable to perform the contract and had to purchase dogs and other equipment to complete the contract, as well as hire new employees.

13. The response to Hooker's Request for Equitable Adjustment states that Wackenhut Services, Inc., who provide security for the site, determined that Michael Eller and Goldman Eller were involved in defrauding the government and as a result were denied access to the site. Further, the government states that under the contract (H.6, Compliance with Area Regulations) USFS had the right to require the contractor to remove an employee.

14. Michael Eller subsequently was awarded the hog contract in November, 2001 (43-4568-2-2018); and in March, 2003 (43-3468-3-2100); the contractor's response to the REA states that a review of the case determined inconclusive evidence against Mr. Eller.

15. Hooker is informed and believes that the removal of these employees constituted a breach of the contract terms and requests this court award him damages in an amount to compensate him for the purchase of dogs and equipment and lost employee time .

C. THE LOST CONTRABAND PASS

16. At all times during the contract term, Hooker and his employees were required to obtain a contraband pass from the Department of Energy through the contracting officer(Section C.E.1) Contractors were not permitted to use firearms without securing this contraband pass.

17. For a period of over six weeks in 1999, the contracting officer "lost" the paperwork for Hooker's contraband pass; thereby preventing Hooker from obtaining a gun permit to dispatch hogs under the contract. As the contract is a requirements contract, this prevented Hooker from performing under the contract during this time.

18. Hooker is informed and believes that this constituted a breach of the contract and he should be compensated for his lost income during this breach.

D. CONTRACT READJUSTMENT FOR HUNTING IN CONTAMINATED AREAS

19. Hooker and his employees hunted throughout the entire SRS property; and at no time were they warned about contaminated areas.

20. Prior to the disciplinary actions taken by the Contracting Officer on June 30, 1999; Hooker and his employees became aware that they had been working in contaminated areas such as Par Pond and requested an adjustment in the contract price.

21. The Contracting Officer refused to discuss any adjustment to the price and instituted the previously stated actions against Hooker and his employees.

22. The response to Hooker's REA points to the report of December 27, 2000 from the National Institute of Occupational Safety and Health (NIOSH) as stating that "based on the available environmental data and our medical findings, we conclude that beaver and pig trapping at SRS has not been associated with harmful exposure to radioactive or toxic environmental contaminants". This response fails to relate NIOSH's findings relative to Par Pond; i.e. the potential for exposure to radioactive cesium-137 dust generated during pig trapping in the Par Pond area during a time when the water level had been substantially reduced in order to repair the dam. The NIOSH findings were

> "Though there is historic data concerning the concentration of cesium-137 in the dust and vegetation that was uncovered during the Par Pond drawdown, it is not possible to determine whether you and your employees were exposed to radiation in amounts that would be harmful. There are two reasons for our inability to make that determination. First, the guidance for worker exposure is based on continuous exposure over 2,000 working hours (1 work year). The exposure that you and your employees may have encountered was intermittent but based on the information that you provided, did not approach 2,000 hours per year. Second, *since the water in Par Pond has been restored to its normal levels it is not possible to conduct any monitoring of radioactive dust in that area since it is once again under water.* (emphasis supplied)"

23. Hooker is informed and believes that there should have been a readjustment to the contract price in light of the possible exposure to contamination in Par Pond.

D. FAILURE TO EXERCISE THE OPTION

24. Hooker and USFS entered into a modification of contract (Amendment/Modification No. 04) effective October 1, 1999.

25. This modification extended the contract to October 31, 1999, or *until a new contract is awarded.* (Emphasis supplied)

26. Hooker was informed that new contract language would be inserted for the third option period. Hooker was invited by the contracting officer to modify his proposal for this option period. Hooker did so, but received no response.

27. In its response to Hooker's Request for Equitable Adjustment, the contracting officer states that a decision was made to perform the service with USFS employees, but this was never communicated to Hooker. A new contract was not awarded until November, 2001 (See para. 14).

28. Hooker is informed and believes that the hog contract was extended under the above modification to November, 2001 and the USFS breached the contract by discontinuing Hooker's performance without notice.

29. Hooker has been damaged in the amount of the maximum contract price, or $55,000.00.

BAD FAITH

30. Paragraphs 1 through 29 are realleged as if herein rewritten.

31. As previously alleged, the contracting officer Homer Gabard took the following actions against Hooker:

(a) Withheld payments and refused to pay invoices for hogs deemed "domestic";

(b) Barred Hooker's two employees from SRS *forever*, but one year later awarded the same hog contract to one of these employees, Michael Eller;

(c) Lost Hooker's contraband pass for six weeks, preventing him from carrying a firearm on SRS property to dispatch hogs pursuant to the contract;

(d) Failed to respond to Hooker's proposal subsequent to the modification; failed to award a new contract for over a year; preventing Hooker from performing under the modification; and

(e) Awarded the hog contract to Hooker's former employee who was alleged to have defrauded the government.

32. Hooker believes that these actions were taken in bad faith; and with a specific intent to injure him economically, and punish him for his concerns about the negligence of the Forest Service.

34. Plaintiff further believes that under 28 U.S.C.§2412(b), he is entitled to attorney's fees to compensate him for the defendant's bad faith.

WHEREFORE, having stated his amended complaint, Hooker requests that this Court award him damages as follows:

A. A sum to compensate Hooker for loss of employees, dogs and equipment purchased to perform under the contract;

B. A sum to compensate Hooker for withheld payments and unpaid invoices;

C. A sum to compensate Hooker for the breach of contract subject to the modification and until the new contract was awarded in the amount of $55,000.00;

D. A price adjustment per hog under the contract due to the contamination of the work environment;

E. Attorney's fees;

F. Punitive damages;

G. And such other and further relief as this Court may allow.

Respectfully submitted,

Berta E. (Robbie) Nichols

Berta E. (Robble) Nichols, Attorney for Plaintiff
Post Office Box 7925
Hilton Head Isl., South Carolina 29938
(843) 686-5884 (Facsimile (843) 842-3933

July 2, 2004