**United States Department of Agriculture** **Forest Service** **Savannah River** **P.O. Box 700 New Ellenton, SC 29809**

**File Code:** 6320 **Date:** 10 Jun 04
**Route To:**

**Subject:** Request for Equitable Adjustment, Contract #53-4660-9-04

**To:** William D. Hooker

d/b/a Georgia Bowhunters

C/O Robbie M. Nichols
206 Carolina Building
P. O. Box 7925
Hilton Head Island, SC 29938

CERTIFIED – RETURN RECEIPT REQUESTED

This letter is in response to the request for equitable adjustment, dated April 10, 2004, and received April 13, 2004 against contract number 53-4660-8-04 for wild hog control at the Savannah River Site. (SRS)

The Contracting Officer, Homer Gabard, who is now retired, did withhold payments totaling $1,320.00 due to non-conformance to contract specifications. He advised the contractor of his withholding payments in a letter dated June 30, 1999. Domestic pigs were brought to the cooler as substitutes for wild hogs. A biologist who was conducting a study on feral hogs notified the Contracting Officer of the substitution. The animals had dull rounded hooves from standing on hard surfaced floors, extra teats, the absence of parasites, and other factors indicating the hogs were domestic, not feral hogs. Per the contract schedule, page 7, payment was based on the trapping and dispatching of feral hogs. No payment will be made based on FAR Clause 52.246-4, Inspection of Services, paragraph (e)(2) which reads: "…when the defects in services cannot be corrected by reperformance, the Government may – (2) reduce the contract price to reflect the reduced value of the services performed."

The Contracting Officer asked Wackenhut Services, Inc., who provides security for the Site, to conduct a criminal investigation. While clearing Mr. Hooker of any wrong doing, Wackenhut determined two of his employees, Goldman Eller and Mike Eller were involved in defrauding the government, and as a result they were denied access to the Site.

There are two clauses in the contract under Section H, Special Contract Requirements that provided the Contracting Officer with the authority to bar Mr. Hooker's employees. In H.6, Compliance with Area Regulations, the fourth sentence reads: "In the event the Contractor fails to remove any employee whose continued employment is deemed by the Government to be contrary to the public interest, the Government reserves the right to require the Contractor to remove the employee." In H.16 Site Access Authorization for Contactor and Employees, the second to last paragraph reads: "Contractor or their representative shall be notified of employee that will be denied access to SRS and immediately upon notification, contractor shall remove the

employee(s) from SRS and return the site access badge(s) to the Contracting Officer or COR. Contractor shall be responsible for replacing those employee(s) denied access to SRS and denial of access for contractor's employee(s) shall not be construed as a suitable excuse for nonperformance of the contract. If the contractor is denied access to SRS the contract may be terminated for default." Therefore, any claims for damages resulting from the barring of his employees are denied.

Later after reviewing the facts of the case, it was determined that there was inconclusive evidence against Mike Eller, so he was permitted access to the Site. Subsequently, he was awarded contracts in November 2001 (43-4568-2-2018) and March 2003 (43-4568-3-2100).

Based on the information provided by the contractor regarding the lost contraband pass for Mr. Hooker for six weeks in 1999, I cannot locate any records to substantiate any claims due to delays caused by the government. Consider any claim denied.

Regarding the injury to Mr. Hooker and one of his dogs, the injuries appeared to have happened during the technical evaluation for the new solicitation in November 1999. The demonstration was to show how the dogs and the contractor worked together. No firearms were allowed during the demonstration. Mr. Hooker was not required to kill the hog that the dogs captured during the demonstration. The incident does not appear to deal with the performance of the subject contract, so I will not address it as part of this claim other than to note what I can determine to be the basic facts surrounding the incident.

In a letter, dated February 14, 2000, Mr. Gabard advised the contractor that the final invoice number 107624 in the amount of $165.00, was not processed to off-set the costs for the missing government furnished property. This deduction ($165.00) and the deduction made for the hog substitution ($1,320.00) were the only payment deductions I discovered after reviewing the file. (Total deductions $1,485.00) The contractor's response was there was never an inventory conducted in five years. Moreover, the location where the traps were kept was not a secure site. I have reviewed the files and I agree with the contractor. I cannot locate an inventory sheet signed by the contractor acknowledging receipt of the property. Therefore, the contractor is entitled to the payment of $165.00.

Regarding the contaminated areas, in a report (copy enclosed) addressed to Mr. Hooker, dated December 27, 2000, from the National Institute for Occupational Safety and Health, NIOSH, it is stated that "based on the available environmental data and our medical findings, we conclude that beaver and pig trapping at SRS has not been associated with harmful exposure to radioactive or toxic environmental contaminants." The employees were barred from the site due to their illegal actions not based on any contamination claims on their part.

Modification 4 extended the contract until 31 Oct 1999 or until a new contract was awarded. Mr Gabard states the option was not exercised because changes needed to be made to the contract. After consulting with Mr. Gabard, a contract was never awarded as a result of the solicitation Mr. Hooker referred to in the letter. A decision was made to perform the service with U.S. Forest Service employees. Another hog control contract was not awarded until November 2001. Mr. Gabard remembers he informed the contractor of the decision to perform the service in-house.

The exercising of a contract option is the unilateral right of the government. The government is free to choose not to exercise an option. Note any claims by the contractor for the loss of the option should be based not on the maximum estimated contract amount ($55,000.00) but the minimum guaranteed amount of $11,000.00. I find no evidence of bad faith on the part of the government. Any requests for equitable adjustment based on losses caused by the government not exercising the option are denied.

In summary, the Contracting Officer hereby determines that the contractor should be reimbursed for the $165.00 that was withheld due to missing government furnished property, all other requests for equitable adjustments in representing the loss of the option period, wrongfully withheld payments, and damages resulting from the barring of his employees; purchase and upkeep of dogs, equipment purchases and wrongful deductions are hereby denied.

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision

MARGARET J. YEATON
Contracting Officer

Enclosure (1)

Cc: Mark Simpson, USDA, OGC
Stefanie A. Gayton, EAZ, P&P
Dave Wilson, Forest Manager
Lucy Knowles, DOE
Tony Towns, DOE
Lindsey Williams, DOJ Attorney
William Hooker, Grovetown, GA