# DEPOSITION OF MARGARET YEATON - 12/7/05

## WILLIAM D. HOOKER, d/b/a GEORGIA BOWHUNTERS SUPPLY V. THE UNITED STATES

**Page 1 to Page 19**

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

*SHARON DEHART, COURT REPORTER*
*P. O. Box 2474*
*Aiken, SC 29802*
*Phone: 803-648-9434*

Page 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WILLIAM D. HOOKER, d/b/a GEORGIA BOWHUNTERS SUPPLY, Plaintiff,

vs. NOS. 03-1501C, 04-1126

THE UNITED STATES, Defendant.

DEPOSITION OF MARGARET YEATON
taken by Counsel for the Plaintiff
before Sharon DeHart, Certified Court Reporter
at the offices of Department of Energy
151 Corporate Parkway, Aiken, South Carolina
on Wednesday, the 7th day of December 2005
commencing at 4:11 p.m.

SHARON DEHART, COURT REPORTER

Page 2

APPEARANCES OF COUNSEL

FOR THE PLAINTIFF: ROBBIE M. NICHOLS, ESQ.
Attorney At Law
Post Office Box 7925
Hilton Head Island, SC 29938

FOR THE DEFENDANT: LINDSAY E. WILLIAMS, ESQ.
U.S. Department of Justice
Civil Division
1100 L Street, N.W.
Washington, DC 20530

LUCY KNOWLES, ESQ.
Westinghouse Savannah River Site
Post Office Box A
Aiken, South Carolina 29802-0900

- - - - -

INDEX TO EXAMINATIONS


| | Page |
|---|---|
| EXAMINATION BY MS. NICHOLS | 3 |
| CERTIFICATE OF COURT REPORTER | 19 |


- - - - -

EXHIBITS

PLAINTIFF'S
9 SITE VISIT EAZ 33-04-2041-RFQ

- - - - -

(Continued)
Page 2

Page 3

[IT SHOULD BE NOTED THAT Mary-Ellen Noone, Mark Simpson, Mr. Nicholson and John Andrew Cromer, III are also present at the deposition.]

- - - - -

MARGARET YEATON
having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MS. NICHOLS:

Q. And could you give me your full name and – not phone number; address, please?

**A. Margaret Josephine Yeaton, 127 Millstone Lane, North Augusta, South Carolina, 29860.**

Q. And have you ever been deposed before?

**A. No.**

Q. But you've been listening, so you know what a deposition is like.

**A. Yes.**

Q. Have you --

**A. No, I don't know. Just kidding.**

Q. Okay. Have you ever been a witness before in any kind of litigation or court action?

**A. No.**

Q. Or a plaintiff or a defendant to anything?

**A. No.**

Page 4

Q. How long have you been the contracting officer at Savannah River Site?
**A. Since January 11th, 2004.**
Q. And before that, what did you do?
**A. I retired from the Air Force.**
Q. What was your retiring rank?
**A. I was a senior master sergeant 88.**
Q. Did you do this kind of work in the Air Force?
**A. Yes.**
Q. What are your responsibilities? And I know I asked Mr. Gabard that, but it might have changed since he was there. What are your responsibilities?
**A. It's – basically remains the same. You – I – you do solicitations for supply services, construction, architectural engineer. You award the contracts and then you do the administration.**
Q. And do you have a COR working with you?
**A. It varies for each contract.**
Q. Oh, it does?
**A. Yes.**
Q. Oh, right, of course it would. Of course it would. Did you participate in answering the interrogatories?
**A. Yes.**
Q. This is going to be really short because you

Page 5

weren't around during a lot of this.
**A. No.**
Q. Lucky you. I noticed that – I'm just going to – I don't think we have to put this into evidence. Ms. Williams has supplied us with an Amendment of Solicitation/Modification of Contract for a John D. Hammett, Jr. that was awarded, apparently, the first of October of this year.
**A. Yeah. Well, that's a modification, yes.**
Q. Modification.
**A. It must have been for the contract. There's a contract underneath that, I believe, probably.**
Q. By the time you took over this job, I'm assuming that the – they were using three different contractors for the hog contract before you –
**A. Right.**
Q. – arrived, and so you continued to –
**A. We issued a new solicitation.**
Q. You issued a new solicitation.
**A. There were three contracts in place and they expired and we issued a new solicitation and ordered three new contracts.**
Q. Okay. And what were the changes, if any, to the contracts that were in place when you came?
**A. I can't really recall. I would have to look at**

Page 6

**the modifications. That's just an exercising of the option.**
Q. Right, I understand that. Am I correct in that now all the hog trapping is monitored by a contracting officer's representative?
**A. I believe that's the difference.**
Q. Okay. And is there beaver trapping going on now as far as you know?
**A. Yes.**
Q. Who is doing that?
**A. Thomas Mims.**
Q. And is he a contractor, or is he a member of the Forest Service?
**A. He's a member of the Forest Service.**
Q. Okay. Is that monitored, as far as you know?
**A. I couldn't tell you. It has nothing to do with me.**
Q. I know that you were listening when Ms. Williams and I were trying to arrive at a definition of a soil contamination area.
**A. Um-hum [yes].**
Q. Does the Forest Service have a definition for that?
**A. Not that I'm aware – we don't deal with contamination, per se.**

Page 7

Q. I understand that, but do you know if there is a definition?
**A. No, I do not.**
Q. Okay. Then I'd like to have you identify – I don't know if you prepared this or someone else, but this is a site visit in preparation for solicitation.
**A. Um-hum [yes]. Yeah, right.**
Q. Did you prepare that document?
**A. Yes, I did.**
Q. Okay. Let me mark that and I just want to ask you a couple of questions about it.
[PLAINTIFF'S EXHIBIT 9 IS MARKED FOR IDENTIFICATION]
Q. [Ms. Nichols] This starts out that this was for hog control and a site visit was conducted on 17 August of last year, and a list of attendees is attached and I believe Mr. Hooker attended that.
**A. Right.**
Q. Or at least his name is on the list. And you talk about the information that was given to the prospective bidders.
**A. Um-hum [yes].**
Q. And I'd just like to talk to you about page two where you have Q&As, and the question is, "Have the soil contaminated sites been identified?" And your answer is, "Yes, they have. The contractor, or plural, awarded the