IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM D. HOOKER, d/b/a<br>GEORGIA BOWHUNTERS SUPPLY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Nos. 03-1501C, 04-1126<br>(Judge Allegra) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**FIRST INTERROGATORIES TO DEFENDANT**

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, submits the following objections and responses to plaintiff's first set of interrogatories. Defendant has made a good faith effort to respond fully to those interrogatories to which it has not objected. Discovery is continuing, however, and defendant reserves the right to supplement its responses, including any objections that may be applicable, based upon any additional information and documents that may be discovered subsequent to providing these responses.

Defendant objects and responds to plaintiff's interrogatories as follows:

I. GENERAL OBJECTIONS AND RESPONSES

Defendant asserts and incorporates by reference the following objections to plaintiff's interrogatories as though they were set forth in full in each response to each interrogatory:

1. Defendant objects to each interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, work product doctrine, the deliberative process privilege, the law enforcement privilege, or any other privilege or immunity, including the Privacy Act of 1974, 5 U.S.C. § 552a.

2. Defendant objects to each interrogatory to the extent that it seeks information prepared or developed in anticipation of litigation or for trial when plaintiff has not shown that it has substantial need of such materials in the preparation of its case in that plaintiff is unable, without undue hardship, to obtain the substantial equivalent of such information by other means.

3. Defendant objects to each interrogatory to the extent that it seeks information irrelevant to the issues being litigated in this case and is not reasonably calculated to lead to the discovery of admissible evidence.

4. Defendant objects to those interrogatories that seek to require defendant to extract various types of information (such as names, positions or titles, dates, or the content of communications) from documents that have been produced upon the grounds that such information is as accessible to plaintiff as to defendant and the burden of extracting the information is the same for plaintiff as for defendant.

5. Defendant objects to the interrogatories to the extent that plaintiff seeks to require defendant to reach legal conclusions or conclusions as to the legal significance of certain documents or events that defendant is not otherwise required to make. In addition, defendant objects to the interrogatories to the extent that plaintiff seeks to require defendant to reach legal conclusions or conclusions concerning the legal significance of certain documents or events that must be determined by the Court in this action and upon the grounds that, to respond to them,

defendant would be required to conduct an extensive investigation and to research, compile, and evaluate data and records in its possession, which would constitute a harassment, oppression, undue burden, and undue expense to defendant.

6. Defendant objects to any inference that can be drawn from any portion of either the interrogatories or interrogatory responses that the documents as to which identification is requested or events referenced in the requests actually exist or occurred. The failure to object to each such inference in no way constitutes an admission by defendant that such information exists or that such events actually occurred.

7. Defendant objects to each definition, instruction, and request to the extent that it seeks to impose upon defendant any obligations or responsibilities other than those mandated by the Rules of the United States Court of Federal Claims.

8. Defendant objects to each and every interrogatory that is so vague, broad, general, and all inclusive that it does not permit a proper or reasonable response and is, therefore, unduly burdensome and oppressive.

9. Defendant notes that the information supplied in these responses is based upon the knowledge of the parties' agents, representatives, and attorneys, unless privileged.

10. Defendant notes that the word usage and sentence structure is that of the attorneys who in fact prepared these responses.

11. Defendant notes that it reserves the right to supplement or amend its responses in the event that additional information comes to light throughout the discovery process, and shall provide any such information as it becomes available.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Give the names and addresses of persons known to defendant or counsel to be witnesses concerning the facts of the case and indicate whether or not written or recorded statements have been taken from the witnesses and indicate who has possession of such statements.

**RESPONSE:**

The following persons are current or former Government employees and may be contacted only through Government counsel:

1. Margaret Yeaton, Contracting Specialist
USDA Forest Service
P.O. Box 700, Building 760-15G
New Ellenton, SC 29809

2. Frankie Brooks, Contracting Officer's Representative (Retired)
(803) 471-2129

3. Homer Gabard, Contracting Officer (Retired)
(803) 827-2976

4. William Jarvis, Inspector (Retired)
(803) 641-6528

5. Tona (Segar) Berret, Inspector
USDA Forest Service
P.O. Box 700, Building 760-15G
New Ellenton, SC 29809

6. Dave Wilson, Forest Manager
USDA Forest Service
P.O. Box 700, Building 760-15G
New Ellenton, SC 29809

7. Elizabeth LeMaster, Deputy Forest Manager
USDA Forest Service
810 Buncomb St.
Edgefield SC 29824

8. Jim Segar, Natural Resources
USDA Forest Service
P.O. Box 700, Building 760-15G
New Ellenton, SC 29809

9. Don Imm, Natural Resources
USDA Forest Service
P.O. Box 700, Building 760-15G
New Ellenton, SC 29809

10. Dr. John ("Jack") Mayer
Westinghouse Savannah River Company
P. O. Box 616
Aiken SC 29808

11. Lawrence F. Mazzuckelli, Toxicologist
National Institute for Occupational Safety and Health
Robert A. Taft Laboratories
4676 Columbia Parkway
Cincinnati, OH 45226-1998

12. H.B. Eagerton, Chief
Wackenhut Security Systems, Inc.
Savannah River Site
Aiken, SC 29802-7649
(803) 952-7649

No written or recorded statements have been taken from these witnesses at this time. Defendant specifically reserves the right to supplement its response to Interrogatory No. 1 at a later date pursuant to RCFC 26(e).

**INTERROGATORY NO. 2:**

Set forth a list of photographs, plats, sketches, or other prepared documents in possession of the defendant that relates to the claims or defenses in the case and provide a list identifying all documents the defendant plans to use at the trial of the case.

**RESPONSE:**

Defendant objects to this request to the extent it seeks "other prepared documents" because that portion of the request is vague and unduly burdensome. Notwithstanding this objection, defendant has made available, along with these responses, its business records from which the answers to Interrogatory No. 2 may be derived.

Defendant specifically reserves the right to supplement its response to Interrogatory No. 2 at a later date pursuant to RCFC 26(e).

**INTERROGATORY NO. 3:**

List the names and addresses of any expert witnesses whom the defendant proposes to use as a witness at the trial of the case.

**RESPONSE:**

Subject to defendant's general objections, defendant will, pursuant to RCFC App. A, VI, 13(b) and any Court order, after the discovery period closes, exchange a final list of names, addresses, and telephone numbers of any expert witnesses who may be called at trial. Additionally, subject to RCFC App. A, VI, 13(b), we reserve the right to call additional witnesses after the discovery period closes.

**INTERROGATORY NO. 4:**

For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts known to or observed by such witness, or provide a copy of any written or recorded statements taken from such witnesses.

**RESPONSE:**

Defendant objects to this interrogatory on the grounds that: (1) it seeks the mental impressions of defendant's counsel concerning the "important facts," which are protected by the work product doctrine; and (2) it would be unduly burdensome for the Government to ascertain and summarize the facts known by all the persons identified in our response to Interrogatory No. 4. Notwithstanding these objections, we respond by providing the following information concerning Government witnesses who we currently anticipate will testify at trial:

1. Margaret Yeaton, Contracting Specialist
Information related to the contracts, the criminal investigation, and the banning of plaintiff's employees.

2. Frankie Brooks, Contracting Officer's Representative (Retired)
Information related to the contracts, the criminal investigation, and the banning of plaintiff's employees.

3. Homer Gabard, Contracting Officer (Retired)
Information related to the contracts, the criminal investigation, and the banning of plaintiff's employees.

4. William Jarvis, Inspector (Retired)
General information related to the contracts.

5. Tona (Segar) Berret, Inspector
USDA Forest Service
General information related to the contracts.

6. Dave Wilson, Forest Manager
USDA Forest Service
General information related to the contracts.

7. Elizabeth LeMaster, Deputy Forest Manager
USDA Forest Service
General information related to the contracts.

8. Jim Segar, Natural Resources
USDA Forest Service
General information related to the contracts.

9. Don Imm, Natural Resources
USDA Forest Service
General information related to the contracts.

10. Dr. John ("Jack") Mayer
Westinghouse Savannah River Company
Information related to the criminal investigation of plaintiff and his employees.

11. Lawrence F. Mazzuckelli, Toxicologist
National Institute for Occupational Safety and Health
Information related to plaintiff's allegation that he had been exposed to contamination.

12. H.B. Eagerton, Chief
Wackenhut Security Systems, Inc.
Information related to the criminal investigation of plaintiff and his employees.

**INTERROGATORY NO. 5:**

With respect to the beaver trapping and culvert cleaning contract, #53-4660-9-06, please identify the location of beaver trapping sites 1 through 53 on the SRS site.

**RESPONSE:**

Defendant has provided, along with these responses, a map showing the locations of the beaver trapping sites and a list of beaver trapping sites with the names and grid locations for the sites.

HG
FB

**INTERROGATORY NO. 6:**

Please identify which of the sites above were identified and/or posted as having soil or water contamination during the years 1999 through 2001.

**RESPONSE:**

In addition to its general objections, defendant objects to this interrogatory upon the ground that the term "contamination" is vague.

**INTERROGATORY NO. 7:**

Please state how many beavers were dispatched during each month of years 1999, 2000, 2001, and state how many hours of culvert cleaning were performed.

**RESPONSE:**

Defendant has made available, along with these responses, its business records from which the answers to Interrogatory No. 22 may be derived, including the log sheets for beavers trapped and killed for the relevant time periods. No formal records are available for culvert cleaning performed by Government personnel or by the road maintenance contractor.

| Month (1999) | Number of Beavers | Culvert Cleaning Hours |
|---|---|---|
| July | 1 | 51 |
| August | 6 | 24 |
| September | 1 | 36 |
| October | 0 | 20 |
| November | 11 | 18.5 |
| December | 3 | 27.5 |
| Total | 22 over a five month period | 177 hours over a five month period |

| Month (2000) | Number of Beavers |
|---|---|
| January | 4 |
| February | 8 |
| March | 8 |
| April | 2 |
| May | 2 |
| June | 1 |
| July | 0 |
| August | 0 |
| September | 0 |
| October | 1 |
| November | 2 |
| December | 14 |
| Total | 42 over an eleven month period |

| Month (2001) | Number of Beavers |
|---|---|
| January | 5 |
| February | 1 |
| March | 7 |
| April | 5 |
| May | 0 |
| June | 0 |
| July | 0 |
| August | 0 |
| September | 0 |
| October | 4 |
| November | 2 |
| December | 4 |
| Total | 28 over an eleven month period |

**INTERROGATORY NO. 8:**

Subsequent to July 1, 1999, and during the years 2000 and 2001, identify who trapped beavers and performed culvert cleaning at SRS.

**RESPONSE:**

No formal records are available for culvert cleaning accomplished by Government personnel. Based on recollections, the following people trapped and/or cleaned culverts since 1999. However, the cleaning might not necessarily have been during the indicated time period. Additionally, sometimes only equipment was used to remove the debris and no hand cleaning was accomplished. Sometimes the road maintenance contractor's heavy equipment was used to remove debris from the culverts.

The following individuals trapped beavers and cleaned culverts since 1999:

Thomas Mims, Wildlife Technician
Robbie Williams, Forestry Technician
Jim Segar, Supervisory Forestry Technician

The following individuals cleaned culverts since 1999:

Dan Strawbridge, Engineer
Steven Woods, Engineer
Kevin Korman, Engineer
Hugh Thorn, Engineering Technician
Ron Moseley, Engineering Technician
Sandra Wilkins, Engineering Technician
Charles Tye, Engineering Technician
Don Coulter, Engineering Technician
Robert Morgan, Engineering Technician

**INTERROGATORY NO. 9**:

With respect to the hog contract #53-4660-8-04, state in which areas of SRS the plaintiff was directed to dispatch hogs.

**RESPONSE:**

Defendant objects to this interrogatory upon the ground that it seeks to require defendant to extract information from documents that have been produced along with these responses. Such information is as accessible to plaintiff as to defendant and the burden of extracting the information is the same for plaintiff as defendant.

**INTERROGATORY NO. 10:**

With respect to the hog contract #53-4660-8-04 awarded October 29, 1997, state the name(s) and titles and employers of the persons who conducted the investigation referenced in Homer Gabard's letter of June 30, 1999.

**RESPONSE:**

The Wackenhut Services, Inc. Investigation Section report indicates the investigator assigned was Jimmy G. Clark. It also makes reference to Chief Investigator Mark Underwood. We have made available, along with these responses, the investigative report.

**INTERROGATORY NO. 11:**

With respect to the hog contract, state the policy governing wild hog control, and state whether this policy applies also to domestic pigs found on SRS.

**RESPONSE**:

In addition to its general objections, defendant objects to this interrogatory upon the ground that the phrase "policy governing wild hog control," is vague.

**INTERROGATORY NO. 12:**

If the response to #11 is that the policy does not apply to domestic pigs, state the policy applied to domestic pigs found wandering at SRS.

**RESPONSE:**

In addition to its general objections, defendant objects to this interrogatory upon the ground that the phrase "policy" is vague.

**INTERROGATORY NO. 13:**

With respect to the investigation referenced in Interrogatory #10, state the results of the investigation and identify the evidence that found Michael and Goldman Eller were defrauding the government resulting in their being barred from SRS forever.

**RESPONSE**:

Defendant has made available, along with these responses, the Wackenhut Criminal Investigation from which the answers to Interrogatory No. 13 may be derived.

**INTERROGATORY NO. 14:**

State who dispatched hogs on the SRS between June 1999 and November 2001, providing names, titles, dates and numbers of hogs dispatched.

**RESPONSE:**

Defendant objects to this interrogatory upon the ground that is seeks to require defendant to extract various types of information from documents that have been produced. Such information is as accessible to plaintiff as to defendant and the burden of extracting the information is the same for plaintiff as defendant. Notwithstanding this objection, defendant provides the following response.

Plaintiff dispatched hogs as shown below on the SRS between June 1999, and November 1999.

| Month (1999) | Number of Hogs |
|---|---|
| June | 19 |
| July | 21 |
| August | 28 |
| September | 13 |
| October | 8 |
| November | 3 |
| Total | 92 |

The following individuals hunted hogs from December 1999 through November 2001:

Frankie Brooks, Wildlife Technician
Robbie Williams, Forestry Technician
Jim Segar, Supervisory Forestry Technician

Below are the number of hogs killed by Government personnel from March 2000 through October 2001:

| Month/Year | Number of Hogs Killed |
|---|---|
| March 2000 | 4 |
| July 2000 | 23 |
| August 2000 | 6 |
| October 2000 | 4 |
| November 2000 | 4 |
| December 20000 | 20 |
| **TOTAL 2000** | **61** |
| | |
| January 2001 | 3 |
| March 2001 | 2 |
| May 2001 | 1 |
| June 2001 | 1 |
| July 2001 | 15 |
| August 2001 | 20 |
| September 2001 | 1 |
| October 2001 | 1 |
| **TOTAL 2001** | **44** |

Defendant has made available, along with these responses, the log sheets for hogs killed in 2000 and 2001.

In November 2001, three contracts were awarded to Mike Eller, John D. Hammett, and the Hog Control Company. John D. Hammett killed 23 hogs in November of 2001. The Hog

Control Company killed 16 hogs in November of 2001. Mike Eller killed 17 hogs in November of 2001.

**INTERROGATORY NO. 15:**

State who conducted the review of the facts surrounding the investigation referenced in Interrogatory #10 and which resulted in the award of Contract 43-4568-2-2108 to Michael Eller.

**RESPONSE**:

Homer Gabard.

**INTERROGATORY NO. 16:**

What were the results of the review referenced in Interrogatory #15?

**RESPONSE:**

Homer Gabard reviewed the facts of the case and determined that the investigation did not clearly establish that Michael Eller was involved in defrauding the Forest Service by submitting domestic hogs in place of wild hogs. As such, Homer Gabard determined that Michael Eller would be allowed to submit an offer, himself, or to work for another person submitting an offer in response to solicitation 36-01-018.

**INTERROGATORY NO. 17:**

Who made the decision to perform hog contract #53-4660-8-04 with USFS employees, when was this decision made and how was it communicated to plaintiff?

**RESPONSE:**

Defendant objects to this interrogatory upon the ground that it incorrectly states that USFS employees performed hog contract #53-4660-8-04. USFS decided not to resolicit the contract, but to use USFS personnel to perform hog control.

Defendant has made available, along with these responses, its business records from which the answers to Interrogatory No. 17 may be derived, including a memo to the file dated February 1, 2000, by Homer Gabard; a February 2, 2000 fax from Mr. Hamilton, one of the offerors, to Homer Gabard indicating that he agreed to extend the acceptance period for his offer; and contraband passes for Government personnel, dated February 4, 2000. The business records thus indicate that the decision was made between February 1-4, 2000. The business records do not reflect how the decision not to resolicit the contract was conveyed to the plaintiff. USFS officials believe that Mr. Hooker was informed via letter.

**INTERROGATORY NO. 18:**

What caused the USFS to issue the work clearance permit of February 22, 1999 which required plaintiff to be RAD II qualified?

**RESPONSE:**

Defendant objects to this interrogatory upon the ground that it incorrectly states that the work clearance permit of February 22, 1999, required plaintiff to be RAD II qualified. The work clearance permit stated "Person entering creek is RAD II qualified and a subcontractor to Savannah River Institute."

As a result of communication between Westinghouse and USFS personnel, it was determined that a work clearance permit would be required for beaver trapping at "rd.4." We are currently investigating the matter and will produce any information we obtain as we obtain it.

**INTERROGATORY NO. 19:**

What protection is required for workers whose activities involve disturbing the soil within soil contamination areas on the SRS site?

**RESPONSE:**

In addition to its general objections, defendant objects to this interrogatory upon the ground that the term "soil contamination areas" is vague.

**INTERROGATORY 20:**

What price differential does the USFS offer for hourly work performed in "hot" or contaminated areas on the SRS, as compared to work in non-contaminated areas?

**RESPONSE:**

In addition to its general objections, defendant objects to this interrogatory upon the ground that the terms "hot," "contaminated areas," and "non-contaminated areas" are vague.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

TODD M. HUGHES
Assistant Director

LINDSAY E. WILLIAMS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-7995
Fax: (202) 514-8624

OF COUNSEL:
MARK SIMPSON
United States Department of Agriculture

Dated: December 5, 2005

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 5 day of December, 2005, I caused to be placed in Federal Express copies of "DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES" addressed as follows:

Berta E. Nichols
P.O. Box 7925
Hilton Head Island, SC 29938

Counsel for Plaintiff