IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM D. HOOKER, d/b/a, GEORGIA BOWHUNTERS SUPPLY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Nos. 03-1501C, 04-1126C (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE**

Defendant, the United States, respectfully submits this opposition to plaintiff's motion to strike the declarations of Brian Hennessey and Kenneth Crase.

**INTRODUCTION**

The fact discovery deadline in this case expired June 5, 2006. On September 7, 2006, the Government filed a cross-motion for summary judgment and response to plaintiff's motion for summary judgment (the "cross-motion"). In support of the cross-motion, we filed the declarations of Mr. Hennessey and Dr. Crase.

On October 10, 2006, plaintiff, William Hooker, filed a reply and response to our cross-motion, along with the motion to strike now at issue. Mr. Hooker asserts that it would be "fundamentally unfair . . . to allow declaration testimony by witnesses who were not identified as such during discovery." Plaintiff's Motion to Strike ("Pl. Mot.") at 2.

## I. After Receiving The Government's Cross-Motion, Mr. Hooker Made No Attempt To Seek The Depositions Of Mr. Hennessey And Dr. Crase Pursuant To RCFC 56(f), And Expressly Rejected The Government Offer To Consent To Those Depositions

For the reasons set forth in sections II and III, below, there are sufficient grounds to deny Mr. Hooker's motion upon its merits. However, before turning to the merits, we demonstrate

that Mr. Hooker's motion to strike should be denied because he has failed to seek the depositions of Mr. Hennessey and Dr. Crase pursuant to Rule 56(f) of the Rules of the United States Court of Federal Claims ("RCFC"). This provides an independent ground for denying Mr. Hooker's motion.

**A. Mr. Hooker Did Not Seek Additional Discovery Pursuant To Rule 56(f) Before Filing A Motion To Strike**

RCFC 56(f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just.

Here, during the approximately one-month period between the filing of our cross-motion and Mr. Hooker's motion to strike, Mr. Hooker's counsel did not contact undersigned counsel to discuss the possibility of conducting the deposition of Mr. Hennessey, who is a Federal employee, or Dr. Crase, who is employed by the Washington Savannah River Company ("WSRA"). Nor did Mr. Hooker seek leave from the Court to conduct their depositions after the close of discovery pursuant to Rule 56(f). Further, Mr. Hooker has failed to identify what facts contained in the declarations of Mr. Hennessey and Dr. Crase, "essential to justify [his] opposition," are at issue.

Further, shortly after receiving Mr. Hooker's motion to strike, the Government called Mr. Hooker's counsel to advise her that we had no objection if she wished to seek to conduct the depositions of Mr. Hennessey and Dr. Crase. Mr. Hooker has rejected that proposal. Thus, although the decision of whether to grant leave to conduct the depositions ultimately would have

been a matter for this Court to decide pursuant to RCFC 56(f), had Mr. Hooker sought such leave, we would have cooperated and the present issue may have been completely resolved.

Based upon the manner in which events have unfolded, it appears that Mr. Hooker is attempting to use a motion to strike for tactical purposes. Specifically, Mr. Hooker claims that it would be "fundamentally unfair" for the Court to consider the declarations because he allegedly has not had the opportunity to depose the two individuals in question. However, he refuses to seek those depositions. Therefore, his claim that he has not had the opportunity to depose the two declarants is a self-fulfilling prophesy.

If Mr. Hooker were to conduct the depositions of Mr. Hennessey and Dr. Crase, he could no longer argue that he did not have the opportunity to conduct their depositions. Mr. Hooker apparently has decided that it is better to try to exclude the testimony of Mr. Hennessey and Dr. Crase than it would be to conduct their depositions and then have to address the merits of their declarations. We believe this is because Mr. Hooker knows he cannot produce any evidence to rebut the declarations, regardless of whether he conducts the depositions of Mr. Hennessey and Dr. Crase.

Accordingly, because Mr. Hooker has failed to attempt to seek relief pursuant to Rule 56(f), his motion to strike should be denied.

**B. The Government Continues To Have No Objection To Mr. Hooker Conducting The Depositions Of Mr. Hennessey And Dr. Crase**

The Government remains willing to cooperate with Mr. Hooker regarding the depositions. Mr. Hennessey is a United States Department of Energy employee and, as such, can be produced at a mutually-convenient time. Dr. Crase is an employee of the Washington Savannah River Company, is not under the control of the Government, and would not be

represented by Government counsel at his deposition. However, we are more than willing to provide any assistance we can regarding the scheduling of Dr. Crase's deposition, although, ultimately, it is Mr. Hooker's responsibility to ensure that he appears, even if it means serving a subpoena. Thus, Mr. Hooker's motion to strike was, and remains, unnecessary.

Accordingly, in lieu of deciding Mr. Hooker's motion to strike upon the merits, we respectfully request that the Court deny his motion and order a continuance pursuant to RCFC 56(f) to permit Mr. Hooker to conduct the depositions of Mr. Hennessey and Dr. Crase at a mutually convenient time. In addition, the Court may permit Mr. Hooker to supplement his response to our cross-motion following the depositions, if he deems it is necessary to do so.

## II. Mr. Hooker's Motion To Strike Should Be Denied Upon The Merits

### A. Dr. Crase Is Not A Federal Employee And, Therefore, The Government Was Under No Obligation To Produce Him

Mr. Hooker's motion to strike, as it relates to Dr. Crase, is based upon three faulty propositions. First, Mr. Hooker asserts that the Government did not identify Dr. Crase as a potential witness. Pl. Mot. at 2. Second, Mr. Hooker asserts that he had no opportunity to conduct Dr. Crase's deposition. Third, Mr. Hooker assumes that the Government had a duty to produce Dr. Crase for deposition.

As to the first assertion, Mr. Hooker acknowledges that Dr. Crase was expressly identified, in response to Mr. Hooker's supplemental interrogatories, "an employee of Westinghouse who works in the Radiological Protection Department and deals with the Health Protection workers." See Pl. Mot. at 2 and at Exh. 2, p. 4 (Response to Interrogatory No. 21). Thus, Mr. Hooker clearly was on notice that Dr. Crase could be called as a witness, and that Dr. Crase was not a Government employee.

Mr. Hooker's second assertion, that he had no opportunity to conduct the deposition of Dr. Crase, is similarly without basis. The supplemental interrogatory responses were served on February 15, 2005, nearly four months before fact discovery closed. See Pl. Mot., Exh. 2 at 8 (certificate of service). Therefore, Mr. Hooker had more than sufficient time to make arrangements to conduct Dr. Crase's deposition. It was the responsibility of Mr. Hooker to subpoena Dr. Crase if he wanted to conduct his deposition. If Dr. Crase did not comply with the subpoena, Mr. Hooker had avenues of relief available. To our knowledge, Mr. Hooker's only attempt to schedule Dr. Crase's deposition was to request that the Government produce Dr. Crase for deposition. In sum, Mr. Hooker had the opportunity to depose Dr. Crase but failed to take the steps necessary to ensure his appearance.

With respect to Mr. Hooker's third assertion, the Government had no duty to produce Dr. Crase because he is not a Government employee and would not be represented by Government counsel at his deposition. Further, although we do not dispute that Department of Energy counsel sought to assist in arranging for Dr. Crase's appearance, this was done solely as a courtesy to Mr. Hooker. However, this did not relieve Mr. Hooker of the affirmative responsibility to subpoena Dr. Crase or take other steps necessary to obtain his deposition.

Further, although it was not obligated to do so, the Government assisted Mr. Hooker in obtaining the deposition of David Sanders, who was a subordinate of Dr. Crase. In doing so, we sent Mr. Hooker's counsel a letter confirming that Mr. Sanders was employed by Washington Savannah River Co. (which also has been referred to as Westinghouse). See May 30, 2006 letter attached hereto at Appendix p. 1 ("A1"). We emphasized that we had arranged his appearance as a courtesy. Id. We further encouraged Mr. Hooker's counsel to reconfirm with WSRC's

counsel that WSRC would be producing Mr. Sanders, and even provided contact information for WSRC counsel's office. Id. Mr. Hooker was able to conduct Mr. Sander's deposition as scheduled. However, the letter regarding Mr. Sanders clearly put Mr. Hooker on notice that it was his ultimate responsibility, not the Government's, to arrange for any depositions of WSRC employees, including Dr. Crase. Id.

Accordingly, Mr. Hooker's request that the Court strike the declaration of Dr. Crase should be denied.

## III. Mr. Hooker Has Failed To Provide Grounds For Striking Mr. Hennessey's Declaration

Mr. Hooker's motion should be denied as it relates to Mr. Hennessey as well. Mr. Hooker claims that Mr. Hennessey should have been identified in response to Interrogatory No. 4. See Pl. Mot. at 1 & Exh. 1, p. 8. For the reasons set forth below, Mr. Hooker's assertion is unfounded.

Interrogatory No. 4 states as follows:

> For each person known to the parties or counsel to be a witness concerning the facts of the case, set forth either a summary sufficient to inform the other party of the important facts known to or observed by such witnesses, or provide a copy of any written or recorded statements taken from such witnesses.

See Pl. Mot., Exh. 1, p. 8 (emphasis added).

The interrogatory is vague and overly broad, and required the Government to speculate as to what Mr. Hooker was referring. Faced with such an interrogatory, it would have been proper for the Government to simply object and not answer the interrogatory. As the court in Stovall v. Gulf and South American Steamship Co., 30 F.R.D. 152, 154 (S.D. Texas 1961) aptly noted:

> Any interrogatory which is too general and all-inclusive need not be answered. . . . [The interrogatories at issue] are so general and loose that no answer should be required. For example, No. 38 commences, "Please state all the facts in your possession * * *" relative to certain occurrences. How can the court make enforceable orders with reference to "all" of anything?

However, notwithstanding the vagueness and over breadth of Mr. Hooker's interrogatory, we provided a list of 12 witnesses who the Government anticipated would be called at trial, along with a brief description of the subject matters about which we expected they would testify. Pl. Mot., Exh. 1, pp. 8-9. This was all that was required. Indeed, Mr. Hooker has made no argument demonstrating that the response we provided was inaccurate or otherwise inappropriate. Further, given the vagueness and over breadth of Mr. Hooker's interrogatory, our response was more than reasonable. The fact that we identified a large number of witnesses provides additional support for the fact that we attempted in good faith to fully answer the interrogatory.

In light of the foregoing, it is not surprising that Mr. Hennessey was not identified in response to Interrogatory No. 4. The Government certainly was not attempting to withhold information. Rather, Mr. Hooker's decision to serve a vague, boiler plate interrogatory, asking the Government to identify each person "known to be a witness concerning the facts of the case," left it to the Government to interpret what was called for by the interrogatory. That Mr. Hooker is dissatisfied with our interpretation is something for which he alone is responsible.

Further, this is a contract case. We provided a list of witnesses who had information relating to the contract; the investigation of certain of Mr. Hooker's workers and the Government's decision to ban them from the site; and Mr. Hooker's allegation that he had been

exposed to contaminants. Pl. Mot., Exh. 1, p. 8-9.[1] Again, this was a fair answer to Mr. Hooker's interrogatory. If Mr. Hooker believed that certain classes of workers, such as individuals who performed the type of work performed by Mr. Hennessey, were not included in our response, but should have been, he could have served a supplemental interrogatory seeking more precise information.

Moreover, the matters discussed by Mr. Hennessey's are general and historical in nature. He does not discuss Mr. Hooker's contract. He does not discuss Mr. Hooker's performance. He does not discuss the administration of the contract. Instead, Mr. Hennessey provides background information about the Savannah River Site. See, e.g., Hennessey Decl., A3 ¶¶ 1-5 (exhibits omitted). He discusses how the site is managed and operated. See, e.g., id., A3-5, ¶¶ 6-14. He also describes conditions at the site regarding contamination. Id., A5-6, ¶¶ 15-21. Thus, notwithstanding Mr. Hooker's motion to strike, it is far from clear that Mr. Hennessey's declaration even relates to the "facts of the case," whatever was meant by that phrase, or that Mr. Hennessey's identity is responsive to the Interrogatory No. 4.

Indeed, nowhere in his interrogatories did Mr. Hooker specify that he was seeking the names of individuals with knowledge of the issues discussed in Mr. Hennessey's declaration. Further, with one exception, Mr. Hooker's interrogatories relating to contamination did not request that the Government identify individuals with knowledge about the subject matter of the interrogatory, although it would have been easy enough to include such a request. See Pl. Mot.,

---

[1] The person with information relating to Mr. Hooker's allegation that he had been exposed to contamination was identified as a toxicologist employed by the National Institute of Occupational Safety and Health, which reviewed the matter after Mr. Hooker complained about the alleged exposure.

Exhs. 1 & 2, Interrogatory Nos. 6, 18, 19, 20, 22 & 23. Further, the one interrogatory (Interrogatory No. 21) arguably related to contamination, which also called for the identification of a witness, asked the Government to identify the Westinghouse employee responsible for monitoring the activities of Forest Service contractors. See Pl. Exh. 2, p. 4. Clearly, Mr. Hennessey does not fit that description.

In sum, had Mr. Hooker wanted the Government to identify individuals with knowledge of contamination at the site, he could have simply asked for such information. He did not do so. Instead, he chose to rely upon vague questions about who the Government subjectively expected to call as a witness "concerning the facts of the case." The Government responded to that question in good faith. Mr. Hooker was in the best position to know what was important to his case. He had more than ample opportunity to supplement his interrogatories with a more focused request. That he failed to do so is not something for which the Government is responsible.

Accordingly, Mr. Hooker's motion to strike, as it relates to Mr. Hennessey, should be denied.

**CONCLUSION**

For the foregoing reasons, Mr. Hooker's motion to strike should be denied in its entirety.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

*s/Todd M. Hughes*

TODD M. HUGHES
Assistant Director

*s/Richard P. Schroeder*

RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562

Attorneys for Defendant

October 30, 2006

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on this 30th day of October 2006, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Richard P. Schroeder