**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

03-1501C, 04-1126C

WILLIAM D. HOOKER, d/b/a,
GEORGIA BOWHUNTERS SUPPLY,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS- MOTION FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

TODD M. HUGHES
Assistant Director

RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7788

Attorneys for Defendant

November 9, 2006

## TABLE OF CONTENTS

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT . . . . . 1

INTRODUCTION . . . . . 1

ARGUMENT . . . . . 2

I. The Government Is Entitled To Summary Judgment Upon Mr. Hooker's Claims That It Breached The Beaver Contract . . . . . 2

A. Mr. Hooker's Reduction Of Services Claim Is Without Merit . . . . . 2

B. The Government Did Not Breach The Beaver Contract Because It Was Under No Obligation To Exercise The Option Period . . . . . 6

II. The Government Did Not Breach The Hog Contract By Withholding Payment, Barring Two Of Mr. Hooker's Employees, Or Not Paying Him Under The Alleged Contract Extension . . . . . 7

A. The Government Properly Withheld The $1,320 Payment . . . . . 7

B. The Government Properly Barred Two Of His Employees From The Site . . . . . 8

C. Mr. Hooker Cannot Recover Upon The Alleged Contract Extension . . . . . 10

III. Mr. Hooker Is Not Entitled To An Equitable Adjustment Under Either Contract Due To The Alleged Existence Of Contamination . . . . . 11

IV. Mr. Hooker's Unsupported Allegations Of Bad Faith Are Insufficient To Prevent Dismissal Of The Complaints . . . . . 19

CONCLUSION . . . . . 20

CERTIFICATE OF FILING . . . . . 21

## TABLE OF AUTHORITIES

Ace Contructors, Inc. v. United States,
70 Fed. Cl. 253 (2006) . . . . . . . . . . 14

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) . . . . . . . . . . 5

Burnett Electronics Laboratory, Inc. v. United States,
202 Ct. Cl. 463, 479 F.2d 1329 (1973) . . . . . . . . . . 13

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 13

Fahey v. United States,
71 Fed. Cl. 522 (2006) . . . . . . . . . . 4, 5

Freed v. United States,
34 Fed. Cl. 715 (1996) . . . . . . . . . . 3

GAF Corp. v. United States,
932 F.2d 947 (Fed. Cir. 1991) . . . . . . . . . . 15

Hi-Shear Technology Corp. v. United States,
53 Fed. Cl. 420 (2002) . . . . . . . . . . 3

LaSalle Partners v. United States,
48 Fed. Cl. 797 (2001) . . . . . . . . . . 6

Mega Const. Co., Inc. v. United States,
29 Fed. Cl. 396 (1993) . . . . . . . . . . 14

Petrochem Servs., Inc. v. United States,
837 F.2d 1076 (Fed. Cir. 1988) . . . . . . . . . . 15

Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,
739 F.2d 624 (Fed. Cir. 1984) . . . . . . . . . . 8

Roseburg Lumber Co. v. Madigan,
978 F.2d 660 (Fed. Cir. 1992) . . . . . . . . . . 14

SAB Construction, Inc. v. United States,
66 Fed. Cl. 77 (2005) . . . . . . . . . . 16, 17

San Carlos Irrigation and Drainage Dist. v. United States,
877 F.2d 957 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Technical Assistance Int'l v. United States,
150 F.3d 1369 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

Tunnell v. Wiley,
514 F.2d 971 (3d Cir.1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Willetts v. Ford Motor Co.,
583 F.2d 852 (6th Cir.1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WILLIAM D. HOOKER, d/b/a, GEORGIA BOWHUNTERS SUPPLY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Nos. 03-1501C, 04-1126C (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S CROSS- MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States, respectfully submits this reply to plaintiff's response to defendant's cross-motion for summary judgment ("reply"). The Court should deny plaintiff's motion for summary judgment and grant summary judgment to the United States dismissing these consolidated actions, including the recently reinstated claim in Case No. 04-1126C (paragraphs 19-23 of plaintiff's complaint). We rely upon the pleadings and prior proceedings, our cross-motion for summary judgment and supporting papers, and the supplemental declaration of Frankie Brooks attached hereto.[1]

**INTRODUCTION**

Plaintiff, William Hooker, claims that the Government breached two contracts. The "Beaver Contract" was to control the beaver population and clean culverts at the Savannah River

---

[1] Our Cross-Mot. is cited "Def. Cross-Mot. __." Plaintiff's motion for summary judgment is cited "Pl. Mot. __." Plaintiff's reply and response to our cross-motion is cited "Pl. Reply __." The appendix to our cross-motion is cited "A __." References are to page numbers. The Government's proposed findings of uncontroverted fact is cited "Def. Facts __" and plaintiff's proposed findings of uncontroverted fact is cited "Pl. Facts __." The complaint in Case No. 03-1501 is cited "Beaver Comp. __" and the complaint in Case No. 04-1126 is cited "Hog Comp. __." Declarations are cited, for example, in the following format: "Brooks Decl. __." References are to page and paragraph numbers. The exhibits in the appendix to plaintiff's motion for summary judgment are cited "Pl. Exh. __."

Site ("SRS") in South Carolina and is the subject of Case No. 03-1501. The "Hog Contract" was to control the wild hog population at the SRS and is the subject of Case No. 04-1126. In our cross-motion, we demonstrated that we are entitled to summary judgment upon all of Mr. Hooker's claims in the two cases.[2]

Before turning to the substance of Mr. Hooker's reply, we point out that Mr. Hooker's response to our proposed findings of uncontroverted fact violates RCFC 56(h)(2) in that he repeatedly failed to either state whether he agreed or disagreed with the substance of our factual statements, or failed to provide an explanation for his disagreement. See, e.g., Mr. Hooker's responses to our proposed findings of fact Nos. 1-7, 11-27, 96, 97, 100-102, 110-111, 114-116, 120-121, 124-126, 132, 140, 152, and 159. We respectfully note that the deficiencies in Mr. Hooker's responses are not isolated and have the potential to hamper the Court's ability to use Mr. Hooker's RCFC 56(h)(2) filing as a tool determine which facts are not in dispute.

## ARGUMENT

### I. The Government Is Entitled To Summary Judgment Upon Mr. Hooker's Claims That It Breached The Beaver Contract

Mr. Hooker's asserts that a genuine issue of material fact precludes summary judgment for the Government upon his claims that the Government breached the Beaver Contract by improperly reducing services and not exercising the option to extend the contract term. Reply 1. Mr. Hooker is incorrect upon both counts.

#### A. Mr. Hooker's Reduction Of Services Claim Is Without Merit

The beaver contract was a requirements contract. Contract, Sec. I-7(a), A83-84; Pl. Facts 1, ¶ 6. We previously established that the contract schedule merely estimated the quantity of

[2] On October 13, 2006, this Court dismissed Mr. Hooker's claim for alleged contamination-related additional costs (set forth at the second ¶ 21of the Beaver Complaint). That claim, therefore, is no longer pending.

services to be ordered. Contract Schedule, Sec. B. Requirements (FAR 52.216-22), A81; see also A83; see Hi-Shear Technology Corp. v. United States, 53 Fed. Cl. 420, 428 (2002) (estimated contract requirements no a guarantee or warranty). Accordingly, the Government was not precluded from reducing the services it ordered from Mr. Hooker. See Technical Assistance Int'l v. United States, 150 F.3d 1369, 1373 (Fed. Cir. 1998) (only limitation upon Government's ability to vary requirements is that it must do so in good faith). A purchaser acts in good faith if he has a valid business reason for varying its requirements other than dissatisfaction with the contract. Id. at 1372. Mr. Hooker does not disagree with these legal propositions. Pl. Reply 3-4.

We demonstrated, through competent evidence, including sworn statements, rainfall charts, and contemporaneous news reports, that the Government reduced the quantity of services ordered under the Beaver Contract due to well-below average rainfall, which led to a decrease in the prevalence of beavers. See Cross-Mot. 11-14; Gabard Dep., p. 51, at 14 - p. 52, at 24, A232-233; see also A156-158 (precipitation charts); Brooks Decl. ¶¶ 5-10; A321-339 (media accounts discussing drought). This constitutes a valid business reason for a reduction of requirements.

In an attempt to rebut our evidence, Mr. Hooker relies, not upon evidence, but upon his own characterizations, unsupported accusations, and speculation. This is not sufficient. Indeed, "[t]he non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses." Freed v. United States, 34 Fed. Cl. 715, 719 (1996) (citing Willetts v. Ford Motor Co., 583 F.2d 852, 856 (6th Cir.1978) and Tunnell v. Wiley, 514 F.2d 971, 976 (3d Cir.1975)).

For instance, "[Mr.] Hooker claims that the beaver contract was 'stopped' in retaliation for his questioning the contamination at several beaver trapping sites. (First Am. Comp. ¶ 26)." Pl. Reply 1 (emphasis added). Mr. Hooker's speculation and accusations, however, are not

proof. Indeed, Mr. Hooker has cited no contemporaneous evidence that he complained to the Government about any health issues allegedly arising from having to work in contaminated areas, or that doing so was affecting his performance or costs, let alone proof that the Government retaliated against him. Further, Mr. Hooker does not challenge the existence of drought conditions head on. Instead, he attempts to avoid the issue in its entirety.

First, Mr. Hooker claims that "there is no contemporaneous evidence that drought was ever given as a valid business reason for a decrease in requirements." Reply 4. The question, however, is whether there was a valid business reason for a decrease in requirements, not when the reason was communicated to Mr. Hooker. We have cited significant contemporaneous records showing that there was a drought, including newspaper articles and weather records, not to mention sworn, eyewitness accounts of the drought conditions.

Second, Mr. Hooker offers no competent evidence that drought conditions did not exist, or that the beaver population did not decrease as a result. He argues that "[i]f drought conditions were present during the spring, it stands to reason that Hooker's trapping sites should have been reduced early in the year." Id. This is not evidence. It simply is an assertion contained in a brief. Essentially, Mr. Hooker is arguing that, as a matter of scientific fact, lower than average rainfall earlier in the season would only lead to a reduced beaver population during the same months in which the lower rainfall was experienced, rather than later in the year. He fails to recognize that lack of rainfall early in the season could lead to drought conditions later, during hot weather, as occurred here.

Third, the cases relied upon by Mr. Hooker are distinguishable. In Fahey v. United States, 71 Fed. Cl. 522 (2006). The issue in that case was whether the Postal Service terminated

Ms. Fahey's contracts in retaliation for alleged whistleblowing. Id. at 522-523. In opposition to the Government's summary judgment motion, Ms. Fahey submitted a substantial amount of evidence, including a declaration describing an alleged pattern of inappropriate behavior of the postmaster, evidence of a number of complaints to the inspector general and Postal Service contract personnel, and other evidence supporting her claim. Id. at 526-527. The Court held that, under the circumstances, it did not agree that Ms. Fahey had made only "bald allegations" of bad faith. Id. at 527 (citing Rice Systems, Inc. v. United States, 62 Fed. Cl. 608, 630 (2004)). In the present case, the Government has provided satisfactory and significant proof that there was a legitimate business reason that the contract requirements were reduced and Mr. Hooker has countered with nothing to the contrary but his own accusations. Therefore, Fahey is of no assistance to Mr. Hooker.

Mr. Hooker also cites Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1241 (Fed. Cir. 2002), which involved an allegation of duress. The court was faced with the issue of whether a reasonable finder of fact could find, by clear and convincing evidence, that the contracting officer had not acted in good faith. Id. The court found that the affidavit submitted by Am-Pro was insufficient because it was "utterly uncorroborated"; nothing in the affidavit suggested that the Government had a "specific intent to injure" or that it is "motivated alone by malice"; the contracting officer's course of conduct suggested good faith; the affidavit was not prepared until many years after the alleged threats at issue; there was a lack of contemporaneous evidence supporting Am-Pro's claims; and Am-Pro's counsel was involved in the negotiations about which Am-Pro was complaining. Id. at 1241-43. Thus, Am-Pro actually supports the Government arguments, not Mr. Hooker's.

Fourth, Mr. Hooker's argues that the Government did not raise, as an affirmative defense, that it had a valid business reason for a reduction of the services demanded. Affirmative defenses are listed in RCFC 8(c). The so-called affirmative defense cited by Mr. Hooker is not among them. Therefore, Mr. Hooker's argument is without merit. Further, the drought issue was discussed during depositions. Pl. Reply 4. Therefore, Mr. Hooker had an opportunity to explore the issue.

In sum, Mr. Hooker has failed to present sufficient evidence to avoid summary judgment in favor of the Government upon its claim that the Government unlawfully reduced its requirements under the Beaver contract.

**B. The Government Did Not Breach The Beaver Contract Because It Was Under No Obligation To Exercise The Option Period**

In our motion for summary judgment, we demonstrated that the presence of an option provision does not create a legal obligation for the Government to exercise the option. Cross-Mot. 18-19; LaSalle Partners v. United States, 48 Fed. Cl. 797, 806 (2001). We demonstrated that Mr. Hooker cannot point to any evidence that the Government's decision not to exercise the option was made in bad faith, was a breach of contract, or was unlawful. Cross-Mot. 18.

Although Mr. Hooker refers to the option argument in the heading to Section I of his reply brief, he makes no argument in that section regarding the Government's decision not to exercise the option. Further, to the extent that the general arguments made in Section I of Mr. Hooker's brief can be construed to relate to the option issue, they suffer from the same deficiencies discussed, above, with respect to Mr. Hooker's argument that the Government unlawfully reduced his requirements. Because Mr. Hooker has failed to raise any genuine issue

of material fact regarding the Government's decision not to exercise its option, we are entitled to summary judgment upon that claim.

## II. The Government Did Not Breach The Hog Contract By Withholding Payment, Barring Two Of Mr. Hooker's Employees, Or Not Paying Him Under The Alleged Contract Extension

In our cross-motion, we demonstrated that we are entitled to summary judgment upon Mr. Hooker's claims, among others, that (1) the Government improperly withheld $1,320 in payments from Mr. Hooker; (2) the contracting officer wrongfully barred two of Mr. Hooker's employees from the SRS; (3) the contracting officer lost Mr. Hooker's contraband pass; (4) the Government extended the Hog Contract through November 2001, but that it failed to pay Mr. Hooker under the extended contract; (5) Mr. Hooker is entitled to a contract readjustment for hunting Hogs in contaminated areas; and (6) that the Government acted in "bad faith." Cross-Mot. 19. Mr. Hooker is no longer pursuing the contraband pass claim. Id., see also A23a. Therefore, we do not further address it. Mr. Hooker's "contract readjustment" claim was reinstated in this Court's order of October 13, 2006. We address that claim in Section III, below. We address Mr. Hooker's bad faith claim in Section IV, below. The remaining arguments are discussed immediately below.

### A. The Government Properly Withheld The $1,320 Payment

We previously demonstrated that the Government was within its rights to withhold payment for the domestic pigs. Cross-Mot. 19-21. Specifically, we established that the contract permitted the Government to reject non-conforming services. A62a-62b. We showed that the Government exercised its right to decline payment only after a careful investigation concluded that someone working for Mr. Hooker had attempted to pass off domestic pigs as wild hogs.

Cross-Mot. 20-21, A154-155. In sum, we established, through competent, contemporaneous evidence, that there were sufficient grounds upon which to withhold payment.

In his reply, Mr. Hooker does not present satisfactory evidence establishing that the Government wrongfully withheld the sum at issue. Instead, he claims that the "Court should have the opportunity to weigh the credibility of all of the witnesses." Pl. Reply 9. Under the circumstances of this case, Mr. Hooker's allegation is insufficient to avoid summary judgment. See Pure Gold, Inc. v. Syntex (U.S.A.), Inc., 739 F.2d 624, 627 (Fed. Cir. 1984) ("speculative hope of finding some evidence that might tend to support a complaint" not sufficient grounds for denying motion for summary judgment). Specifically, Mr. Hooker has not provided sworn testimony from anyone else with personal knowledge that demonstrates that the Government acted outside its authority by withholding payment. Nor has Mr. Hooker otherwise proven, through competent evidence, that the scheme did not, in fact, occur.

In light of the detailed investigation of the incident and supporting documentation, and the explanation of the evidence contained in our brief, there is no genuine issue of material fact regarding whether somebody in Mr. Hooker's employ attempted to pass off domestic pigs as wild hogs. See, e.g., 127-148. Mr. Hooker has had ample opportunity to explore the issue and present his own evidence demonstrating that the Government's conclusions were in error. He has failed to do so. Therefore, the Government is entitled to summary judgment upon this issue.

**B. The Government Properly Barred Two Of His Employees From The Site**

In our cross-motion, we demonstrated that we are entitled to summary judgment upon Mr. Hooker's claim that the Government breached the Hog Contract when it barred two of his employees from the SRS and, therefore, is liable to him because he allegedly had to locate new

employees and additional hunting dogs. See Cross-Mot. 22-24; Hog Comp. ¶¶ 11-15. We demonstrated that the Government's decision did not constitute a breach because the Government had the contractual right to take such action and properly exercised that right. See Cross-Mot. 22-24; Hog Contract, Specifications H.6, H.16, A62c, A62e.

Among other things, we demonstrated that nothing in the record suggests that the decision to bar the employees was anything other than reasonable under the circumstances. Cross-Mot. 23. We further demonstrated that, although Mr. Hooker may disagree with the decision to bar the employees, this did not provide a basis for demanding that the Court second-guess the contracting officer's decision. Id. We also showed that the contract placed the burden of locating replacement hunting dogs upon Mr. Hooker, and that Mr. Hooker had made representations that he could obtain such dogs on short notice. Id. 23-24; A43. Similarly, Mr. Hooker made representations that he could provide replacement personnel "for anyone who [could not] continue to work the contract for whatever reason." Id.; A42.

The rationale discussed in Subsection (B), immediately above, regarding the withholding of payment for domestic pigs applies with equal force to the present issue. The facts that we have set forth are largely unrebutted. See, e.g., 127-148. Mr. Hooker has had ample opportunity to present his own evidence demonstrating that the Government's conclusions were in error but has failed to do so. Therefore, the contracting officer was within his rights to take the actions he took. Therefore, the Government is entitled to summary judgment upon this issue as well.

**C. <u>Mr. Hooker Cannot Recover Upon The Alleged Contract Extension</u>**

Based upon language in a contract modification entered into on October 1 1999 extending the Hog Contract "to October 31, 1999, or until a new contract is awarded," A65, Mr. Hooker claims that he is entitled to the maximum value of the Hog Contract for the two years after he stopped trapping hogs, but before the Government awarded a new contract to a different trapper. Hog Comp. ¶ 28. We demonstrated that, regardless of whether that clause is read as extending the contract until October 31, 1999, or until a new contract was awarded, whichever is earlier (as claimed by the Government), or until October 31, 1999, or until a new contract was awarded, whichever was later (as claimed by Mr. Hooker), Mr. Hooker would not be entitled to recovery. Cross-Mot. 24-26. We demonstrated that the precise termination date of Mr. Hooker's contract was irrelevant because it is undisputed that Mr. Hooker did not continue to perform during the two-year period for which he seeks compensation. Cross-Mot. 25. Specifically, we showed that Mr. Hooker, by his own admission, never hunted hogs after November 30, 1999. Hooker Dep., p. 58 at 16-22. Further, when asked why, Mr. Hooker replied, "I'd had enough of the BS, I promise you." Hooker Dep., p. 59 at 5. Thus, it is clear that Mr. Hooker did not hunt hogs because he was angry, frustrated, or otherwise not inclined to do so.

Mr. Hooker continues to seek compensation for work he never performed, while, at the same time, he continues to acknowledge that he never hunted hogs after November 1999. Pl. Reply 7. Nonetheless, contrary to his own admission that he made a choice not to hunt hogs, he now claims that "he remained ready to perform . . . as evidenced by his submission of a bid for the new contract to be awarded." Pl. Mot. 7. However, it simply is not sound reasoning to

suggest that submitting a bid for a new contract somehow proves that Mr. Hooker was ready to perform under the old contract. Given that Mr. Hooker has failed to provide any proof that he actually performed the services from which he seeks compensation, or that he even was available to do so, the Government remains entitled to summary judgment upon this claim.

## III. Mr. Hooker Is Not Entitled To An Equitable Adjustment Under Either Contract Due To The Alleged Existence Of Contamination

We demonstrated that Mr. Hooker is not entitled to reformation or readjustment of the contracts as a result of allegedly being required to hunt hogs, trap beavers, and clean culverts in contaminated areas. Cross-Mot. 26-37. Because Mr. Hooker's equitable adjustment claim relating to the Hog Complaint was dismissed in August 2005, we did not address the merits of that claim. Cross-Mot. 27-29. However, we did address the merits of the claim regarding the Beaver Complaint. Cross-Mot. 29-37. Mr. Hooker's equitable adjustment claim regarding the Hog Complaint has since been reinstated. Because our argument supporting summary judgment upon Mr. Hooker's equitable adjustment claim for the Beaver Contract applies with equal force to the reinstated claim regarding the Hog Complaint, we are entitled to summary judgment dismissing both of those claims.

Mr. Hooker asserts that he is entitled to summary judgment reforming the contracts to "reflect a fair price to compensate [him] for the price he would have bid for unprotected exposure to contamination." Pl. Reply 12. He argues that, "because of the exposure to contamination, he would have bid a higher price on both the contracts." Pl. Reply 10. However, Mr. Hooker's argument suffers from the same shortcoming as the argument he has raised regarding the other claims previously discussed – he has failed to support the argument with satisfactory evidence.

To recover for breach of contract, a plaintiff must allege and prove four elements. First, a plaintiff must demonstrate that a valid contract existed between the parties. San Carlos Irrigation and Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989). Second, the defendant must have undertaken an obligation or duty arising out of that contract. Id. Third, the defendant must have breached that duty. Id. Fourth, a plaintiff must prove damages arising out of the breach. Id. The party alleging a breach of contact bears the burden of proof for each element. Technical Assistance Int'l. V. United States, 150 F.3d 1369, 1373 (Fed. Cir. 1998). In our cross-motion, we demonstrated that Mr. Hooker cannot establish that the Government breached the Beaver Contract with respect to his contamination claim.

As an initial matter, we demonstrated that the evidence shows that there is no underlying factual basis for Mr. Hooker's contamination based claim. Specifically, we demonstrated that Mr. Hooker's contamination allegations were fully investigated by numerous agencies, both public and private. See Def. Facts 169-182; A166-168; A169; A701-172. This included environmental studies and medical examinations. Def. Facts 172-182; A166-168; A169-172. These agencies found Mr. Hooker's concerns to be unfounded. Def. Facts 175-182; A169-172. We pointed out that Mr. Hooker cannot point to any competent evidence to the contrary.

This is more than we needed to show in order to be entitled to summary judgment upon Mr. Hooker's claim. Indeed, as the Federal Circuit has emphasized in Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987): "[T]he burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "'the burden on the moving party may be discharged by "showing" – that is, pointing out to the [Court of Federal Claims] – that there is an absence of

evidence to support the non-moving party's case.'" Id. (emphasis in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Here, we not only have shown an absence of evidence to support Mr. Hooker's case, we have shown, through affirmative evidence, that Mr. Hooker's claim lacks a factual basis.

Mr. Hooker continues to fail to provide sufficient evidence to prove his contamination claim. He claims that the "equitable remedy of reformation is '. . . available only if the government knew or should have know of a mistake in a bid costly to the bidder.'" Pl. Reply 10 (quoting Burnett Electronics Laboratory, Inc. v. United States, 202 Ct. Cl. 463, 479 F.2d 1329 (1973)). Thus, assuming, for the sake of argument, that Mr. Hooker, as a matter of theory, could recover for working in a "contaminated" site under appropriate circumstances, based upon his own definition, he would have to prove a number of things, including: That the site was contaminated, that the contamination was at a high enough level to be material to his performance, and that the Government knew about the contamination.

With respect to the first element, Mr. Hooker uses the word "contamination" very loosely. He essentially asserts that the SRS was contaminated and, in doing so, implies that the contamination was a such a level as to provide him with a cause of action. However, the evidence he cites is purely speculative. He states that there were soil contamination signs on the SRS. Pl. Reply 10-11. However, Mr. Hooker has failed to show that the mere existence of some level of contamination is sufficient to create a cause of action. Mr. Hooker cannot prevail in this case merely because certain areas were posted with signs. We have provided evidence showing that Mr. Hooker's concerns about contamination, including any health concerns, were

unfounded. He has failed to produce evidence to the contrary. Therefore, his claim cannot survive summary judgment.

Similarly, Mr. Hooker relies upon a statement by David Sanders, an employee of a third-party Government contractor, that there could be contamination that, so far, has not been identified. Id. Of course, anything is possible. However, Mr. Hooker has failed to demonstrate that the possibility of some unknown level of contamination at some unknown location in the vast SRS provides him with a claim against the Government.

In addition, for reasons set forth in detail in our cross-motion, Mr. Hooker also has failed to demonstrate damages arising from the alleged breach. San Carlos Irrigation, 877 F.2d at 959. Therefore, he cannot recover for his alleged injury. Roseburg Lumber Co. v. Madigan, 978 F.2d 660, 667 (Fed. Cir. 1992). Here, Mr. Hooker bears the burden of establishing entitlement to an equitable adjustment under the terms of the contract. Mega Const. Co., Inc. v. United States, 29 Fed. Cl. 396, 444 (1993). The proper measure of an equitable adjustment is the extra costs incurred by the Government contractor, if those additional costs are reasonable. Ace Contructors, Inc. v. United States, 70 Fed. Cl. 253, 274 (2006).

We previously demonstrated that we are entitled to summary judgment upon the equitable adjustment claim regarding the Beaver Contract because Mr. Hooker failed to substantiate any additional costs incurred as a result of the Government's conduct. Cross-Mot. 31. This remains true. Further, in the October 13, 2006 order, this Court dismissed Mr. Hooker's claim for alleged contamination-related additional costs (set forth at the second ¶ 21of the Beaver Complaint). That claim, therefore, is no longer pending. Accordingly, we are entitled to summary judgment.

Mr. Hooker also attempts to assert a new claim in his reply – superior knowledge. Pl. Reply 11. It is inappropriate for Mr. Hooker to raise an argument for the first time in his reply brief. In any event, Mr. Hooker cannot prevail under a superior knowledge theory any more than he can prevail under the reformation theory that he previously asserted. To establish a breach under the superior knowledge doctrine, a contractor must show that it:

> (1) undertook to perform without vital knowledge of a fact that affects performance costs or direction, (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information, (3) any contract specification supplied misled the contractor, or did not put it on notice to inquire, and (4) the government failed to provide the relevant information.

GAF Corp. v. United States, 932 F.2d 947, 949 (Fed. Cir. 1991) (emphasis added); Petrochem Servs., Inc. v. United States, 837 F.2d 1076, 1079 (Fed. Cir. 1988). For reasons previously discussed, Mr. Hooker clearly cannot satisfy the first element – that he lacked vital knowledge of a fact that affected performance costs. First, he failed to demonstrate that there was any material fact regarding which he lacked vital knowledge. Here, that fact would have to be contamination. However, as previously demonstrated, he has failed to offer anything other than speculation about the contamination. Similarly, he has failed to offer evidence that the alleged condition affected his costs. Indeed, his claim for additional costs related to the Beaver Contract was dismissed on October 13, 2006. Therefore, Mr. Hooker cannot prevail upon a superior knowledge theory.

Mr. Hooker's reinstated contamination claim with respect to the Hog Contract fails for the same reasons as his claim relating to the Beaver Complaint. He asserts that he is entitled to a readjustment of the contract price because he allegedly was exposed to contamination. Hog

Comp. 4-5, ¶¶ 19-23. Accordingly, he has requested that the Court grant him a price adjustment per hog. Hog Comp. 7, ¶ D. As with his Beaver Complaint, the evidence shows that there is no underlying factual basis for Mr. Hooker's contamination claim regarding the Hog Contract. Mr. Hooker's contamination allegations were fully investigated by numerous agencies, both public and private. See Def. Facts 169-182; A166-168; A169; A701-172. This included environmental studies and medical exams. Def. Facts 172-182; A166-168; A169-172. These agencies found Mr. Hooker's concerns to be unfounded. Def. Facts 175-182; A169-172. As with the Beaver Complaint, Mr. Hooker cannot point to any competent evidence to the contrary. Further, as with the Beaver Complaint, Mr. Hooker cannot point to any additional costs incurred as a result of the contamination issue. Indeed, Mr. Hooker has not even described the alleged circumstances under which he purportedly had to hunt hogs in contaminated areas.

Mr. Hooker attempts to distinguish SAB Construction, Inc. v. United States, 66 Fed. Cl. 77 (2005), upon which we relied to demonstrate that this Court should deny Mr. Hooker's request to rewrite the contract to reflect the amount he allegedly would have bid had he known he would be working in contaminated areas without protection. Cross-Mot. 34; Pl. Mot. 17. In that case, the Air Force disclosed the existence but not the substance of an asbestos and lead based paint survey of the building where renovation work was to be performed. SAB, 66 Fed. Cl. 77. Thus, the contractor rendered demolition services without special asbestos abatement procedures and was paid for such services pursuant to the terms of the contract. Id. at 82. The contractor sought additional compensation under a restitution theory. Id. at 92. The Court rejected the contractor's claim because the measure of restitution is the reasonable value of the

services actually rendered; because the contractor had incurred no additional costs in removing the asbestos or lead-based paint, restitution damages were not available. Id.

In the present case, Mr. Hooker is in a similar position. He seeks reimbursement for services not actually rendered. However, pursuant to SAB, he cannot recover for such services. Mr. Hooker attempts to distinguish SAB by arguing that, in that case, the contractor argued that the services provided were, in fact, asbestos abatement services, not merely demolition services, and that the Government benefitted by not having to pay for the asbestos abatement. Pl. Reply 10. Mr. Hooker claims that what is at issue in the present case is that, because of exposure to contamination, he would have bid a higher amount for the contracts.

Mr. Hooker's argument must fail. First, in both cases, the contractor sought more money based upon the alleged existence of contamination of some kind. However, the SAB contractor was in a better position that Mr. Hooker. There, the contractor actually removed the contaminated material, albeit without the special abatement procedures. SAB, 66 Fed. Cl. at 81. Yet, the contractor was not entitled to payment for doing so. Here, Mr. Hooker did not remove the alleged contamination. He merely performed the hunting, trapping, and culvert cleaning services for which he had been contracted. He admits this. Pl. Reply. 10. Therefore, a comparison of the two cases does not support Mr. Hooker's position.

Finally, Mr. Hooker has sought to strike the declarations of Brian Hennessey and Kenneth Crase, which we submitted in support of our cross-motion. We previously filed our opposition to the motion to strike and continue to urge the Court to deny the motion. However, given the significant degree to which Mr. Hooker has failed to providing evidence supporting its claims, even if those declarations were stricken, we still would be entitled to summary judgment.

For instance, the matters discussed by Mr. Hennessey are general and historical in nature. He does not discuss Mr. Hooker's contract. He does not discuss Mr. Hooker's performance. He does not discuss the administration of the contract. Instead, Mr. Hennessey provides background information about the Savannah River Site. See, e.g., Hennessey Decl., A3 ¶¶ 1-5 (exhibits omitted). He discusses how the site is managed and operated. See, e.g., id., A3-5, ¶¶ 6-14. He also describes conditions at the site regarding contamination. Id., A5-6, ¶¶ 15-21. Dr. Crase's declaration discusses radiological issues in greater detail. Crase Decl. ¶¶ 1-9. However, the important point is that Mr. Hooker could not prevail upon his contamination related claims even in the absence of these declarations. For reasons discussed previously, his entire case as it relates to the contamination issue is based upon speculation and unsupported conclusions insufficient to overcome a motion for summary judgment. He simply will not be able to prove his case at trial.

Further, even assuming, for the sake of argument, that the Crase declaration is necessary to support the Government's summary judgment motion, the Hennessey declaration is not. As we demonstrated in our opposition to the motion to strike, Dr. Crase, who is employed by a third-party, was disclosed to Mr. Hooker during discovery but Mr. Hooker failed to subpoena him for deposition and failed to seek his deposition pursuant to RCFC 56(f). Therefore, for reasons set forth in our opposition to Mr. Hooker's motion to strike, there is absolutely no basis for striking his declaration. Indeed, it seems apparent that the only reason Mr. Hooker has sought to do so is because he cannot formulate a response to the substance of the declaration.

Accordingly, we are entitled to summary judgment upon the contamination claim relating to both the Beaver Contract and Hog Contract.

## IV. Mr. Hooker's Unsupported Allegations Of Bad Faith Are Insufficient To Prevent Dismissal Of The Complaints

Mr. Hooker asserts that there is a genuine issue of material fact regarding the issue of bad faith that precludes granting summary judgment in favor of the Government. Pl. Reply 12. Mr. Hooker is incorrect. We demonstrated that Mr. Hooker cannot overcome the Government's presumption of good faith because none the Government's actions evidenced bad faith and, in fact, the Government's actions affirmatively established that the Government acted in good faith. Cross-Mot. 40-47.

Mr. Hooker offers nothing new in his reply regarding the issue of bad faith. Mr. Hooker simply claims that the evidence shows "at least the possibility that the Forest Service reduced the sites in retaliation for [his] complaints and the realization that the posted sties required work clearance permits." Pl. Reply 14. He claims that, if the Government did not have a valid business reason for reducing the sites, then it is in breach and "that breach is in bad faith if the reasons for the reduction were not the true reasons." Pl. Reply 14 (emphasis added).

The time for Mr. Hooker to rely upon speculation is over. We have submitted a motion supported by documentary evidence, declarations, and deposition testimony. We have provided a detailed description of the good faith bases for the Government's action. Mr. Hooker continues to rely solely upon unsupported accusations. Such accusations are insufficient to overcome our motion for summary judgment. Indeed, if Mr. Hooker can avoid summary judgment simply by making unsupported accusations of bad faith in this case, then summary judgment would never be available because such accusations are easy to make, even if they cannot be proven.

Accordingly, the Government is entitled to summary judgment upon Mr. Hooker's bad faith claims.

**CONCLUSION**

For the foregoing reasons, Mr. Hooker's motion for summary judgment should be denied, the Government's cross-motion for summary judgment should be granted in its entirety, and the complaints should be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

*s/Todd M. Hughes*

TODD M. HUGHES
Assistant Director

*s/Richard P. Schroeder*

RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
Eighth Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7788

Attorneys for Defendant

November 9, 2006

CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on this 9th day of November 2006, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Richard P. Schroeder